UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| DANA ROSS, 664 San Andres Circle, Thousand Oaks, CA 91360, Individually and on Behalf of all Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM L. WALTON, 1919 Pennsylvania Avenue North West, Washington, DC 20006, PENNI F. ROLL, 1919 Pennsylvania Avenue North West, Washington, DC 20006,  JOAN M. SWEENEY, 1919 Pennsylvania Avenue North West, Washington, DC 20006, and ALLIED CAPITAL CORPORATION, 1919 Pennsylvania Avenue North West, Washington, DC 20006, <br><br> Defendants. | No. <br><br><br> CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND VIOLATIONS OF FEDERAL SECURITIES LAWS <br><br><br> **JURY TRIAL DEMANDED** |

1.     Plaintiff, by his undersigned counsel, for plaintiff's Class Action

Complaint, alleges the following upon personal knowledge as to plaintiff and plaintiff's own

acts, and upon information and belief based upon the investigation of plaintiff's attorneys as to

all other matters.  The investigation includes the thorough review and analysis of public

statements, publicly filed documents of Allied Capital Corporation ("Allied Capital" or the

"Company"), press releases, news articles and the review and analysis of accounting rules and

related literature. Plaintiff believes that further substantial evidentiary support will exist for the

allegations set forth below after a reasonable opportunity for discovery.

## SUMMARY OF ACTION

2.     This is a class action on behalf of all purchasers of the common stock of

Allied Capital between March 1, 2006 and January 10, 2007, inclusive (the "Class Period"),

seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

3.    Based in Washington, DC, Allied Capital is a principal investment firm specializing in buyouts, acquisitions, recapitalizations, note purchases, growth capital, and middle market investments. The firm also provides debt financing in the form of senior loans, second lien debt, subordinated debt, and unitranche facilities.  The Company' Business Loan Express (BLX) subsidiary  originates, sells and services primarily real estate-secured small business loans, and also provides small business loans which are guaranteed pursuant to the U.S. Small Business Administration's (SBA) Section 7(a) Guaranteed Loan Program. BLX is Allied Capital's second largest portfolio company, and in 2005 BLX provided approximately 10.0% of Allied Capital's total interest and related portfolio income.

4.    Throughout the Class Period, Defendants failed to disclose, among other things, that Allied Capital's BLX subsidiary fraudulently procured and provided SBA-backed Section 7(a) loans to borrowers who were ineligible to receive such loans.  As a result, defendants misrepresented and failed to disclose to investors material adverse facts concerning Allied Capital's financial condition and prospects.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action pursuant to: (a) Section 27 of the Exchange Act, 15 U.S.C. § 78aa; and (b) 28 U.S.C. §§ 1331 and 1337.

6.    This action arises under and pursuant to: (a) Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); (b) Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5; and (c) Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

7.    Venue is proper in this District pursuant to Section 27 of the Exchange Act,15 U.S.C. § 78aa.

8.    In furtherance of and in connection with the acts alleged herein, Defendants directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephonic communications, the Internet, and the facilities of the New York Stock Exchange (the "NYSE"), a national securities exchange.

## PARTIES

9.    Plaintiff John Anderson purchased Allied Capital securities during the Class Period, as set forth in the attached Certification, and was damaged thereby.

10.    Defendant Allied Capital Corp. is a Maryland corporation with its principal place of business situated at 1919 Pennsylvania Avenue North West, Washington, DC 20006. The Company is a principal investment firm specializing in buyouts, acquisitions, recapitalizations, note purchases, growth capital, and middle market investments. The firm also provides debt financing in the form of senior loans, second lien debt, subordinated debt, and unitranche facilities. It prefers to invest in business services, financial services, consumer products, healthcare services, energy services, and consumer services sectors.

11.    Defendant William L. Walton  ("Walton") is the Company's Chairman, President and Chief Executive Officer ("CEO").

12.    Defendant Penni F. Roll ("Roll")  is the Company's Chief Financial Officer ("CFO").

13.    Defendant Joan M. Sweeney ("Sweeney") is the Company's Chief Operating Officer and a Director.

14.    Defendants Walton, Roll and Sweeney are collectively referred to herein as the "Individual Defendants."

15.    Because of the Individual Defendants' positions with the Company, they had

- 3 -

access to the adverse undisclosed information about the Company's business, operations,

operational trends, financial statements and markets via access to internal corporate documents

(including the Company's operating plans, budgets, forecasts and reports of actual operations

compared thereto), conversations and connections with other corporate officers and employees,

attendance at management and Board of Directors meetings and committees thereof and via

reports and other information provided to them in connection therewith.

16.    It is appropriate to treat the Individual Defendants as a group for pleading

purposes and to presume that the false, misleading and incomplete information conveyed in the

Company's public filings, press releases and other publications as alleged herein are the

collective actions of the narrowly defined group of defendants identified above. Each of the

above officers of Technical Olympic, by virtue of their high-level positions with the Company,

directly participated in the management of the Company, was directly involved in the day-to-day

operations of the Company at the highest levels and was privy to confidential proprietary

information concerning the Company and its business, operations, growth, financial statements,

and financial condition, as alleged herein. Said defendants were involved in drafting, producing,

reviewing and/or disseminating the false and misleading statements and information alleged

herein, were aware, or recklessly disregarded, that the false and misleading statements were

being issued regarding the Company, and approved or ratified these statements, in violation of

the federal securities laws.

17.    As officers and controlling persons of a publicly-held company whose common

stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded

on the New York Stock Exchange ("NYSE") and governed by the provisions of the federal

securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and

truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management and earnings, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

18.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with Allied Capital, each of the Individual Defendants had access to the adverse undisclosed information about Allied Capital's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about Allied Capital and its business issued or adopted by the Company materially false and misleading.

19.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed

herein and is therefore primarily liable for the representations contained therein.

20.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Allied Capital common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Allied Capital's business, operations, management and the intrinsic value of Allied Capital common stock; and (ii) caused plaintiff and other members of the Class to purchase Allied Capital's common stock at artificially inflated prices.

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Defendant Allied Capital is a principal investment firm specializing in buyouts, acquisitions, recapitalizations, note purchases, growth capital and middle market investments. The  Company's portfolio of investments includes companies involved in business services, financial services, consumer products, healthcare services, energy services, and the consumer services sectors.  One of Allied Capital's portfolio companies is Business Loan Express, which originates, sells, and services primarily real estate secured small business loans specifically for businesses with financing needs of up to $4.0 million. Business Loan Express provides SBA 7(a) loans, conventional small business loans and small investment real estate loans.

22.     The Small Business Administration is a federal agency that, among other things, offers loan guarantee programs to assist small businesses.  The SBA Section 7(a) Loan Guarantee Program authorizes the SBA to lend money to qualified business by having the SBA provide loan guarantees to participating, private-sector lenders (who are also referred to as "participants').  Section 7(a) loans are the most frequently used loans within the SBA's business

loan program, but must meet certain underwriting criteria. Only a portion of a Section 7(a) loan is guaranteed; thus, the borrower is required to make a capital contribution to ensure that both the SBA and the lender share the risk of the borrower defaulting. If a default occurs, the SBA will reimburse the lender for its loss, up to the percentage of the SBA's guarantee.

23.    Under the Section 7(a) program, the lender makes the decision whether to make the loan, and the SBA guarantee against payment default does not cover imprudent loan decisions by the lender or misrepresentations by the borrowers. The SBA's guarantee is expressly subject to the agency's "Written Authorization Agreement" which is executed by the SBA and the lender. Moreover, the SBA is not liable for its guarantee if the lender has not substantially complied with the SBA's regulations or underwriting requirements.

**False and Misleading Statements During the Class Period**

24.    On March 6, 2006, Allied Capital issued a press release announcing its financial results for 2005. The press release stated in relevant part as follows:

> WASHINGTON--(BUSINESS WIRE)--March 6, 2006--Allied Capital Corporation (NYSE:ALD) today announced 2005 financial results.
>
> Highlights for 2005
>
> * Net income was $6.36 per share, or $872.8 million
> * Net investment income was $1.00 per share, or $137.2 million
> * The total of net investment income and net realized gains was $2.99 per share, or $410.7 million
> * Net unrealized appreciation was $3.37 per share, or $462.1 million
> * Regular quarterly dividends of $2.30 per share; an extra cash dividend of $0.03 per share was paid for 2005
> * Net asset value was $19.17 per share
> * Shareholders' equity was $2.6 billion
> * New investments totaled $1.68 billion for the year, including $347.5 million in the fourth quarter
>
> Operating Results

For the year ended December 31, 2005, net investment income was $137.2 million or $1.00 per share, as compared to $201.0 million or $1.52 per share for the year ended December 31, 2004. Net realized gains were $273.5 million or $1.99 per share for the year ended December 31, 2005, as compared to $117.2 million or $0.88 per share for the year ended December 31, 2004. The sum of net investment income and net realized gains was $410.7 million or $2.99 per share for the year ended December 31, 2005, as compared to $318.2 million or $2.40 per share for the year ended December 31, 2004.

Net income for the year ended December 31, 2005, was $872.8 million or $6.36 per share, including net unrealized appreciation of $462.1 million or $3.37 per share. Net income for the year ended December 31, 2004, was $249.5 million or $1.88 per share, after net unrealized depreciation of $68.7 million or $0.52 per share. Net income can vary substantially from year to year primarily due to changes in unrealized appreciation or depreciation and the recognition of realized gains or losses, which vary from year to year.

For the three months ended December 31, 2005, net investment income was $37.1 million or $0.27 per share, as compared to $54.7 million or $0.40 per share for the three months ended December 31, 2004. Net realized losses were $15.0 million or $0.11 per share for the three months ended December 31, 2005, as compared to $58.5 million or $0.43 per share for the three months ended December 31, 2004. The sum of net investment income and net realized losses was $22.1 million or $0.16 per share for the three months ended December 31, 2005, as compared to a net loss of $3.8 million or $0.03 per share for the three months ended December 31, 2004.

Net income for the three months ended December 31, 2005, was $328.1 million or $2.36 per share, including net unrealized appreciation of $306.1 million or $2.20 per share. Net income for the three months ended December 31, 2004, was $47.8 million or $0.35 per share, including net unrealized appreciation of $51.7 million or $0.38 per share. Net income can vary substantially from quarter to quarter primarily due to changes in unrealized appreciation or depreciation and the recognition of realized gains or losses, which vary from quarter to quarter. As a result, quarterly comparisons of net income may not be meaningful.

For the year ended December 31, 2005, the Company invested a total of $1.68 billion. After total portfolio repayments and asset sales of $1.5 billion, including $718.1 million from the sale of the CMBS and CDO portfolio, and valuation and other changes during the year, the total portfolio was $3.6 billion at December 31, 2005. At December 31, 2005, the overall weighted average yield on the interest-bearing portfolio was 12.8%, as compared to 14.0% at December 31, 2004.

Shareholders' equity was $2.6 billion at December 31, 2005, with a net asset value

per share of $19.17 as compared to $2.0 billion or $14.87 per share at December 31, 2004.

Private Finance

The private finance portfolio totaled $3.5 billion at December 31, 2005. Loans and debt securities, which totaled $2.1 billion at December 31, 2005, had a weighted average yield of 13.0% as compared to 13.9% at December 31, 2004. Private finance investments funded totaled $330.3 million for the quarter. Significant new private finance investments during the fourth quarter of 2005 included:

   * $64.9 million in the preferred shares of Callidus MAPS CLO Fund I LLC;
   * $51.1 million in financing to support a minority recapitalization of Network Hardware Resale, Inc., a provider of pre-owned networking equipment;
   * $45.9 million to Callidus Capital Corporation pursuant to its existing credit facility;
   * $31.9 million of financing to support the buyout of Promo Works, L.L.C., an in-store product sampling company;
   * $20.4 million of financing to support the leveraged recapitalization of Universal Air Filter Company, a designer and manufacturer of custom electronics cooling air filters;
   * $18.3 million in senior financing to Event Rentals, Inc., a party and special event rental company;
   * $16.6 million to Mercury Air Centers, Inc., an operator of fixed base operations, to finance several acquisitions;
   * $14.9 million in financing to Triview Investments, Inc. - $7.5 million to finance a recapitalization of Triax Holdings, LLC and $7.4 million in acquisition financing to Longview Cable & Data, LLC;
   * $14.8 million in acquisition financing to Red Hawk Industries, a provider of electronic and physical security products, systems and services to financial institutions;
   * $10.9 million to support the buyout of Transamerican Auto Parts, LLC, a retailer, wholesaler and manufacturer/supplier of parts and accessories for light trucks, Jeep vehicles and SUVs;
   * $10.0 million to Business Loan Express, LLC, under a short-term revolving credit facility;
   * $8.5 million in growth financing to S.B. Restaurant, Inc., an owner and operator of casual dining, full-service restaurants; and
   * $7.2 million in financing to support a recapitalization of Geotrace Technologies, Inc., a provider of subsurface imaging solutions and sophisticated reservoir analysis to the oil and gas industry.

Investments funded in January and February of 2006 totaled $526.3 million.

Portfolio Quality

Allied Capital employs a grading system to monitor the quality of its portfolio. Grade 1 is for those investments from which a capital gain is expected. Grade 2 is for investments performing in accordance with plan. Grade 3 is for investments that require closer monitoring; however, no loss of investment return or principal is expected. Grade 4 is for investments that are in workout and for which some loss of current investment return is expected, but no loss of principal is expected. Grade 5 is for investments that are in workout and for which some loss of principal is expected.

At December 31, 2005, Grade 1 investments totaled $1.6 billion, or 45.6% of the total portfolio at value; Grade 2 investments totaled $1.7 billion, or 48.0% of the total portfolio; Grade 3 investments totaled $149.1 million, or 4.1% of the total portfolio; Grade 4 investments totaled $26.5 million, or 0.7% of the total portfolio; and Grade 5 investments totaled $57.0 million, or 1.6% of the total portfolio.

Loans and debt securities over 90 days delinquent totaled $80.7 million at December 31, 2005, as compared to $132.6 million at December 31, 2004. Loans and debt securities not accruing interest totaled $155.8 million at December 31, 2005, as compared to $114.9 million at December 31, 2004. In general, the company does not accrue interest on loans or debt securities where there is doubt about interest collection or where the enterprise value of the portfolio company may not support further accrual. As a result loans or debt securities on non-accrual may be different than loans or debt securities that are over 90 days delinquent.

Liquidity and Capital Resources

At December 31, 2005, the company had cash and investments in money market securities of $53.3 million, a newly established liquidity portfolio totaling $200.3 million, outstanding long-term debt of $1.2 billion, and outstanding borrowings of $91.8 million on a revolving line of credit. At December 31, 2005, the company had a weighted average cost of debt of 6.5% and its regulatory asset coverage was 309%. The company is required to maintain regulatory asset coverage of at least 200%.

On January 31, 2006, the Company sold 3.0 million shares of its common stock for proceeds totaling $83.0 million, net of underwriting discounts and estimated offering expenses. The Company primarily used the net proceeds of the offering to reduce borrowings under its revolving line of credit and for general corporate purposes.

Quarterly Dividend of $0.59 Per Share Declared

As previously released on January 23, 2006, the Company declared its 170th regular quarterly dividend of $0.59 per share for the first quarter of 2006. The dividend is payable as follows:

Record date:    March 17, 2006
Payable date:   March 31, 2006

The Company's dividend is paid from taxable income. The Board determines the dividend based on annual estimates of taxable income, which differ from book income due to changes in unrealized appreciation and depreciation and due to temporary and permanent differences in income and expense recognition.

25.    On March 13, 2006 Allied Capital filed its annual report for the period ended December 31, 2005 with the SEC on Form 10-K, which was signed by the Individual Defendants and reaffirmed the Company's previously announced financial results. Pursuant to Section 302 of Sarbanes-Oxley, the Form 10-K included certifications signed by the Individual Defendants stating that the Form 10-K did not include any material misrepresentations.

26.    On May 3, 2006, the Company issued a press release announcing its financial results for first quarter 2006 The press release stated:

**Allied Capital Announces First Quarter 2006 Financial Results; Quarterly Dividend of $0.60 Per Share Declared**

WASHINGTON, May 03, 2006 (BUSINESS WIRE) -- Allied Capital Corporation (NYSE:ALD) today announced first quarter 2006 financial results.

Highlights for Q1 2006

-- Net income was $0.70 per share, or $99.6 million
-- Net investment income was $0.29 per share, or $41.3 million
-- The total of net investment income and net realized gains was $3.34 per share, or $474.1 million
-- Net unrealized depreciation was $2.64 per share, or $374.5 million
-- First regular quarterly dividend of $0.59 per share was paid; second quarter dividend of $0.60 per share was declared

-- Net asset value per share was $19.50
-- Shareholders' equity was $2.7 billion
-- New investments totaled $797.9 million for the quarter

- 11 -

Operating Results

For the three months ended March 31, 2006, net investment income was $41.3 million or $0.29 per share, which included stock options expense of $3.6 million or $0.03 per share and excise tax expense of $8.4 million or $0.06 per share. For the three months ended March 31, 2005, net investment income was $38.8 million or $0.29 per share. Net realized gains were $432.8 million or $3.05 per share for the quarter ended March 31, 2006, which included a gain of $433.1 million, subject to post-closing adjustments, from the sale of the company's majority equity interest in Advantage Sales & Marketing, Inc. Net realized gains were $10.3 million, or $0.07 per share for the quarter ended March 31, 2005. The sum of net investment income and net realized gains was $474.1 million or $3.34 per share for the three months ended March 31, 2006, as compared to $49.0 million or $0.36 per share for the three months ended March 31, 2005.

Net income for the quarter ended March 31, 2006, was $99.6 million or $0.70 per share, after net unrealized depreciation of $374.5 million or $2.64 per share. Net income for the quarter ended March 31, 2005, was $119.6 million or $0.88 per share, after net unrealized appreciation of $70.6 million or $0.52 per share. Net income can vary substantially from quarter to quarter primarily due to changes in unrealized appreciation or depreciation and the recognition of realized gains or losses, which vary from quarter to quarter. As a result, quarterly comparisons of net income may not be meaningful.

During the first quarter, the company invested a total of $797.9 million. After principal collections related to investment repayments or sales of $340.4 million, portfolio exits and valuation and other changes during the quarter, the total portfolio was $3.7 billion at March 31, 2006. At March 31, 2006, the overall weighted average yield on the interest-bearing portfolio was 12.3%, as compared to 12.8% at December 31, 2005.

Shareholders' equity was $2.7 billion at March 31, 2006, with a net asset value per share of $19.50 as compared to $2.6 billion or $19.17 per share at December 31, 2005.

Private Finance

The private finance portfolio totaled $3.6 billion at value at March 31, 2006. Loans and debt securities, which totaled $2.5 billion at value at March 31, 2006, had a weighted average yield of 12.5%, as compared to 13.0% at December 31, 2005. New private finance investments during the first quarter of 2006 included:

-- $155.7 million to support the management-led recapitalization of Hot Stuff Foods, LLC, a provider of branded "Food on the Go" foodservice solutions;

- 12 -

-- $150.0 million in connection with the company's sale of its majority equity interest in Advantage Sales & Marketing, Inc., a sales and marketing agency providing outsourced sales, merchandising, and marketing services to the consumer packaged goods industry;

-- $99.2 million to finance the acquisition of ChemPro, Inc., a consumer products company that manufactures and markets branded and private label heavy-duty household cleaning products, which was merged with Redox Brands, a marketer of consumer branded products in the cleaning/detergent segment and a majority-owned portfolio company of Allied Capital, to form CR Brands, Inc.;

-- $74.7 million to support the buyout of 3SI Security Systems, Inc., a manufacturer of electronic security systems for cash protection;

-- $49.0 million to BI Incorporated, a provider of electronic monitoring equipment and services, community-based supervision and treatment, and re-entry programs to the criminal justice and homeland security markets in the United States;

-- $30.0 million to support the acquisition of Deluxe Entertainment Services Group, Inc., a provider of film processing services for the motion picture industry;

-- $30.0 million to support the acquisition of Integrity Interactive Corporation, a provider of outsourced corporate ethics and compliance programs for corporations with a large number of employees;

-- $28.0 million to support the acquisition of Distant Lands Trading Co., a vertically integrated provider of premium, specialty roasted coffee and coffee beans;

-- $23.5 million in the minority recapitalization of DVS VideoStream, LLC, a media supply chain management company that provides software and services to major television and movie studios;

-- $21.5 million to Healthy Pet Corp., an operator of veterinary hospitals in the eastern United States; and

-- $20.0 million to Farley's & Sathers Candy Company, Inc., a premier branded, non-chocolate confectionery business.

Investments funded during April of 2006 totaled $255 million.

Portfolio Quality

Allied Capital employs a grading system to monitor the quality of its portfolio. Grade 1 is for those investments from which a capital gain is expected. Grade 2 is

for investments performing in accordance with plan. Grade 3 is for investments that require closer monitoring; however, no loss of investment return or principal is expected. Grade 4 is for investments that are in workout and for which some loss of current investment return is expected, but no loss of principal is expected. Grade 5 is for investments that are in workout and for which some loss of principal is expected.

At March 31, 2006, Grade 1 investments totaled $1.3 billion, or 34.9% of the total portfolio at value; Grade 2 investments totaled $2.2 billion, or 59.2% of the total portfolio; Grade 3 investments totaled $95.0 million, or 2.6% of the total portfolio; Grade 4 investments totaled $64.5 million, or 1.7% of the total portfolio; and Grade 5 investments totaled $60.4 million, or 1.6% of the total portfolio.

Loans and debt securities over 90 days delinquent totaled $88.6 million at March 31, 2006, as compared to $80.7 million at December 31, 2005. Loans and debt securities not accruing interest totaled $157.7 million at March 31, 2006, as compared to $155.8 million at December 31, 2005. In general, the company does not accrue interest on loans or debt securities where there is doubt about interest collection or where the enterprise value of the portfolio company may not support further accrual. As a result, loans or debt securities on non-accrual may be different than loans or debt securities that are over 90 days delinquent.

Liquidity and Capital Resources

At March 31, 2006, the company had cash and investments in money market securities of $43.5 million, a liquidity portfolio totaling $202.4 million which includes U.S. Treasury bills and money market securities, outstanding long-term debt of $1.2 billion, and outstanding borrowings of $93.0 million on its revolving line of credit. At March 31, 2006, the company had a weighted average cost of debt of 6.5% and its regulatory asset coverage was 317%. The company is required to maintain regulatory asset coverage of at least 200%.

On May 1, 2006, the company issued $50 million of seven-year, unsecured notes with a fixed interest rate of 6.75%. This debt matures in May 2013. The proceeds from the issuance of the notes were used to repay $25 million of 7.49% unsecured long-term notes that matured on May 1, 2006, with the remainder being used to fund new portfolio investments and for general corporate purposes.

Quarterly Dividend of $0.60 per Share Declared

As previously released on April 21, 2006, the company declared its 171st regular quarterly dividend of $0.60 per share for the second quarter of 2006. The dividend is payable as follows:

- 14 -

Record date June 16, 2006

Payable date June 30, 2006

The company's dividend is paid from taxable income. The Board determines the dividend based on estimates of annual taxable income, which differ from book income due to changes in unrealized appreciation and depreciation and due to temporary and permanent differences in income and expense recognition, and the amount of taxable income carried over from the prior year for distribution in the current year.

27.    On May 8, 2006, Allied Capital  filed its quarterly report with the SEC on

Form 10-Q for first quarter 2006, the period ended March 31, 2006, which reaffirmed the

Company's previously announced financial results.  Pursuant to Section 302 of Sarbanes-Oxley,

the Form 10-Q included certifications signed by Defendants Walton and Roll stating that the

Form 10-Q did not include any material misrepresentations.

28.    On  August 2, 2006, the Company issued a press release announcing its

financial results for second quarter 2006.  The press release stated:

**Allied Capital Announces Second Quarter 2006 Financial Results; Quarterly Dividend of $0.61 Per Share Declared**

WASHINGTON, Aug 02, 2006 (BUSINESS WIRE) -- Allied Capital Corporation (NYSE:ALD) today announced second quarter 2006 financial results.

Highlights for Q2 2006

-- Net income was $0.24 per share, or $33.7 million

-- Net investment income was $0.35 per share, or $50.2 million

-- The total of net investment income and net realized gains was $1.05 per share, or $150.4 million

-- Net unrealized depreciation was $0.81 per share, or $116.7 million

-- Second regular quarterly dividend of $0.60 per share was paid; third quarter dividend of $0.61 per share was declared

- 15 -

-- Net asset value per share was $19.17

-- Shareholders' equity was $2.7 billion

-- New investments totaled $453.4 million for the second quarter and $1.3 billion for the first half of 2006

Operating Results

For the three months ended June 30, 2006, net investment income was $50.2 million or $0.35 per share, which included stock options expense of $4.6 million or $0.03 per share and excise tax expense of $3.2 million or $0.02 per share. For the three months ended June 30, 2005, net investment income was $15.3 million or $0.11 per share, which included excise tax expense of $4.0 million or $0.03 per share. Net realized gains were $100.2 million or $0.70 per share for the quarter ended June 30, 2006, and were $207.5 million or $1.52 per share for the quarter ended June 30, 2005. The sum of net investment income and net realized gains was $150.4 million or $1.05 per share for the three months ended June 30, 2006, as compared to $222.8 million or $1.63 per share for the three months ended June 30, 2005.

Net income for the quarter ended June 30, 2006, was $33.7 million or $0.24 per share, after net unrealized depreciation of $116.7 million or $0.81 per share. Net income for the quarter ended June 30, 2005, was $311.9 million or $2.29 per share, after net unrealized appreciation of $89.1 million or $0.65 per share. Net income can vary substantially from quarter to quarter primarily due to changes in unrealized appreciation or depreciation and the recognition of realized gains or losses, which vary from quarter to quarter. As a result, quarterly comparisons of net income may not be meaningful.

For the six months ended June 30, 2006, net investment income was $91.5 million or $0.64 per share, which included stock options expense of $8.2 million or $0.06 per share and excise tax expense of $11.6 million or $0.08 per share. For the six months ended June 30, 2005, net investment income was $54.0 million or $0.40 per share, which included excise tax expense of $4.0 million or $0.03 per share. Net realized gains were $533.1 million or $3.74 per share for the six months ended June 30, 2006, and were $217.8 million or $1.60 per share for the six months ended June 30, 2005. The sum of net investment income and net realized gains was $624.6 million or $4.38 per share for the six months ended June 30, 2006, as compared to $271.8 million or $2.00 per share for the six months ended June 30, 2005. Net income for the six months ended June 30, 2006, was $133.3 million or $0.94 per share, including net unrealized depreciation of $491.3 million or $3.45 per share. Net income for the six months ended June 30, 2005, was $431.5 million or $3.17 per share, including net unrealized appreciation of $159.7 million or $1.17 per share.

During the second quarter, the company invested a total of $453.4 million. After principal collections related to investment repayments or sales of $429.2 million, portfolio exits and valuation and other changes during the quarter, the total portfolio at value was $3.6 billion at June 30, 2006. At June 30, 2006, the overall weighted average yield on the interest-bearing portfolio was 12.6%, as compared to 12.8% at December 31, 2005.

Shareholders' equity was $2.7 billion at June 30, 2006, with a net asset value per share of $19.17 as compared to $2.6 billion or $19.17 per share at December 31, 2005.

Private Finance

The private finance portfolio totaled $3.5 billion at value at June 30, 2006. Loans and debt securities, which totaled $2.5 billion at value at June 30, 2006, had a weighted average yield of 12.7%, as compared to 13.0% at December 31, 2005. New private finance investments totaled $441.5 million during the second quarter of 2006, which was composed of $68.3 million of senior loans, $180.9 million of unitranche debt, $139.1 million of subordinated debt and $53.2 million of equity. These investments included:

-- $82.5 million to support the buyout of The Step2 Company, LLC, a designer, manufacturer and marketer of large-format, branded children's and home products;

-- $77.0 million to support the buyout of Cook Inlet Alternative Risk, LLC, a provider of management services to small businesses enrolled in workers' compensation self-insured groups;

-- $65.1 million to support the management-led buyout of MHF Logistical Solutions, Inc., a third-party environmental logistics company;

-- $37.1 million to Air Medical Group Holdings LLC, a provider of air medical transportation and urgent care services to rural communities, to support a recapitalization and an acquisition;

-- $33.7 million to support the buyout of York Insurance Services Group, Inc., a third-party claims administrator providing outsourced processing, adjusting and settlement claims services to insureds on behalf of their customers;

-- $30.0 million in connection with the company's sale of its equity interest in STS Operating, Inc., a distributor of fluid power components, and provider of services including engineering, design, assembly, repair and technical training;

-- $22.5 million to Regency Healthcare Group, LLC, a Medicare-certified

provider of home-based hospice services, to support an acquisition;

-- $20.0 million in the recapitalization of TransTechnology Corporation, a global designer, manufacturer and servicer of sophisticated, performance-critical lifting devices for specialty aerospace and defense applications;

-- $14.4 million to support the acquisition of Carlisle Wide Plank Floors, Inc., a manufacturer of wide plank softwood and hardwood flooring;

-- $12.5 million in the preferred shares of Callidus Debt Partners CLO Fund IV, Ltd.; and

-- $12.0 million in the recapitalization of Passport Health Communications, Inc., a healthcare technology company that offers products designed to enhance the revenue cycle management process of healthcare service providers.

Investments funded during July of 2006 totaled $274.8 million.

Portfolio Quality

Allied Capital employs a grading system to monitor the quality of its portfolio. Grade 1 is for those investments from which a capital gain is expected. Grade 2 is for investments performing in accordance with plan. Grade 3 is for investments that require closer monitoring; however, no loss of investment return or principal is expected. Grade 4 is for investments that are in workout and for which some loss of current investment return is expected, but no loss of principal is expected. Grade 5 is for investments that are in workout and for which some loss of principal is expected.

At June 30, 2006, Grade 1 investments totaled $1.2 billion, or 34.5% of the total portfolio at value; Grade 2 investments totaled $2.2 billion, or 60.6% of the total portfolio; Grade 3 investments totaled $93.1 million, or 2.6% of the total portfolio; Grade 4 investments totaled $27.4 million, or 0.8% of the total portfolio; and Grade 5 investments totaled $54.0 million, or 1.5% of the total portfolio.

Loans and debt securities over 90 days delinquent totaled $50.9 million at June 30, 2006, as compared to $80.7 million at December 31, 2005. Loans and debt securities not accruing interest totaled $112.6 million at June 30, 2006, as compared to $155.8 million at December 31, 2005. In general, the company does not accrue interest on loans or debt securities where there is doubt about interest collection or where the enterprise value of the portfolio company may not support further accrual. As a result, loans or debt securities on non-accrual may be different than loans or debt securities that are over 90 days delinquent.

Liquidity and Capital Resources

At June 30, 2006, the company had cash and investments in money market securities of $25.6 million, a liquidity portfolio totaling $201.2 million which included U.S. Treasury bills and money market and other securities, outstanding long-term debt of $1.2 billion, and outstanding borrowings of $1.8 million on its revolving line of credit. At June 30, 2006, the company had a weighted average cost of debt of 6.6% and its regulatory asset coverage was 326%. The company is required to maintain regulatory asset coverage of at least 200%.

On July 24, 2006, the company completed the sale of 4.5 million shares of common stock for net proceeds, after the underwriting discount and estimated offering expenses, of $118.1 million. On August 1, 2006, the company completed the sale of 675 thousand shares of common stock pursuant to the underwriter's over-allotment option for net proceeds, after the underwriting discount and estimated offering expenses, of $17.8 million.

On July 25, 2006, the company closed on the public issuance of $400 million of unsecured five-year notes. The notes will mature on July 15, 2011, and have a fixed interest rate of 6.625%.

After closing on these debt and equity issuances in the third quarter of 2006, there were no outstanding borrowings on the company's revolving line of credit.

Quarterly Dividend of $0.61 Per Share Declared

As previously released on July 24, 2006, the company declared its 172nd regular quarterly dividend of $0.61 per share for the third quarter of 2006. The dividend is payable as follows:

Record date: September 15, 2006

Payable date: September 29, 2006

The company's dividend is paid from taxable income. The Board determines the dividend based on estimates of annual taxable income, which differ from book income due to changes in unrealized appreciation and depreciation and due to temporary and permanent differences in income and expense recognition, and the amount of taxable income carried over from the prior year for distribution in the current year.

29.     On August 9, 2006, Allied Capital  filed its quarterly report with the SEC on Form

10-Q for second quarter 2006, the quarterly period ended June 30, 2006, which reaffirmed the

Company's previously announced financial results. Pursuant to Section 302 of Sarbanes-Oxley, the Form 10-Q included certifications signed by the Individual Defendants stating that the Form 10-Q did not include any material misrepresentations.

30.    On November 8, 2006, the Company issued a press release announcing its financial results for thIRd quarter 2006 The press release stated:

**Allied Capital Announces Second Quarter 2006 Financial Results; Quarterly Dividend of $0.61 Per Share Declared**

**Allied Capital Announces Third Quarter 2006 Financial Results Quarterly Dividend of $0.62 Per Share Declared**

WASHINGTON--(BUSINESS WIRE)--Nov. 8, 2006--Allied Capital Corporation (NYSE:ALD) today announced third quarter 2006 financial results.

Highlights for Q3 2006

   * Net income was $0.53 per share, or $77.9 million
   * Net investment income was $0.33 per share, or $48.7 million
   * The total of net investment income and net realized gains was $0.40 per share, or $58.6 million
   * Net unrealized appreciation was $0.13 per share, or $19.3 million
   * Third regular quarterly dividend of $0.61 per share was paid; fourth quarter dividend of $0.62 per share was declared
   * Net asset value per share was $19.38
   * Shareholders' equity was $2.8 billion
   * New investments totaled $629.5 million for the quarter

Operating Results

For the three months ended September 30, 2006, net investment income was $48.7 million or $0.33 per share, which included stock options expense of $3.6 million or $0.02 per share and excise tax expense of $2.5 million or $0.02 per share. For the three months ended September 30, 2005, net investment income was $46.1 million or $0.33 per share, which included excise tax expense of $1.3 million or $0.01 per share. Net realized gains were $9.9 million or $0.07 per share for the quarter ended September 30, 2006, and were $70.7 million or $0.51 per share for the quarter ended September 30, 2005. The sum of net investment income and net realized gains was $58.6 million or $0.40 per share for the three months ended September 30, 2006, as compared to $116.8 million or $0.85 per share for the three months ended September 30, 2005.

Net income for the quarter ended September 30, 2006, was $77.9 million or $0.53 per share, after net unrealized appreciation of $19.3 million or $0.13 per share. Net income for the quarter ended September 30, 2005, was $113.2 million or $0.82 per share, after net unrealized depreciation of $3.7 million or $0.03 per share. Net income can vary substantially from quarter to quarter primarily due to changes in unrealized appreciation or depreciation and the recognition of realized gains or losses, which vary from quarter to quarter. As a result, quarterly comparisons of net income may not be meaningful.

For the nine months ended September 30, 2006, net investment income was $140.2 million or $0.97 per share, which included stock options expense of $11.9 million or $0.08 per share and excise tax expense of $14.1 million or $0.10 per share. For the nine months ended September 30, 2005, net investment income was $100.2 million or $0.73 per share, which included excise tax expense of $5.3 million or $0.04 per share. Net realized gains were $543.0 million or $3.77 per share for the nine months ended September 30, 2006, and were $288.5 million or $2.11 per share for the nine months ended September 30, 2005. The sum of net investment income and net realized gains was $683.1 million or $4.74 per share for the nine months ended September 30, 2006, as compared to $388.6 million or $2.84 per share for the nine months ended September 30, 2005. Net income for the nine months ended September 30, 2006, was $211.2 million or $1.47 per share, including net unrealized depreciation of $471.9 million or $3.27 per share. Net income for the nine months ended September 30, 2005, was $544.7 million or $3.99 per share, including net unrealized appreciation of $156.0 million or $1.15 per share.

During the third quarter, the company invested a total of $629.5 million. After principal collections related to investment repayments or sales of $116.3 million and valuation and other changes during the quarter, the total portfolio at value was $4.1 billion at September 30, 2006. At September 30, 2006, the overall weighted average yield on the interest-bearing portfolio was 12.3%, as compared to 12.8% at December 31, 2005.

Shareholders' equity was $2.8 billion at September 30, 2006, with a net asset value per share of $19.38 as compared to $2.6 billion or $19.17 per share at December 31, 2005.

Private Finance

The private finance portfolio totaled $4.0 billion at value at September 30, 2006. Loans and debt securities, which totaled $2.9 billion at value at September 30, 2006, had a weighted average yield of 12.5%, as compared to 13.0% at December 31, 2005. New private finance investments totaled $629.2 million during the third quarter of 2006, which was composed of $103.0 million of senior loans, $239.3 million of unitranche debt, $190.5 million of subordinated debt and $96.4 million

of equity. These investments included:

* $157.1 million to support the management-led recapitalization of BenefitMall, Inc., a general agent focused on the small-group employee benefits market;
* $63.0 million to support the buyout of Stag-Parkway, Inc., a distributor of aftermarket parts and accessories to the recreational vehicle industry;
* $59.1 million to support the recapitalization of Penn Detroit Diesel Allison LLC, an authorized distributor of new equipment and aftermarket parts, as well as a provider of maintenance, repair and overhaul services to the heavy-duty truck industry;
* $56.2 million in the buyout of Coverall North America, Inc., a commercial cleaning franchise organization;
* $37.5 million to support the recapitalization of CSAV, Inc., a supplier of audio visual mounting equipment, lifts, stands, display accessories, and furniture used primarily to support the flat panel display and digital projector markets;
* $36.5 million to support the recapitalization of Sweet Traditions, LLC, a franchisee of Krispy Kreme Doughnut Corporation;
* $30.1 million to support the acquisition of York Insurance Services Group, Inc., a third-party claims administrator providing processing, adjusting, and settlement claims services to insured members on behalf of insurance carriers;
* $30.0 million to support the recapitalization of Bantek West, Inc., an outsourced provider of ATM services to customers including financial institutions, credit unions, non-bank ATM operators, and ATM equipment resellers;
* $22.9 million to CitiPostal, Inc. and Affiliates, a full service document storage and management company;
* $22.5 million to Meineke Car Care Centers, Inc., a franchisor in the car care sector of the automotive aftermarket industry, to support the acquisition of Econo Lube N' Tube, Inc., a franchisor of quick lube and general car care services;
* $18.6 million to support the buyout of DCWV Acquisition Corporation, a designer, producer and supplier of scrapbooking products;
* $18.1 million to support the buyout of Component Hardware Group, Inc., a supplier of hardware components, parts and plumbing products for the foodservice industry; and
* $15.0 million in growth capital to Creative Group, Inc., a concept-to-completion development, production and post-production business.

Portfolio Quality

Allied Capital employs a grading system to monitor the quality of its portfolio. Grade 1 is for those investments from which a capital gain is expected. Grade 2 is for investments performing in accordance with plan. Grade 3 is for investments that require closer monitoring; however, no loss of investment return or principal is expected. Grade 4 is for investments that are in workout and for which some

- 22 -

loss of current investment return is expected, but no loss of principal is expected. Grade 5 is for investments that are in workout and for which some loss of principal is expected.

At September 30, 2006, Grade 1 investments totaled $1.1 billion, or 26.3% of the total portfolio at value; Grade 2 investments totaled $2.8 billion, or 67.2% of the total portfolio; Grade 3 investments totaled $153.4 million, or 3.7% of the total portfolio; Grade 4 investments totaled $57.9 million, or 1.4% of the total portfolio; and Grade 5 investments totaled $59.1 million, or 1.4% of the total portfolio.

At December 31, 2005, Grade 1 investments totaled $1.6 billion, or 45.6% of the total portfolio at value; Grade 2 investments totaled $1.7 billion, or 48.0% of the total portfolio; Grade 3 investments totaled $149.1 million, or 4.1% of the total portfolio; Grade 4 investments totaled $26.5 million, or 0.7% of the total portfolio; and Grade 5 investments totaled $57.0 million, or 1.6% of the total portfolio.

Loans and debt securities over 90 days delinquent totaled $44.9 million at September 30, 2006, as compared to $80.7 million at December 31, 2005. Loans and debt securities not accruing interest totaled $161.7 million at September 30, 2006, as compared to $155.8 million at December 31, 2005. In general, the company does not accrue interest on loans or debt securities where there is doubt about interest collection or where the enterprise value of the portfolio company may not support further accrual. As a result, loans or debt securities on non-accrual may be different than loans or debt securities that are over 90 days delinquent. Loans and debt securities that are on non-accrual status and over 90 days delinquent totaled $44.9 million at September 30, 2006, as compared to $60.7 million at December 31, 2005.

Liquidity and Capital Resources

At September 30, 2006, the company had cash and investments in money market securities of $46.0 million, a liquidity portfolio totaling $201.6 million, which included U.S. Treasury bills and money market and other securities, outstanding long-term debt of $1.6 billion, and no outstanding borrowings on its revolving line of credit. At September 30, 2006, the company had a weighted average cost of debt of 6.6% and its regulatory asset coverage was 278%. The company is required to maintain regulatory asset coverage of at least 200%.

On October 16, 2006, the company repaid $150.0 million of unsecured long-term debt that matured. This debt had a fixed interest rate of 7.2%. The company used cash generated from operations and borrowings on its revolving line of credit to repay this debt.

Quarterly Dividend of $0.62 Per Share Declared

As previously released on October 20, 2006, the company declared its 173rd regular quarterly dividend of $0.62 per share for the fourth quarter of 2006. The dividend is payable as follows:

Record date: December 15, 2006
Payable date: December 27, 2006

The company's dividend is paid from taxable income. The Board determines the dividend based on estimates of annual taxable income, which differ from book income due to changes in unrealized appreciation and depreciation and due to temporary and permanent differences in income and expense recognition, and the amount of taxable income carried over from the prior year for distribution in the current year.

31.     Also on November 8, 2006, Allied Capital filed its quarterly report with the SEC on Form 10-Q for third quarter 2006, the quarterly period ended September 30, 2006, which was signed by the Individual Defendants reaffirmed the Company's previously announced financial results.  Pursuant to Section 302 of Sarbanes-Oxley, the Form 10-Q included certifications signed by the Individual Defendants stating that the Form 10-Q did not include any material misrepresentations.

32.     The statements referenced above in ¶¶24-31, above, were materially false and misleading because defendants knew but did not disclose, among other things,: (i) that the Company's BLX subsidiary originated and provided to borrowers fraudulently obtained small business loans under the SBA's Section 7(a) loan program; and (ii) that BLX provided Section 7(a) loans without verifying that the borrowers were eligible for SBA-backed loans or making the required capital contributions . As a result of these material omissions, defendants' Class Period statements misrepresented Allied Capital's operations, prospects and financial performance.

**Disclosures at the End of The Class Period**

33.   On January 11, 2007, Allied Capital issued the following press release:

**Allied Capital Issues Statement Regarding Business Loan Express**

WASHINGTON--(BUSINESS WIRE)--Jan. 11, 2007--Allied Capital Corporation (NYSE:ALD) today issued the following statement to clarify potential misperceptions resulting from media coverage of the indictment of a former employee of Business Loan Express, LLC (BLX), an Allied Capital portfolio company, relating to BLX loans guaranteed by the Small Business Administration (SBA):

We believe that it is important to put the potential financial impact of this matter into its perspective. BLX is one of Allied Capital's approximately 140 portfolio companies. We have been monitoring this situation, as well as other factors at BLX, in determining the fair value of our investment in BLX, and as we disclosed in our September 30, 2006 Form 10-Q, we valued that investment at $284.9 million, including a $34.3 million write-down for the quarter. This means that BLX represented only 6.2% of Allied Capital's total assets of $4.6 billion and 5.4% of total interest and related portfolio income for the nine months ended September 30, 2006.

As we disclosed in our Form 10-Q for the quarter ended September 30, 2006, the Office of the Inspector General of the SBA and the Department of Justice have been conducting investigations into the lending activities of BLX and its Detroit office. BLX closed its Detroit office in August 2006, and Mr. Harrington ceased working for BLX in early September 2006.

In addition, it is our understanding that if the allegations against Mr. Harrington are proven true, BLX will also have suffered losses on account of Mr. Harrington's conduct. It is our understanding that BLX is cooperating fully with the SBA and Department of Justice in their investigations, and we will continue to monitor the situation closely.

34.   As a result of this news, the Company's stock fell from the previous day's closing price of $31.58, to close on January 11 at $29.40, a drop of $2.18 per share. During the Class Period, the stock traded as high as $32.98 per share on January 5, 2007, only days before the disclosure of the improper loan practices at the Company's BLX subsidiary.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:<br>FRAUD-ON-THE-MARKET DOCTRINE

35.   At all relevant times, the market for Allied Capital common stock was an

- 25 -

efficient market for the following reasons, among others:

        (a)     Allied Capital common stock was listed and actively traded, on the NYSE, a highly efficient market;

        (b)     As a regulated issuer, the Company filed periodic public reports with the SEC; and,

        (c)     Allied Capital regularly issued press releases which were carried by national news wires. Each of these releases was publicly available and entered the public marketplace.

        (d)     As a result, the market for Allied Capital securities promptly digested current information with respect to the Company from all publicly-available sources and reflected such information in the Company's stock price. Under these circumstances, all purchasers of Allied Capital common stock during the Class Period suffered similar injury through their purchase of stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

36.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. To the extent that the specific statements pleaded herein were identified as forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking was made the particular speaker

knew that the particular forward-looking statement was false, and/or the forward-looking

statement was authorized and/or approved by an executive officer of the Company who knew

that those statements were false when made.

## SCIENTER ALLEGATIONS

37. As alleged herein, defendants acted with scienter in that defendants knew that the

public documents and statements issued or disseminated in the name of the Company were

materially false and misleading; knew that such statements or documents would be issued or

disseminated to the investing public; and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the

federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their

receipt of information reflecting the true facts regarding Allied Capital, their control over, and/or

receipt and/or modification of Allied Capital's allegedly materially misleading misstatements

and/or their associations with the Company which made them privy to confidential proprietary

information concerning Allied Capital, participated in the fraudulent scheme alleged herein..

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action as a class action pursuant to Rules 23(a) and

(b)(3) of the Federal Rule of Civil Procedure on behalf of a Class, consisting of all persons who

purchased or otherwise acquired Allied Capital common stock between March 1, 2006 and

January 10, 2007, inclusive (the "Class Period"), and who were damaged thereby. Excluded from

the Class are Defendants, members of the immediate family of each of the Defendants, any

subsidiary or affiliate of Allied Capital and the directors, officers, and employees of Allied

Capital or its subsidiaries or affiliates, or any entity in which any excluded person has a

controlling interest, and the legal representatives, heirs, successors and assigns of any excluded

person.

39.     The members of the Class are so numerous that joinder of all members is

impracticable. While the exact number of Class members is unknown to Plaintiff at this time and

can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands

of members of the Class located throughout the United States. Record owners and other members

of the Class may be identified from records maintained by the Company and/or its transfer agents

and may be notified of the pendency of this action by mail, using a form of notice similar to that

customarily used in securities class actions.

40.     Plaintiff's claims are typical of the claims of the other members of the Class

as all members of the Class were similarly affected by Defendants' wrongful conduct in violation

of federal law that is complained of herein.

41.     Plaintiff will fairly and adequately protect the interests of the members of

the Class and has retained counsel competent and experienced in class and securities litigation.

42.     Common questions of law and fact exist as to all members of the Class and

predominate over any questions solely affecting individual members of the Class. Among the

questions of law and fact common to the Class are:

        (i)     whether the federal securities laws were violated by Defendants' acts

and omissions as alleged herein;

        (ii)    whether Defendants participated in and pursued the common course

of conduct complained of herein;

        (iii)   whether documents, press releases, and other statements

disseminated to the investing public and the Company's shareholders during the Class Period

misrepresented material facts about the business, operations, financial condition, and prospects of

- 28 -

Allied Capital;

(iv)    whether statements made by Defendants to the investing public during the Class Period misrepresented and/or omitted to disclose material facts about the business, operations, value, performance, and prospects of the Company;

(v)    whether the market price of Allied Capital common stock during the Class Period was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and

(vi)    the extent to which the members of the Class have sustained damages and the proper measure of damages.

43.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this suit as a class action.

## FIRST CLAIM

### Breach of Fiduciary Duty
### <u>Against All Defendants</u>

44.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.    Defendants owed a fiduciary duty to the Class, as purchasers and owners of Allied Capital stock.

46.    Defendants, by means of their making the foregoing false and misleading

statements, breached their fiduciary duty to the Class.

## SECOND CLAIM

### Violations Of Section 10(b) Of The Exchange Act
### And Rule 10b-5Promulgated Thereunder
### <u>Against All Defendants</u>

47.     Plaintiff repeats and realleges each and every allegation contained above.

48.     Each of the Defendants: (a) knew or recklessly disregarded material adverse nonpublic information about the Company's financial results and then existing business conditions, which was not disclosed; and (b) participated in drafting, reviewing and/or approving the misleading statements, releases, reports, and other public representations of and about IFO.

49.     During the Class Period, Defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

50.     Defendants have violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon the purchasers of Allied Capital stock during the Class Period.

51.     Plaintiff and the Class have suffered damage in that, in reliance on the integrity of the market, they paid artificially inflated prices for Allied Capital stock. Plaintiff and

the Class would not have purchased Allied Capital stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' false and misleading statements.

## THIRD CLAIM

### Violations Of Section 20(a) Of The Exchange Act
### Against the Individual Defendants

52.    Plaintiff repeats and realleges each and every allegation contained above.

53.    The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act. By reason of their senior executive positions they had the power and authority to cause the Company to engage in the wrongful conduct complained of herein.

54.    By reason of such wrongful conduct, the Individual Defendants are liable pursuant to § 20(a) of the Exchange Act. As a direct and proximate result of their wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Allied Capital stock during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

- 31 -

expenses incurred in this action, including counsel fees and expert fees; and

        D.     Such other and further relief as the Court may deem just and

proper.

Dated: February 26, 2007

**FREEMAN, WOLFE & GREENBAUM, P.A.**

By: _____

    Steven R. Freeman, USDC Bar No. 476221
Mercantile – Towson Building
409 Washington Avenue
Suite 300
Towson , MD  21204
Telephone:    (410) 321-8400
Facsimile:    (410) 321-8407

**O'ROURKE KATTEN & MOODY**
Joel L. Lipman
161 North Clark Street
Suite 2230
Chicago, IL 60601
Telephone:    (312) 849-2020
Facsimile:    (312) 849-2021

***Attorneys for Plaintiff***

- 33 -

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: February 26, 2007

**FREEMAN, WOLFE & GREENBAUM, P.A.**

By: _____

Steven R. Freeman, USDC Bar No. 476221
Mercantile – Towson Building
409 Washington Avenue
Suite 300
Towson , MD  21204
Telephone:    (410) 321-8400
Facsimile:    (410) 321-8407

**O'ROURKE KATTEN & MOODY**
Joel L. Lipman
161 North Clark Street
Suite 2230
Chicago, IL 60601
Telephone:    (312) 849-2020
Facsimile:    (312) 849-2021

*Attorneys for Plaintiff*

- 34 -

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Dana Ross, Individually and on Behalf of All Others Similarly Situated | William L. Walton,  Penni F. Roll,  Joan M. Sweeney and Allied Capital Corporation |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF       88888<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Steven R. Freeman, USDC Bar No. 476221, Freeman, Wolfe & Greenbaum, P.A.; Mercantile–Towson Building, 409 Washington Avenue, Suite 300, Towson, MD 21204; (410)321-8400 | |

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

⊙ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant

○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A.  Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.  Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

⊙ **E.  General Civil (Other)**      OR      ○ **F.  Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530** Habeas Corpus-General<br>☐ **510** Motion/Vacate Sentence | ☐ **442** Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895** Freedom of Information Act<br>☐ **890** Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **152** Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710** Fair Labor Standards Act<br>☐ **720** Labor/Mgmt. Relations<br>☐ **730** Labor/Mgmt. Reporting & Disclosure Act<br>☐ **740** Labor Railway Act<br>☐ **790** Other Labor Litigation<br>☐ **791** Empl. Ret. Inc. Security Act | ☐ **441** Voting (if not Voting Rights Act)<br>☐ **443** Housing/Accommodations<br>☐ **444** Welfare<br>☐ **440** Other Civil Rights<br>☐ **445** American w/Disabilities-Employment<br>☐ **446** Americans w/Disabilities-Other | ☐ **110** Insurance<br>☐ **120** Marine<br>☐ **130** Miller Act<br>☐ **140** Negotiable Instrument<br>☐ **150** Recovery of Overpayment & Enforcement of Judgment<br>☐ **153** Recovery of Overpayment of Veteran's Benefits<br>☐ **160** Stockholder's Suits<br>☐ **190** Other Contracts<br>☐ **195** Contract Product Liability<br>☐ **196** Franchise | ☐ **441** Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
◉ **1** Original Proceeding  ○ **2** Removed from State Court  ○ **3** Remanded from Appellate Court  ○ **4** Reinstated or Reopened  ○ **5** Transferred from another district (specify)  ○ **6** Multi district Litigation  ○ **7** Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Breach of Fiduciary Duty; 15 U.S.C § 78j(b) and 78t(a)

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ☒ ACTION UNDER F.R.C.P. 23  DEMAND $ _____  Check YES only if demanded in complain  **JURY DEMAND:** YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE  2/26/07  SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.** CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.** CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

**VI.** CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.** RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

## SWORN CERTIFICATION OF PLAINTIFF
## ALLIED CAPITAL CORPORATION SECURITIES LITIGATION

I, Dana Ross, certify that:

1.     I have reviewed the Complaint and authorized its filing.

2.     I did not purchase ALLIED CAPITAL CORPORATION, the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.     I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.     My transactions in ALLIED CAPITAL CORPORATION during the Class Period set forth in the Complaint are as follows:

SEE ATTACHED SCHEDULE

(List Additional Transactions On Separate Page If Necessary)

5.     I have not served as a representative party on behalf of a class under this title during the last three years.

6.     I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

☐ Check here if you are a current employee or former employee of the defendant Company.

I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: 2/23/07

_Dana R. Ross_

(Please Sign Your Name Above)
DANA ROSS

## EXHIBIT

## Transactions of Dana Ross in Allied Capital Corporation

| TRANSACTION DATE | TRANSACTION TYPE | NUMBER OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 03/17/2006 | PURCHASE | 2.4374 | 30.31 |
| 06/16/2006 | PURCHASE | 2.6421 | 28.99 |
| 09/15/2006 | PURCHASE | 2.6008 | 30.56 |
| 12/15/2006 | PURCHASE | 2.5345 | 32.51 |
| 12/22/2006 | PURCHASE | 0.2289 | 29.58 |