## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| DANA ROSS, Individually and On Behalf of All Others Similarly Situated, ) <br><br> Plaintiff, ) <br><br> vs. ) <br><br> WILLIAM L. WALTON, PENNI F. ROLL, JOAN M. SWEENEY, and ALLIED CAPITAL CORPORATION, ) <br><br> Defendants. ) | Civil Action No. 1:07-cv-00402-EGS |

## MOTION OF THE INDIVIDUAL INVESTORS GROUP
## FOR APPOINTMENT AS LEAD PLAINTIFF AND
## APPROVAL OF CHOICE OF LEAD COUNSEL

David Gonzales, Jagdish Parzhk and Abe Wiener (collectively, the "Individual Investors Group" or "Movant") respectfully move this Court for an order (1) appointing the Individual Investors Group as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B) (the "PSLRA"); and (2) approving Movant's selection of the law firm of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. and Glancy Binkow & Goldberg LLP as Co-Lead Counsel. As set forth more fully in the accompanying Memorandum in Support of Motion of the Individual Investors Group for Appointment as Lead Plaintiff and Approval of Choice of Lead Counsel, Movant submits this Motion on the grounds that it is the "most adequate plaintiff" pursuant to the PSLRA.

Dated: May 9, 2007

Respectfully submitted,

**COHEN, MILSTEIN, HAUSFELD
& TOLL, P.L.L.C**

/s/   Steven J. Toll
Steven J. Toll (D.C. Bar No. 225623)
Daniel S. Sommers (D.C. Bar No. 416549)
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael M. Goldberg
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

***Proposed Co-Lead Counsel for Movant***

## UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

| | |
|---|---|
| DANA ROSS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM L. WALTON, PENNI F. ROLL, JOAN M. SWEENEY, and ALLIED CAPITAL CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 1:07-cv-00402-EGS

## MEMORANDUM IN SUPPORT OF MOTION OF INDIVIDUAL INVESTORS GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF LEAD COUNSEL

David Gonzales, Jagdish Parzhk and Abe Wiener (collectively, the "Individual Investors Group" or "Movant") respectfully submit this memorandum of law in support of their motion for an order (1) appointing the Individual Investors Group as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B); and (2) approving the Individual Investors Group's selection of the law firms of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("Cohen Milstein") and Glancy Binkow & Goldberg LLP as Co-Lead Counsel. Movant submits this motion on the grounds that it is the "most adequate plaintiff" pursuant to the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 ("PSLRA").

## PRELIMINARY STATEMENT

During the period between March 1, 2006 and January 10, 2007, inclusive (the "Class Period"), Movant collectively purchased 6300 shares of Allied Capital Corporation ("Allied Capital" or the "Company") stock at prices between $30.00 and $31.69 per share and suffered estimated losses of $9354.00 as a result of the securities law violations alleged in the complaint filed in the above-captioned action (the "Action"). *See* Certification of Movant, Toll Decl.,[1] Exhibit B. Thus, Movant has a significant financial interest in the outcome of the case, and is precisely the type of investor who should be appointed as Lead Plaintiff in this case.

## THE CLAIMS ASSERTED

The complaint filed in the Action alleges that Allied Capital and certain of its officers and directors (collectively, "Defendants") violated the Securities Exchange Act of 1934 and breached their fiduciary duty to investors as a result of Defendants' false and misleading statements and omissions, which artificially inflated the price of Allied Capital's stock during the Class Period, causing harm to the Company's investors. Throughout the Class Period, Defendants misrepresented and failed to disclose to investors material adverse facts concerning the Company's financial condition and prospects. In particular, Defendants failed to disclose that Business Loan Express ("BLX"), one of Allied Capital's subsidiaries, fraudulently procured and provided Section 7(a) Loans, backed by the U.S. Small Business Administration, to borrowers who had not made their required capital contributions or were otherwise ineligible to receive such loans. On January 11, 2007, Allied Capital issued a press release in which it revealed to investors what it had known all along, namely the improper loan practices at the Company's

---

[1]     All exhibits are attached to the accompanying Declaration of Steven J. Toll dated May 9, 2007 and submitted in support of Movant's motion for appointment as Lead Plaintiff (the "Toll Decl.").

BLX subsidiary. As a result of this news, the Company's stock fell from the previous day's closing price of $31.58 to close on January 11 at $29.40, a drop of $2.18 per share.

## ARGUMENT

As discussed below, Movant satisfies each of the requirements of the PSLRA and is therefore qualified for appointment as Lead Plaintiff in this Action. Additionally, Movant seeks Court approval of his selection of Lead Counsel for the Class.

### A.    The Procedure Required By the PSLRA for the Appointment of Lead Plaintiffs

Section 21D of the PSLRA, codified as 15 U.S.C. § 78u-4, establishes a procedure for the appointment of lead plaintiffs in "each private action arising under the [Exchange Act or Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." § 21D(a)(1), § 27(a)(1). First, the plaintiffs who file the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiffs. PSLRA § 21D(a)(3)(A)(i), 15 U.S.C. § 78u-4(a)(3)(A)(i). The first such notice here was published on March 10, 2007 (*see* Toll Decl., Ex. A).

The PSLRA further provides that within 90 days after the publication of the notice of pendency, or as soon as practicable after the actions have been consolidated, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." PSLRA § 21D(a)(3)(B)(i), 15 U.S.C. § 78u-4(a)(3)(B)(i).

The PSLRA also provides the following standard for determining who is the "most adequate plaintiff":

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person *or group of persons* that –

> (aa)    has either filed the complaint or made a motion in response to a notice. . . [within 60 days of publication of the notice]
>
> (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

PSLRA § 21D(a)(3)(B)(iii)(I), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added).

As set forth below, Movant is the "most adequate plaintiff."

### 1.    Movant Has Complied with the Procedural Requirements of the PSLRA

The 60-day time period provided by the PSLRA in which applications for appointment as lead plaintiffs must be filed expires on May 9, 2007. Movant has moved within the statutory 60-day time period. The motion contains the required certification setting forth, *inter alia*, Movant's transactions in Allied Capital's securities during the Class Period, and indicates that Movant has reviewed a complaint filed in the Action and is willing to serve as a representative party on behalf of the Class. *See* Toll Decl., Ex. B. In addition, Movant has selected and retained competent and experienced counsel, as set forth in counsels' resume. *See* Toll Decl., Ex. C and D. As noted in the firm resumes, Cohen Milstein and Glancy Binkow & Goldberg LLP have developed excellent reputations for successfully prosecuting federal securities laws claims.

### 2.    Movant has the Largest Financial Interest in the Relief Sought

By its plain language, the PSLRA authorizes courts to appoint a "group of persons" as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Applying a "rule of reason" analysis, as well as guidance from the Securities and Exchange Commission, this Court has held that groups

of unrelated individuals may serve as lead plaintiffs. *See In re Baan Sec. Litig.*, 186 F.R.D. 214, 216 (D.D.C. 1999) ("the text of the PSLRA does not limit the composition of a 'group of persons' to those only with a pre-litigation relationship, nor does the legislative history provide a sound enough foundation to support such a gloss"). The Individual Investors Group, comprised of three individual investors with significant losses, represents an ideal-sized group for lead plaintiff purposes. *See In re Baan*, 186 F.R.D. at 217 ("relying on intuition and experience, this Court generally shares the SEC's view that where unrelated investors are to be Lead Plaintiff, a triumvirate is preferable").

The Individual Investors Group is presumptively the most adequate plaintiff because, on information and belief, it has the largest financial interest in the relief sought by the Class of any movant. During the proposed Class Period, Movant purchased 6,300 shares of Allied Capital's stock at a cost of approximately $194,719.00. Movant's losses are estimated at approximately $9354.00. *See* Toll Decl., Ex. B. As of this filing, Movant is not aware of any other person or entity seeking appointment as lead plaintiff who claims to have sustained greater financial losses in connection with the purchase and sale of the Company's common stock during the Class Period. Accordingly, Movant has satisfied all of the PSLRA's prerequisites for appointment as lead plaintiff pursuant to PSLRA § 21D(a)(3)(B), 15 U.S.C. § 78u–4(a)(3)(B), and should be appointed as Lead Plaintiff pursuant to PSLRA § 21D(a)(3)(B)(iii), 15 U.S.C. §78u-4(a)(3)(B)(iii).

### 3.    Movant Otherwise Satisfies the Requirements of Rule 23

In addition to satisfying the requirements set forth above, a lead plaintiff must preliminarily fulfill the requirements of Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) provides that a party may serve as a class representative only if the following four prerequisites are met:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Only two of the four prerequisites to class certification, typicality and adequacy, directly address individual characteristics of class representatives. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiffs move for class certification. *See In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 18 (D.D.C. 2006); *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C. 2005). This interpretation is supported by the PSLRA, which provides that the most adequate plaintiff presumption may be rebutted only by proof that the plaintiff "will not fairly and adequately protect the interests of the class; or ... is subject to unique defenses that render such plaintiff incapable of adequately representing the class." PSLRA § 21D(a)(3)(B)(iii)(II), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, Movant purchased Allied Capital stock during the Class Period: (a) at prices alleged to have been artificially inflated by the false and misleading statements issued by Defendants; and (b) was damaged by the alleged fraud. The typicality requirement is generally satisfied if "each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Disability Rights Council of Greater Washington v. Washington Metro. Area Transp. Auth.*, 239 F.R.D. 9, 27 (D.D.C. 2006) (quoting *Pigford v. Glickman*, 182 F.R.D. 341, 349 (D.D.C. 1998)). Here, like Movant's, each class member's claim arises from the

same course of alleged misrepresentations by Defendants, and all class members will require the same arguments to prove Defendants' liability. As Movant's claims are co-extensive with those of the other class members, Movant satisfies the typicality requirement of Rule 23(a). *See In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 260 (D.D.C. 2002) (holding that "the facts and claims of each class member do not have to be identical to support a finding of typicality").

Movant is also an adequate representative of the Class. In order to be an adequate representative, a named plaintiff must not have interests that conflict with the interests of other class members and "must be able 'to vigorously prosecute the interests of the class through qualified counsel.'" *DL v. Dist. of Columbia*, 237 F.R.D. 319, 323 (D.D.C. 2006) (citations omitted). Movant and proposed Co-Lead Counsel have no conflicts of interest with other class members. Movant has indicated that it will protect the interests of the Class, as reflected in Movant's certifications affirming its interest in participating as a representative party in this action. *See* Toll Decl. Ex. B. Movant has also retained counsel with considerable experience in the prosecution of class action and federal securities law claims, which will ensure that the class receives vigorous representation. *See* Toll Decl. Ex. C.

### C.    The Court Should Approve Movant's Choice of Counsel

Pursuant to PSLRA § 21D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v), Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the Class. In that regard, Movant has selected and retained Cohen Milstein and Glancy Binkow & Goldberg LLP as Co-Lead Counsel. As demonstrated by Toll Declaration Exhibits C, D and E these firms are highly qualified plaintiffs' class action law firms, having taken a lead role in numerous important actions on behalf of defrauded investors. Accordingly, the Court should approve Movant's selection of Co-Lead Counsel.

## CONCLUSION

In light of the foregoing, Movant respectfully requests that the Court (1) appoint the Individual Investors Group to serve as Lead Plaintiff in this Action, (2) approve the Individual Investors Group's selection of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. and Glancy Binkow & Goldberg LLP as Co-Lead Counsel, and (3) grant such other and further relief as the Court deems just and proper.

Dated: May 9, 2007                         Respectfully submitted,

**COHEN, MILSTEIN, HAUSFELD**
**& TOLL, P.L.L.C**

/s/  Steven J. Toll
Steven J. Toll (D.C. Bar No. 225623)
Daniel S. Sommers (D.C. Bar No. 416549)
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael M. Goldberg
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

***Proposed Co-Lead Counsel for Movant***

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| DANA ROSS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM L. WALTON, PENNI F. ROLL, JOAN M. SWEENEY, and ALLIED CAPITAL CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:07-cv-00402-EGS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I, Elizabeth S. Finberg, hereby certify that on Ma 9, 2007 a true and correct copy of the following documents was served on counsel for Plaintiff Dana Ross via United States First Class Mail at the address indicated below:

- Motion of the Individual Investors Group for Appointment as Lead Plaintiff and Approval of Choice of Lead Counsel;

- Memorandum in Support of Motion of the Individual Investors Group for Appointment as Lead Plaintiff and Approval of Choice of Lead Counsel;

- Declaration of Steven J. Toll in Support of Motion of the Individual Investors Group for Appointment as Lead Plaintiff and Approval of Choice of Lead Counsel;

- Proposed Order; and

- Certificate of Service

**Steven Richard Freeman**
FREEMAN, WOLFE & GREENBAUM, P.A.
409 Washington Avenue
Suite 300
Towson, MD 21204
(410) 321-8400
Fax: 410-321-8407

/s/ Elizabeth S. Finberg_____
Elizabeth S. Finberg

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| DANA ROSS, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>vs.<br><br>WILLIAM L. WALTON, PENNI F. ROLL, JOAN M. SWEENEY, and ALLIED CAPITAL CORPORATION,<br><br>                Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Civil Action No. 1:07-cv-00402-EGS |

## DECLARATION OF STEVEN J. TOLL IN SUPPORT OF MOTION OF THE INDIVIDUAL INVESTORS GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF CHOICE OF LEAD COUNSEL

Pursuant to 28 U.S.C. § 1746, I, Steven J. Toll declare as follows:

1.    I am an attorney admitted to practice in this District and am Proposed Lead Counsel for David Gonzales, Jagdish Parzhk and Abe Wiener (collectively, the "Individual Investors Group" or "Movant"). I am submitting this Declaration in support of Movant's Motion for Appointment as Lead Plaintiff and Approval of Choice of Lead Counsel.

2.    Attached as Exhibit A hereto is a true and correct copy of a notice to shareholders of Allied Capital Corporation ("Allied Capital") dated March 10, 2007.

3.    Attached as Exhibit B hereto is a true and correct copy of Movant's certifications to serve as Lead Plaintiff, including a table summarizing their losses.

4.    Attached as Exhibit C hereto is a copy of the firm resume of Cohen, Milstein, Hausfeld & Toll, P.L.L.C.

5.     Attached as Exhibit D is a copy of the firm resume of Glancy Binkow & Goldberg LLP.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 9th day of May, 2007.

_____
Steven J. Toll

# EXHIBIT A

★  **FINANCIAL TIMES** MARCH 10/MARCH 11 2007

# options in restructure

**By Andrew Ward in Atlanta**

Coca-Cola has unveiled a broad reorganisation of its North American operations, including the creation of a new business unit dedicated to developing new products outside its traditional soft drink category.

The shake-up is part of broader efforts to revive Coke's fortunes in its home market, where consumers are shifting away from sugar-laden fizzy drinks towards healthier alternatives.

The US carbonated soft drink market shrank by 0.6 per cent last year, according to data published this week by Beverage Digest, the trade newsletter.

The decline represented an acceleration from the 0.2 per cent dip in 2005 and would have been greater but for strong growth in energy drinks.

Under the new structure announced yesterday, Coke's domestic portfolio will be split among three new business units, known as sparkling beverages, still beverages and emerging brands.

The creation of a separate unit to incubate new products highlights the company's increasing focus on innovation in response to rapid change in the US beverage market.

Coke has been slower than PepsiCo, its fierce rival, to diversify beyond cola into non-carbonated beverages, such as bottled water and sports drinks.

The company's bottling partners have become more vocal over recent months about the need for new products and some have threatened to source drinks from rival producers if Coke fails to respond.

Sandy Douglas, president of Coca-Cola North America,

said it would be the objective of the emerging brands unit to become "the US growth and profit leader in emerging ideas, brands and categories".

The company last month agreed to buy Fuze Beverages, a fast-growing US maker of teas and juices, to close the gap with PepsiCo's broader portfolio.

Coke's overall performance has steadily improved since Neville Isdell was appointed chief executive nearly three years ago following a long period of sluggish growth. But most of the improvement has come from outside the US, particularly from emerging markets.

While carbonated soft drink volume declined in the US last year, the retail dollar value of the market increased by 3 per cent to $70.1bn because of growth in premium-priced energy drinks.

**By Adrian Michaels in Milan**

Telecom Italia yesterday painted a grim picture of its home market, leading it to emphasise plans for foreign expansion over the next three years.

Italy's dominant telecoms company, whose new management was presenting a three-year plan in Milan after six months of unrest and upheaval, further chopped its revenue projections after again missing targets. Yesterday, it said revenue growth in the period 2007-09 would be 1-2 per cent a year, down from last year's forecast of 3-4 per cent for 2006-08 and from a 2005 prediction of 4-6 per cent growth for 2005-07.

Telecom Italia's actual "organic growth" in revenues in 2006, announced this week, was 2.9 per cent but the company, like many in its sector, is facing flat or declining margins in its traditional businesses. Overall revenues were €31.3bn ($41bn). It said margins in its

domestic business in 200 would be 1.5-2 percentage points lower than last year.

Yesterday, Riccardo Ruggiero, chief executive, showed analysts projections of a continued decline in voice calls from fixed-line phones while in the mobile market revenues from voice calls would "stop being a key contributor to growth". Telecom Italia's mobile revenues will be cut by hundreds of million



Riccardo Ruggiero

---

## Business

Notice is hereby given that an action has been filed in the United States District Court for the District of Columbia, Case No. 1:07-cv-00402-EGS, on behalf of shareholders who purchased the common stock of Allied Capital Corporation ("Allied Capital") between March 1, 2006 and January 10, 2007, inclusive (the "Class Period").

The Complaint charges William L. Walton, Penni F. Roll, Joan M. Sweeney and Allied Capital with violations of federal securities laws. Among other things, plaintiff claims that defendants' misleading statements concerning Allied Capital's operations and financial performance caused Allied Capital's stock price to become artificially inflated, inflicting damages on investors.

Pursuant to 15 U.S.C. §78u-4, if you are a member of the proposed class described above, you may move the Court, not later than 60 days from the date of this Notice, to serve as lead plaintiff; however, you must meet certain legal requirements. If you wish to discuss this action or have any questions concerning this Notice or your rights or interests with respect to these matters, please contact Joel L. Lipman, Esquire, of O'Rourke Katten & Moody, 161 N. Clark Street, Suite 2230, Chicago, Illinois 60601, (312) 849-2020.

Kinston, NC U.S.A.

### Bed & Breakfast

$1,295,000 terms

details at

www.bentleybedandbreakfast.com

or 252-523-5200

 **Les Echos**

The FT can help you reach additional business readers in France.
Our link with the French business newspaper, Les Echos, gives you a unique recruitment advertising opportunity to capitalise on the FT's European readership and to further target the French business world.

**For information on rates and further details please telephone:**
**+44 20 7873 4909**

---

# Safety probe into Valero refinery fire

US safety investigators yesterday launched a probe into a February 16 fire at Valero Energy's McKee refinery in Sunray, Texas, according to the US Chemical Safety and Hazard Investigation Board, Reuters reports from Houston.

Valero said the company was co-operating with the investigation, but would not comment while the probe was under way. In addition to trying to determine how the propane-fuelled fire began at the 170,000 barrel per day refinery 60 miles north of Amarillo, Texas, the CSB will look at how the fire spread to damage chlorine cylinders, threatening to detonate a giant propane storage tank.

"Once the propane was released and ignited, the fire spread rapidly," said

Jim Lay, the board's lead investigator. "Within minutes, a critical piping rack – on which some of the support beams had not been fireproofed – collapsed, breaking open pipes and adding fuel to the blaze." Refinery workers were unable to shut down pumps that would have cut the flow of hydrocarbon liquids into the fire or set off firewater deluge systems that would have cooled exposed equipment, Mr Lay said.

The McKee refinery has been shut since the plant's 400 workers were evacuated on the day of the fire. A partial restart is not expected before early April

The CSB investigates chemical industry accidents to determine their root causes, but has no authority to issue regulations.

# EXHIBIT B

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, **David Gonzalis**, ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.      I have reviewed a class action complaint asserting securities claims against Allied Capital Corporation (ALD) and wish to join as a plaintiff retaining Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as my counsel.

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.      My transactions in Allied Capital Corporation (ALD) during the Class Period of March 1, 2006 through January 10, 2007 were as follows:

| DATE | TRANSACTION (buy/sell) | NO. OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 6.6.06 | Buy | 510 | 30.00 |
| 6.8.06 | buy | 500 | 30.25 |
| 6.12.06 | buy | 500 | 30.48 |
| | | | |
| | | | |

5.      During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in any action under the federal securities laws except as follows:

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this _19th_ Day of _april_, 2007.

**Allied Gonzales**

| Trade Date | Transaction Type (Buy/Sell) | # Shares | Share Price ($) | 90-day Loss Value (enter below) | Pre-Class Period Holdings (enter below if known) |
|---|---|---|---|---|---|
| 6/6/2006 | Buy | 500 | 30.0000 | | 29.423 |
| 6/8/2006 | Buy | 500 | 30.2500 | | |
| 6/12/2006 | Buy | 500 | 30.4800 | | |

Class Period FIFO

| Trade Date | Transaction Type | # Shares | Share Price ($) | Class Period Purchases | Class Period Sales | Sales on Class Period Purchases | Class Period Net Holdings | Cost | | Proceeds | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/6/2006 | Buy | 500 | 30 | 500 | 500 | 0 | 500 | $ | 15,000.00 | | | Total Class Period Purchases | 1500 |
| 6/8/2006 | Buy | 500 | 30.25 | 500 | 500 | 0 | 1000 | $ | 15,125.00 | | | Total Class Period Sales | 0 |
| 6/12/2006 | Buy | 500 | 30.48 | 500 | 500 | 0 | 1500 | $ | 15,240.00 | | | Total Sales on Class Period Purchases | 0 |
| | | | | | | | | | | | | Total Class Period Shares Retained | 1500 |
| | | | | | | | | | | | | 90-day Loss Price | $ 29.42 |
| | | | | | | | | | | | | Total Purchases: | $ 45,365.00 |
| | | | | | | | | | | | | Total Sales Proceeds: | $ - |
| | | | | | | | | | | | | Total Retained Value: | $ 44,134.50 |
| | | | | | | | | | | | | Total Loss: | $ 1,230.50 |

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, _JAGDISH M. PARIKH_, ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.  I have reviewed a class action complaint asserting securities claims against Allied Capital Corporation (ALD) and wish to join as a plaintiff retaining Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as my counsel.

2.  Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.  Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.  My transactions in Allied Capital Corporation (ALD) during the Class Period of March 1, 2006 through January 10, 2007 were as follows:

| DATE | TRANSACTION (buy/sell) | NO. OF SHARES | PRICE PER SHARE |
|------|------------------------|---------------|-----------------|
| 10/10/06 | BUY | 1500 | $30.65 |
| 10/27/06 | BUY | 1000 | $31.6197 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

5.  During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in any action under the federal securities laws except as follows:

6.  Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this __16__ Day of __APRIL__, 2007.

_Jagdish M. Parikh_

**Allied Capital parzkh**

| Trade Date | Transaction Type (Buy/Sell) | # Shares | Share Price ($) | 90-day Loss Value (enter below) | Pre-Class Period Holdings (enter below if known) |
|---|---|---|---|---|---|
| 10/10/2006 | Buy | 1,500 | 30.6500 | 29.423 | |
| 10/27/2006 | Buy | 1,000 | 31.6197 | | |

Class Period FIFO

| Trade Date | Transaction Type | # Shares | Share Price ($) | Class Period Purchases | Class Period Sales | Sales on Class Period Purchases | Class Period Net Holdings | Cost | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| 10/10/2006 | Buy | 1500 | 30.65 | 1500 | | 0 | 1500 | $ 46,975.00 | |
| 10/27/2006 | Buy | 1000 | 31.6197 | 1000 | | 0 | 2500 | $ 31,619.70 | |

| | |
|---|---|
| Total Class Period Purchases | 2500 |
| Total Class Period Sales: | 0 |
| Total Sales on Class Period Purchases: | 0 |
| Total Class Period Shares Retained: | 2500 |
| 90-day Loss Price | $ 29.42 |
| Total Purchases: | $ 77,594.70 |
| Total Sales Proceeds: | $ - |
| Total Retained Value: | $ 73,557.50 |
| Total Loss: | $ 4,037.20 |

CERTIFICATION OF PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

I, _____Abe Weiner_____, ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.    I have reviewed a class action complaint asserting securities claims against Allied Capital Corporation (ALD) and wish to join as a plaintiff retaining Cohen, Milstein, Hausfeld & Toll, P.L.L.C. as my counsel.

2.    Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    My transactions in Allied Capital Corporation (ALD) during the Class Period of March 1, 2006 through January 10, 2007 were as follows:

| DATE | TRANSACTION (buy/sell) | NO. OF SHARES | PRICE PER SHARE |
|------|------------------------|---------------|-----------------|
| 5-2-2006 | Buy | 2300 | $ 31.20 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

5.    During the three years prior to the date of this Certificate, Plaintiff has not sought to serve or served as a representative party for a class in any action under the federal securities laws except as follows:

6.    Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing true and correct.

Executed this __12__ Day of __April__, 2007.

_____Abe W Wein_____

**Allied Capital Weiner**

| Trade Date | Transaction Type (Buy/Sell) | # Shares | Share Price ($) | 90-day Loss Value (enter below) | Pre-Class Period Holdings (enter below if known) |
|---|---|---|---|---|---|
| 5/2/2006 | Buy | 2,300 | 31.2000 | 29,423 | |

Class Period FIFO

| Trade Date | Transaction Type | # Shares | Share Price ($) | Class Period Purchases | Class Period Sales | Sales on Class Period Purchases | Class Period Net Holdings | Cost | Proceeds |
|---|---|---|---|---|---|---|---|---|---|
| 5/2/2006 | Buy | 2300 | 31.2 | 2300 | 0 | 0 | 2300 | $ 71,760.00 | |

| | |
|---|---|
| Total Class Period Purchases: | 2300 |
| Total Class Period Sales: | 0 |
| Total Sales on Class Period Purchases: | 0 |
| Total Class Period Shares Retained: | 2300 |
| 90-day Loss Price | $ 29.42 |
| **Total Purchases:** | **$ 71,760.00** |
| **Total Sales Proceeds:** | **$ -** |
| **Total Retained Value:** | **$ 67,672.90** |
| **Total Loss:** | **$ 4,087.10** |

EXHIBIT C

## COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C. FIRM RESUME

For decades, Cohen, Milstein, Hausfeld & Toll, P.L.L.C. has represented individuals, small businesses, institutional investors, and employees in many of the major class action cases litigated in the United States for violations of the antitrust, securities, environmental, consumer protection, civil rights/discrimination, ERISA and human rights laws. The Firm is also at the forefront of numerous innovative legal actions that are expanding the quality and availability of legal recourse for aggrieved individuals and businesses both domestic and international. Over its history, Cohen Milstein has obtained many landmark judgments and settlements for individuals and businesses in the United States and abroad.

The firm's most significant past cases include:

- **In re Vitamins Antitrust Litigation**, MDL No. 1285 (D.D.C.). Cohen Milstein served as co-lead counsel for two certified classes of businesses that directly purchased bulk vitamins and were overcharged as a result of a ten year global price-fixing and market allocation conspiracy. Chief Judge Hogan approved four major settlements between certain vitamin defendants and Class Plaintiffs, including a landmark partial settlement of $1.1 billion. In a later trial before Chief Judge Hogan concerning four Class Plaintiffs' remaining unsettled Vitamin B4 (choline chloride) claims, a federal jury in Washington unanimously found Japan's second largest trading company, Mitsui & Co., Ltd., its wholly-owned U.S. subsidiary Mitsui & Co. (U.S.A.), Inc., DuCoa, LP, a choline chloride manufacturer based in Highland, Illinois, and DuCoa's general partner, DCV, Inc. liable for participating in the conspiracy and ordered them to pay $49,539,234, which is trebled to $148,617,702 under the federal antitrust laws. The case was subsequently settled against those defendants.

- **Dukes v. Wal-Mart Stores, Inc.**, No. C-01-2252 (N.D. Cal.). Cohen Milstein is one of the co-lead counsel in this discrimination case. In June 2004, U.S. District Court Judge Martin Jenkins ruled that six current and former Wal-Mart employees from California may represent all female employees of Wal-Mart who worked at its U.S. stores anytime after December 26, 1998 in a nationwide sex discrimination class action lawsuit (appeal pending). As the largest civil rights class action ever certified against a private employer, the Judge described the case as "historic in nature, dwarfing other employment discrimination cases that came before it." The action charges that Wal-Mart discriminates against its female retail employees in pay and promotions. The

class in this case includes more than 1.5 million current and former female employees of Wal-Mart retail stores in America, including Wal-Mart discount stores, super centers, neighborhood stores, and Sam's Clubs.

•       In re Lucent Technologies Securities Litigation, Civ. Action No. 00-621 (JAP) (D.N.J.). A settlement in this massive securities fraud class action was reached in late March 2003. The class portion of the settlement amounts to over $500 million in cash, stock and warrants and ranks as the second largest securities class action settlement ever completed. Cohen Milstein represented one of the co-lead plaintiffs in this action, a private mutual fund.

•       Nate Pease, et al. v. Jasper Wyman & Son, Inc., et al., Civil Action No. 00-015 (Knox County Superior Court, Me.). In 2004, a state court jury from Maine found three blueberry processing companies liable for participating in a four-year price-fixing and non-solicitation conspiracy that artificially lowered the prices defendants paid to approximately 800 growers for wild blueberries. The jury ordered defendants Cherryfield Foods, Inc., Jasper Wyman & Son, Inc., and Allen's Blueberry Freezer, Inc. to pay $18.68 million in damages, the amount which the growers would have been paid absent the defendants' conspiracy. After a mandatory trebling of this damage figure under Maine antitrust law, the total amount of the verdict for the plaintiffs is just over $56 million. The Firm served as co-lead counsel.

•       In re StarLink Corn Products, Liability Litigation, MDL No. 1403. (N.D. Ill.). Cohen Milstein successfully represented U.S. corn farmers in a national class action against Aventis CropScience USA Holding and Garst Seed Company, the manufacturer and primary distributor of StarLink corn seeds. StarLink is a genetically modified corn variety that the United States government permitted for sale as animal feed and for industrial purposes, but never approved for human consumption. However, StarLink was found in corn products sold in grocery stores across the country and was traced to widespread contamination of the U.S. commodity corn supply. The Firm, as co-lead counsel, achieved a final settlement providing more than $110 million for U.S. corn farmers, which was approved by a federal district court in April 2003. This settlement was the first successful resolution of tort claims brought by farmers against the manufacturers of genetically modified seeds.

•       In re Diet Drug Litigation (Fen-Phen), MDL No. 1203 (E.D. Pa.). As a member of the Plaintiffs' Management Committee and Sub-Class Counsel, Cohen Milstein played a major part in the success of the Fen-Phen diet drug litigation and settlement *(In re: Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation,* MDL 1203). CMHT and other plaintiffs' counsel achieved the largest settlement ever obtained in a mass tort case - $3.75 billion - on behalf of millions of U.S. consumers who used Pondimin (fenfluramine) or Redux (dexfenfluramine), either alone or in combination with phentermine, diet drugs that are associated with heart valve damage.

- Snyder v. Nationwide Mutual Insurance Company, No. 97/0633 (Sup. Ct. N.Y. Onondaga Cty.). Cohen Milstein served as one of plaintiffs' principal counsel in this case on behalf of persons who held life insurance policies issued by Nationwide through its captive agency force. The action alleged consumer fraud and misrepresentations. Plaintiffs obtained a settlement valued at more than $85 million. The judge praised the efforts of Cohen Milstein and its co-counsel for having done "a very, very good job for all the people." He complimented "not only the manner" in which the result was arrived at, but also the "time … in which it was done."

- Oncology & Radiation Associates, P.A. v. Bristol Myers Squibb Co., et al., No. 1:01CV02313 (D.D.C.). Cohen Milstein has been co-lead counsel in this case since its inception in 2001. Plaintiffs alleged that Bristol-Myers Squibb unlawfully monopolized the United States market for paclitaxel, a cancer drug discovered and developed by the United States government, which Bristol sells under the brand name Taxol. Bristol's scheme included a conspiracy with American BioScience, Inc., a generic manufacturer, to block generic competition. Cohen, Milstein's investigation and prosecution of this litigation on behalf of direct purchasers of Taxol led to a settlement of $65,815,000 that was finally approved by U.S. District Judge Emmet G. Sullivan on August 14, 2003 and preceded numerous Taxol-related litigations brought by the Federal Trade Commission and State Attorneys General offices.

- Kruman v. Christie's International PLC, et al., Docket No. 01-7309. A $40 million settlement on behalf of all persons who bought or sold items through Christie's or Sotheby's auction houses in non-internet actions was approved in this action. Cohen Milstein served as one of three leading counsel on behalf of foreign plaintiffs. The Court noted that approval of the settlement was particularly appropriate, given the significant obstacles that faced plaintiffs and plaintiffs' counsel in the litigation. The settlement marked the first time that claims on behalf of foreign plaintiffs under U.S. antitrust laws have been resolved in a U.S. court, a milestone in U.S. antitrust jurisprudence.

- In re Infant Formula Consumer Antitrust Litigation (multiple state courts). Cohen Milstein instituted price-fixing cases on behalf of indirect-purchasers in 17 states under state antitrust laws against three companies who conspired to drive up the price of infant formula. The cases resulted in settlements of $64 million for purchasers of infant formula.

- Domestic Air Transportation Antitrust Litigation (N.D. Ga.) Plaintiffs alleged a conspiracy among major airlines to set prices. In one of the largest consumer class actions ever brought to a successful conclusion, Cohen Milstein was one of the lead counsel and obtained a settlement of travel discounts and cash totaling $458 million for the class of individuals and businesses.

- In re The Exxon Valdez Litigation, No. A89-095 Civ. (D. Ak.). The firm was selected from dozens of law firms around the country by federal and

state judges in Alaska to serve as co-lead counsel for plaintiffs in the largest
environmental case in United States history that resulted in a jury verdict of more
than $5 billion (reversed and remanded for revised punitive damages award;
further proceedings pending).

- Holocaust Litigation. In the historic Swiss Banks litigation,
CMHT served, *pro bono,* as co-lead counsel for Holocaust survivors against the
Swiss banks that collaborated with the Nazi regime during World War II by
laundering stolen funds, jewelry and art treasures. Cohen Milstein obtained a
$1.25 billion settlement, leading the presiding judge to call the firm's work
"indispensable." *See In re Holocaust Victim Assets Litig.*, Case No. CV 96-4849
(ERK) (MDG) (Memorandum of Chief Judge Korman dated July 26, 2002). The
Firm was also a lead counsel in litigation by survivors of World War II-era forced
and slave labor in litigation against the German companies that profited from
using the labor of concentration camp inmates. This litigation, which resulted in
an unprecedented settlement of $5.2 billion, was resolved by multinational
negotiations involving the defendants, plaintiffs' counsel, and the governments of
several countries for approximately two million claimants.

Cohen Milstein has contributed over 37,000 hours of time to human rights
and *pro bono* cases since 1996. As an example, the Firm represented eight
survivors and/or families of the victims of the September 11, 2001 attack on the
Pentagon before the Federal compensation fund. Cohen Milstein has obtained a
substantial recovery for each, including the highest recovery to date, $6.8 million,
for an injured individual.

- Roberts v. Texaco, Inc., 94-Civ. 2015 (S.D.N.Y.). Cohen Milstein
represented a class of African-American employees in this landmark litigation
that resulted in the then-largest race discrimination settlement in history ($176
million in cash, salary increases and equitable relief). The Court hailed the work
of class counsel for, *inter alia,* "framing an imaginative settlement, that may well
have important ameliorative impact not only at Texaco but in the corporate
context as a whole …".

- Conanan v. Tanoue, No. 00-CV-3091 (ESH). Cohen Milstein
represented African-American employees at the Federal Deposit Insurance
Corporation (FDIC) in this race discrimination suit, which settled for $14 million.
The settlement provides the largest payment made in an employment
discrimination class action based on race against a federal agency.

- Trotter v. Perdue Farms, Inc., Case No. 99-893 (RRM) (JJF)
(MPT), D. Del. This suit on behalf of hourly workers at Perdue's chicken
processing facilities -- which employ approximately 15,000 people -- forced
Perdue to pay employees for time spent "donning and doffing," that is, obtaining,
putting on, sanitizing and removing protective equipment that they must use both
for their own safety and to comply with USDA regulations for the safety of the
food supply. The suit alleged that Perdue's practice of not counting donning and

doffing time as hours worked violated the Fair Labor Standards Act and state law. In a separate settlement with the Department of Labor, Perdue agreed to change its pay practices. In addition, Perdue is required to issue retroactive credit under one of its retirement plans for "donning and doffing" work if the credit would improve employees' or former employees' eligibility for pension benefits. CMHT was co-lead counsel.

In addition, Cohen Milstein is an innovator in new areas of the law. The Firm was in the forefront of filing antitrust claims on behalf of indirect purchasers in 1993 and 1994, when it filed state-court actions in 18 states on behalf of indirect purchasers of infant formula. This was the first effort to systematically and simultaneously pursue treble damages claims on behalf of indirect-purchasing consumers in all states where antitrust laws permitted such claims. This approach, and variations of it, have since become the accepted model for pursuing antitrust damages on behalf of indirect-purchasing consumers. The Firm also has been in the forefront of the development of international antitrust theory and litigation of claims. As the global economy has produced worldwide conglomerates, so, too, has the nature of antitrust violations changed. For example, in *Kruman v. Christie's International PLC, et al.* Docket No. 01-7309 and *In re Bulk Vitamins Antitrust Litigation*, MDL 1285 (D.D.C.), both the parties and the anticompetitive actions were played out on a world, rather than domestic, stage. The firm also represents and won Lead Plaintiff status for domestic and foreign investors in a foreign company's bonds, in a PSLRA litigation being pursued in the United States, *In re Parmalat Securities Litigation*, Master Docket 04 Civ 0030 (LAK) (S.D.N.Y.). The Firm has affiliated offices around the world, in the United Kingdom, Italy, South Africa, Panama and Australia.

Cohen, Milstein, Hausfeld & Toll, P.L.L.C. was established in March 1986 and is based in Washington, D.C. with offices in New York, Philadelphia and Chicago. From

1969 until 1986, the Firm was the Washington, D.C. office of the Philadelphia law firm

currently known as Kohn, Swift & Graf, P.C..

The Firm has had one of the most varied and extensive plaintiffs' practices in the

United States, and it has played a prominent role in major litigations since 1969.  These

cases include:

> In re North Atlantic Air Travel Antitrust Litigation, Civ. Action No. 84-1103
> (D.D.C.); the Firm, as co-lead counsel, obtained a class settlement of $30 million
> in coupons for air travelers between the United States and England.
>
> In re Screws Antitrust Litigation, MDL No. 443 (D. Mass.); the Firm, as co-lead
> counsel, obtained a class settlement of approximately $50 million.
>
> Ocean Shipping Antitrust Litigation, MDL No. 395 (S.D.N.Y); the Firm, as co-
> lead counsel, obtained a class settlement of approximately $50 million.
>
> In re Corrugated Container Antitrust Litigation, MDL No. 310 (S.D. Tex.); the
> Firm was one of a handful of firms involved in the successful trial of this massive
> antitrust case which was eventually settled for approximately $366 million.
>
> Murphy, Derivatively On Behalf of Nominal Defendant National Health
> Laboratories Incorporated v. Perelman, Case No. 659511 (Cal. Sup. San Diego
> Cty.); as one of co-lead counsel in the derivative action, the firm and others
> obtained a global settlement of class and derivative litigation for $65 million.
>
> In re Flat Glass Antitrust Litigation, MDL No.1200, (W.D. Pa.); the Firm as co-
> lead counsel obtained a total of $ 61.7 million in settlement funds on behalf of
> glass shops, window manufacturers, and others who directly purchased the
> affected products from the defendants.
>
> Buspirone Antitrust Litigation, MDL No. 1413 (S.D.N.Y.); as one of four co-lead
> counsel, the Firm and others obtained a $90 million settlement for the class.
>
> Masonite Hardboard Siding Litigation, Civ. Action No. 996787 (Cal. Super. Ct.);
> the Firm, as one of the lead counsel, obtained a settlement valued at hundreds of
> millions of dollars.
>
> Polybutylene Pipe Litigation, Civ. Action No. W 2004-017770COA-R3-CV
> (W.D. Tenn.); the Firm helped obtain a settlement valued at $900 million.
>
> Biben v. Card, No. 84-0844-CV-W-6 (W.D. Mo.); the Firm, as one of two co-lead
> counsel, negotiated settlements for $11.9 million, which was 93% of class
> members' damages.
>
> In re Newbridge Networks Securities Litigation, Civ. Action No. 90-1061

(D.D.C.); the Firm, as co-counsel, obtained a cash and stock class settlement valued at approximately $20 million.

Jiffy Lube Securities Litigation, Civ. Action No. Y-89-1939 (D. Md.); the Firm, as co-lead counsel, obtained class settlements for a total of $12 million.

In re Saxon Securities Litigation, Civ. Action No. 82 Civ. 3103 (S.D.N.Y.); the Firm, as co-lead counsel, obtained a class settlement of approximately $20 million.

Grossman v. Waste Management, Civ. Action No. 83 Civ. 2167 (N.D. Ill.); the Firm, as co-lead counsel, obtained a class settlement of approximately $13 million.

In re Warner Communications Securities Litigation, 618 F. Supp. 735 (S.D.N.Y. 1986); the Firm was one of plaintiffs' counsel in this case where a class settlement of $18.4 million was obtained.

In re Tandon Securities Litigation, No. CV86-4566 (C.D. Cal.); the Firm played a major role in this class action where settlement was valued at approximately $16 million.

Immunex Securities Litigation, No. C92-548WD (W.D. Wash.); the firm was one of lead counsel where the largest securities class action settlement in Seattle -- $14 million -- was recovered.

In re Caremark Securities Litigation, Case No. 94 C 4751 (N.D. Ill.); the Firm, as co-lead counsel, obtained a class settlement of $25 million.

In re Commercial Explosives Antitrust Litigation, Consolidated Case No. 2:96md 1093S (D. Utah); the Firm, as co-lead counsel, obtained a settlement of $77 million.

Cohen Milstein has also served as lead or co-lead counsel, or on Plaintiffs' Executive

Committee(s), in many dozens of antitrust, securities, consumer protection or product

liability, civil rights, and human rights class action cases.

### **Attorney Profiles - Partners**

### Herbert E. Milstein

Herbert E. Milstein began practicing law with Jerry S. Cohen in 1970 – the birth of the Firm. Mr. Milstein has been lead or principal counsel in many of the best known securities class actions litigated during the past 37 years. He is the senior member of the Securities Fraud/Investor Protection practice group.

Mr. Milstein is the author of numerous articles on topics involving class action litigations and the Federal securities laws. He recently authored an article on current issues involving federal securities laws and a separate article in the book entitled *The Burger Years*. He is also the author of a monograph on the attorney-client privilege.

As an adjunct Professor of Law at Georgetown University Law Center from 1980-1987, he taught complex litigation and continues to lecture on securities litigation and class actions at law schools and seminars sponsored by the American Bar Association, state bar associations, and continuing legal education organizations. In 1985, he received a Silver Gavel award from the American Bar Association for his distinguished example of public service.

Mr. Milstein formerly served on the staff of the Securities and Exchange Commission for five and one-half years, and last held the position of Chief Enforcement Attorney, Division of Corporate Regulation. From 1976-1980, Mr. Milstein served as Equity Receiver for National American Life Insurance Company, appointed by Judge Charles R. Richey, in *SEC v. National Pacific Corp.* For that work, the Chairman of the SEC said Mr. Milstein and the Firm served "with distinction."

Formerly the President of the National Association of Securities and Commercial Law Attorneys (NASCAT), he also served as Treasurer of that organization for six years. He is a member of the American Law Institute, and a member and former Chairman of the Executive Council of the Securities Law Committee of the Federal Bar Association.

Mr. Milstein is currently on the Board of Directors of several organizations, including the Appleseed Foundation and The Studio Theatre of Washington, DC.

Mr. Milstein graduated from Harvard College (*cum laude*, 1958) and Columbia University School of Law (LL.B., 1961).

Mr. Milstein is admitted to practice in the District of Columbia and Massachusetts.

### Michael D. Hausfeld

Michael Hausfeld, one of the country's top civil litigators, joined the Firm in 1971. He is a member of the Antitrust and International practice groups.

Mr. Hausfeld's career has included some of the largest and most successful class actions in the fields of human rights, discrimination and antitrust law. He long has had an abiding interest in social reform cases, and was among the first lawyers in the U.S. to assert that sexual harassment was a form of discrimination prohibited by Title VII; he successfully tried the first case establishing that principle. He represented Native Alaskans whose lives were affected by the 1989 Exxon Valdez oil spill; later, he negotiated a then-historic $176 million settlement from Texaco, Inc. in a racial-bias discrimination case.

In *Friedman v. Union Bank of Switzerland*, Mr. Hausfeld represented a class of victims of the Holocaust whose assets were wrongfully retained by private Swiss banks during and

after World War II. The case raised novel issues of international banking law and international human rights law. He successfully represented the Republic of Poland, the Czech Republic, the Republic of Belarus, the Republic of Ukraine and the Russian Federation on issues of slave and forced labor for both Jewish and non-Jewish victims of Nazi persecution during World War II. He currently represents Jubilee 2000, Khulumani, and other NGOs in litigation involving abuses under apartheid law in South Africa, and is pursuing a RICO litigation against the tobacco industry with regard to the sale of and representations on "light" cigarettes.

Mr. Hausfeld has a long record of successful litigation in the antitrust field, on behalf of both individuals and classes, in cases involving monopolization, tie-ins, exclusive dealings and price fixing. He is or has been co-lead counsel in antitrust cases against manufacturers of genetically engineered foods, managed healthcare companies, bulk vitamin manufacturers, technology companies and international industrial cartels. He is actively involved in ongoing investigations into antitrust cases abroad, and was the only private lawyer permitted to attend and represent the interests of consumers worldwide in the 2003 closed hearings by the EU Commission in the Microsoft case.

Chief Judge Edward Korman (E.D.N.Y.), has noted that Mr. Hausfeld is one of the two "leading class action lawyers in the United States." He has been profiled in, and recognized by, many articles and surveys. Most recently, a *Forbes* magazine article reported on Mr. Hausfeld's work to establish an international alliance for the protection of consumers and investors worldwide. He was named one of thirty master negotiators in *Done Deal: Insights from Interviews with the World's Best Negotiatiors*, by Michael Benoliel, Ed.D. *The Wall Street Journal* profiled him and his practice, and he has been recognized by *The National Law Journal* as one of the "Top 100 Influential Lawyers in America." He has been described by one of the country's leading civil rights columnists as an "extremely penetrating lawyer", and by a colleague (in a *Washington Post* article) as a lawyer who "has a very inventive mind when it comes to litigation. He thinks of things most lawyers don't because they have originality pounded out of them in law school." *The New York Times* referred to Mr. Hausfeld as one of the nation's "most prominent antitrust lawyers," and *Washingtonian Magazine* has listed Mr. Hausfeld in several surveys as one of Washington's 75 best lawyers, saying he "consistently brings in the biggest judgments in the history of law" and that he is "a Washington lawyer determined to change the world -- and succeeding."

His most recent awards include the 2002 B'Nai Brith Humanitarian of the Year award; the Simon Wiesenthal Center Award for Distinguished Service; and the U.S. Department of Energy's Human Spirit Award, presented "in tribute to a person who understands the obligation to seek truth and act on it is not the burden of some, but of all; it is universal."

He is a frequent speaker on antitrust, human rights and international law, most recently participating in a panel discussion at the Spring Meeting of the ABA Section of Antitrust Law entitled "International Antitrust: Developments After Empagran and Intel" and at the School of Oriental and African Studies (SOAS) Annual Meeting in London entitled "Human Rights in An Integrated World: The Apartheid Reparations Litigation in the USA." He taught Masters Degree courses at Georgetown University Law Center from

1980 to 1987, and was an Adjunct Professor at the George Washington University Law School from 1996 to 1998 and now sits on its Board of Directors.

Mr. Hausfeld is a graduate of Brooklyn College, receiving a B.A. in Political Science with a minor in Russian History (*cum laude*, 1966) and the National Law Center, George Washington University (J.D., *with honors*, 1969). He was a member of the Order of the Coif and the Board of Editors for the George Washington Law Review (1968-69).

Mr. Hausfeld is admitted to practice in the District of Columbia.

**Steven J. Toll**

Steven J. Toll joined the Firm in 1979 and has been lead or principal counsel in some of the most highly publicized stock fraud cases over the past 28 years. He is a member of the Securities Fraud/Investor Protection practice group.

Some of Mr. Toll's more notable cases include those against Lucent Technologies, which was settled in 2001 for approximately $575 million, at the time, the second largest securities class action settlement ever achieved; National Health Labs, which paid $65 million to settle shareholder and derivative cases, and Caremark, a $25 million recovery for shareholders, where the defendant pled guilty to Medicare fraud and paid the U.S. Government a fine of approximately $160 million.

In July 2005, Mr. Toll was lead trial counsel in one of the few securities class actions to go to trial involving Globalstar, a satellite manufacturer. Mr. Toll successfully argued the motions before and during trial and ultimately achieved a settlement of $20 million shortly before the case was scheduled to go to the jury. In approving the settlement, U.S. District Judge Kevin Castel remarked that Mr. Toll and his colleagues had "done a terrific job in presenting the case for the plaintiffs."

The breadth of Mr. Toll's experience is shown from his work on Southmark Securities Litigation, where he helped achieve a settlement of $70 million from the company's auditors, Drexel Burnham and Michael Milken; Norman v. Salomon Smith Barney, where he negotiated a $50 million settlement on behalf of customers of Salomon's Guided Portfolio Management Program, who alleged that Salomon invested their money in companies in order to boost Salomon's investment banking business, In re ECI Telecom Securities Litigation (E.D.Va.)(telecom company accused of presenting false revenue and earnings figures; recovery of $22.75 million); Gilat Securities Litigation (company accused of misreporting revenue for a period of years -- recovery of $20 million); Grossman v. Waste Management, (N.D. Ill.)(defendant accused of withholding information concerning violations of the environmental laws and regulatory standards; recovery of $13 million); In re Jiffy Lube Securities Litigation (D. Md.) (company accused of deceptive accounting practices; recovery of $12 million); and In re Itron Securities Litigation (E.D. Wash.) (defendant company accused of concealing flaws in its technology; recovery of $12 million).

Mr. Toll also served as co-lead counsel in one of the most publicized frauds of the 1990s -- Cascade International (S.D. Fla.) where the mastermind of the fraud, Victor Incendy, is still a fugitive from justice. The case settled on the eve of trial against Raymond James

Inc. -- the only securities class action ever successfully litigated against a brokerage firm for its role as a research analyst.

He is currently leading the Firm's team serving as co-lead counsel in one of the most highly publicized fraud cases of this era, the securities fraud class action involving Parmalat, the Italian dairy manufacturer; the case is known as Europe's "Enron," because of the similarities of the fraudulent schemes and the non-existence of billions of dollars of assets that had been recorded on Parmalat's financial statements. He is also heading up numerous securities fraud cases against other public companies.

Mr. Toll was profiled in the February 1996 Washington Business Journal as one of five attorneys that stand out as the "cream of the crop" in the Washington D.C. legal community. In the Fall 2006 edition of LawDragon, he was named as one of the 500 Leading Lawyers in America.

He has written for and spoken at various conferences about securities law issues, including, inter alia, The Plaintiffs' Perspective, Securities Regulation and the New Law, National Legal Center for the Public Interest, No. 1, Sept. 1996; The Sarbanes-Oxley Bill Provides No Assistance To Investors Seeking To Recovery From Corporate Fraud, ABA Annual Meeting, August 2002; and The Analyst Cases Involving Merrill Lynch, and Its Internet Analyst Henry Blodget, and Salomon Smith Barney and Its Telecommunications Analyst Jack Grubman, Mass Torts Made Perfect (presented January 2003).

Mr. Toll is an honors graduate of the Wharton School of the University of Pennsylvania (B.S., Accounting, cum laude, 1972). He graduated from Georgetown University Law Center (J.D., 1975) where he was Special Project Editor of the Tax Lawyer.

Mr. Toll is admitted to practice in Virginia and the District of Columbia.

### Lisa M. Mezzetti

Lisa Mezzetti, a Partner at Cohen Milstein, joined the Firm in 1984, and is a member of the Securities Fraud/Investor Protection and the Consumer Protection practice groups.

In her securities work, Ms. Mezzetti represented the corporate plaintiff in a private litigation alleging damages from the purchase of a healthcare technology company, and represented 1,900 plaintiffs in a series of 25 federal court suits concerning municipal bonds. Her shareholder class actions include *Murphy, Derivatively On Behalf of Nominal Defendant National Health Laboratories Inc. v. Perelman* (Cal. Super. San Diego Cty.) (global settlement of class and derivative litigations for total of $65 million); *Flecker v. Hollywood Entertainment Corp.* (D. Or.) ($15 million settlement, reached the day before trial was to begin); and *Biben v. Card* (W.D. Mo.)(93% of class members' damages recovered in settlement). She also has represented parties in securities arbitrations (both as claimant's counsel or defense counsel for the broker) and defended clients in investigations and enforcement actions of the Securities and Exchange Commission.

In consumer cases, Ms. Mezzetti is or was one of the lead counsel in *In re Lupron Marketing and Sales Practices Litigation* (D. Mass.) (brought against pharmaceutical

companies on pricing policies and methods; combined $150 million settlement pleading); *Howard v. Ford Motor Co.* (Cal. Sup. Ct.) (order of the Court on equitable count required prospective recall of 1.7 million cars; settled immediately before scheduled second jury trial); and *Fischl v. Direct Merchants Credit Card Bank, N.A.* (Henn. Cnty. Minn.) (brought by credit card consumers, alleging improper charges and payment processes; settlement included credits for overpayments and changes in business practices). She has litigated class actions under the ERISA laws, and brought one of the first class actions filed under the federal Family and Medical Leave Act.

Ms. Mezzetti is a public arbitrator for the National Association of Securities Dealers, hearing disputes between customers and brokers. She speaks at legal education seminars and has been quoted in the media on issues concerning consumer law and securities class actions. Ms. Mezzetti most recently was a panelist at the Federal Trade Commission's Workshop on Consumer Class Actions and at the annual conference of the Association of Trial Lawyers of America on unfair trade practices and deceptive trade practices statutes. The transcript of the FTC workshop, and her related article, *The Coupon Can Be the Ticket: The Use of "Coupon" and Other Non-Monetary Redress in Class Action Settlements* (co-authored with Whitney Case) are published at 18.4 Geo. J. Legal Ethics 1431 (2005). She also speaks on corporate governance issues at conferences of institutional investors, and was a guest panelist on a Washington, D.C. cable television show concerning hiring and working with stock brokers and financial advisors.

Before joining Cohen Milstein, Ms. Mezzetti was a litigation associate of Shea & Gould of New York City.

Ms. Mezzetti serves as a member of the Boards of Directors of The International Alliance for Women (a worldwide organization that supports and promotes women entrepreneurs, professionals and executives) and The Financial Women's Association of New York. She is on the D.C. Advisory Board of The Joffrey Ballet of Chicago.

Ms. Mezzetti graduated from the Columbus School of Law, Catholic University of America in 1980, where she served as a Vice-Chancellor of the Moot Court Board. In 1986, she received a Master of Laws degree, with a specialty in Securities Regulation, from Georgetown University Law Center. Her bachelor's degree was awarded by Stonehill College (B.A, English., *magna cum laude*, 1977).

Ms. Mezzetti is admitted to practice in the District of Columbia and New York.

### Andrew N. Friedman

Andrew Friedman, a Partner at the Firm, joined Cohen Milstein in 1985. He is the head of the Consumer Protection practice group and a member of the Securities Fraud/Investor Protection practice group.

In the consumer protection area, Mr. Friedman is litigating numerous class actions including cases on telephone company overcharges, *Strugano v. Nextel Communications, Inc., et al.* (Sup. Ct., L.A. Cnty, CA) and defective automobile engine coolants, *In re*

*General Motors Dex-Cool Products Liability Litigation* (S.D. Ill). He has been instrumental in securing significant recoveries on behalf of thousands of consumers. He was one of the principal counsel in *Snyder v. Nationwide Mutual Insurance Company* (Sup. Ct., Onondaga Cnty, N.Y.), a class action that resulted in a settlement valued at between $85 million and $103 million. As one of two co-lead counsel in a class action against Thomson Consumer Electronics, Mr. Friedman reached a court-approved agreement that made up to $100 million available for persons who paid for unreimbursed repairs to televisions.

Mr. Friedman also has been involved in many successful securities class actions. In July, 2005, Mr. Friedman served as one of lead trial counsel at the trial of a certified class action in *In re Globalstar Secururites Litigation* in the United States District court for the Southern District of New York. Near the end of the second week of trial, a cash settlement of $20 million was reached for the benefit of the certified class. The settlement was preliminarily approved by Judge P. Kevin Castel, who was highly complimentary of counsel:

> This case has been litigated by top trial lawyers, each of whom, as to both lead counsel and the other counsel in the case, have been exceptionally fine in their presentation of the evidence. Mr. Toll, Mr. Friedman, Mr. Shalov, their colleagues Mr. Devore, Ms. Peterson, have all done a terrific job in presenting the case for the plaintiffs.

In addition, Mr. Friedman served as one of co-lead or principal counsel in *Norman Frank et al. v. David L. Paul* (recovery of over $18 million); *In re Jiffy Lube Securities Litigation* (D. Md.) (recovery of over $12 million); and *In re Immunex Securities Litigation* (W.D.Wash.) (recovery of $14 million, then the largest securities class action settlement in Seattle). Mr. Friedman was one of the Firm's attorneys selected by the County of Cuyahoga, Ohio to prosecute a lawsuit that sought to recover losses from the County's Secured Assets Fund Earnings Program (S.A.F.E.). The lawsuit alleged that broker/dealers and a financial institution assisted the County in engaging in unsuitable and inappropriate investments and trading activity. The case settled favorably for $9.5 million.

Mr. Friedman has been a speaker on numerous panels and legal education seminars on various topics, including securities class actions and accounting fraud. He was featured in a November 15, 1997 *Washington Post* article about securities class actions and profiled in the April 14, 2000 edition of *The Washington Business Journal.*

Prior to joining Cohen Milstein, Mr. Friedman served as an attorney with the U.S. Patent and Trademark Office.

Mr. Friedman graduated from Tufts University with a B.A. in Psychology (1980, *magna cum laude*, Phi Beta Kappa) and is a 1983 graduate of the National Law Center, George Washington University.

Mr. Friedman is admitted to practice in the District of Columbia and New York.

**Richard S. Lewis**

Richard Lewis, a Partner at the Firm, joined Cohen Milstein in 1987 and is the head of the Unsafe Drugs & Environmental Health Threats practice group, for both domestic and international matters.

He has been appointed to serve as co-lead counsel in mass tort and class action cases including *In re StarLink Corn Products* (N.D. Ill) (settlement of $110 million) and *In re PPA* (asserting claims by users of unsafe over-the-counter medicines). He has also been appointed to the MDL Steering Committee in *In re Prempro Products Liability Litigation* (E.D. Ark.).

In addition, Mr. Lewis served as lead counsel in numerous actions to obtain medical monitoring relief for communities exposed to toxic chemicals from hazardous waste disposal practices or unsafe drugs. These include *In re Diet Drug Litigation* (Fen-Phen) (E.D. Pa), which resulted in a $4 billion settlement providing medical monitoring in addition to individual personal injury awards in the hundreds of thousands of dollars, and *Harman v. Lipari*, a Superfund case that resulted in a settlement providing medical monitoring for thousands of residents who lived on or played near a landfill. He has litigated both individual and class childhood lead poisoning cases and he is presently lead counsel in a case against the lead pigment industry, *City of Milwaukee v. NL Industries Inc.*, which has succeeded on appeal. Mr. Lewis is also handling mass tort cases involving Vioxx, Celebrex, Bextra and Hormone Therapy, and environmental cases in India and Zambia.

Mr. Lewis graduated from Tufts University with a B.A. in English (*cum laude*, 1976), and earned his Master's in Public Health degree from the University of Michigan (1981) and his law degree from the University of Pennsylvania (J.D., *cum laude*, 1986). He was Comments Editor for the University of Pennsylvania Law Review (1985-86) and authored the Comment, *O.C.A.W. v. American Cyanamid: The Shrinking of the Occupational Safety and Health Act*, U. Pa. L. Rev. (July, 1985). After law school, he was a law clerk for the Honorable Stanley S. Brotman, U.S. District Court for the District of New Jersey.

Mr. Lewis is admitted to practice in the District of Columbia.

**Daniel S. Sommers**

Daniel Sommers, a partner at the Firm, joined Cohen Milstein in 1988. He heads the firm's Securities Fraud/Investor Protection practice group.

Mr. Sommers has served as lead or co-lead counsel in numerous securities fraud class actions in federal courts throughout the United States. He has played a major role in many cases which resulted in multi-million dollar recoveries for individual and institutional investors, including *Steiner v. Southmark Corporation* (N.D.Tex.) (over $70 million); *In re PictureTel Inc. Securities Litigation* (D.Mass.) ($12 million); *In re Nextel Communications Securities Litigation* (D.N.J.) (up to $27 million); and *In re ECI Telecom Securities Ltd. Litigation* (E.D.Va.) ($21.75 million). Mr. Sommers also

represented TBG Inc., a multi-billion dollar privately-held overseas corporation, in a multi-party, complex action alleging fraud in a corporate acquisition. He has also represented individuals in connection with investigations brought by the United States Securities and Exchange Commission.

Mr. Sommers is a frequent commentator on issues relating to the federal securities laws and corporate governance issues. He was a guest panelist on "It's Your Business," a nationally syndicated television program, where he spoke on investor lawsuits, and has been quoted with respect to the federal securities laws in publications including Investor Relations magazine. He was a panelist at the George Washington University Law School, where he spoke on the practice of law from the plaintiff's perspective. Mr. Sommers also has spoken before institutional investor groups, including the California State Association of County Retirement Systems, to whom he spoke on corporate governance and fiduciary duties and liabilities. In 2005, he was a panelist at a District of Columbia Bar Association program where he addressed "Attorney Liability in the Post-Enron, Post Sarbanes-Oxley Era."

He is a 1983 graduate of Union College, earning a B.A. in Political Science (*magna cum laude*), and a 1986 graduate of the George Washington University Law School. Mr. Sommers is admitted to practice in numerous federal courts including the United States Courts of Appeals for the Fourth, Ninth, Tenth and Eleventh Circuits as well as the Supreme Court of the United States.

Mr. Sommers is a member of the bar of the states of New York and New Jersey as well as the District of Columbia.

### Daniel A. Small

Dan Small, a Partner at Cohen Milstein, joined the Firm in 1988 and is the head of the Antitrust practice group.

Among the antitrust cases on which Mr. Small is currently working are: *In re Microsoft Antitrust Litigation* (D. Md.), in which he serves as chair of the experts committee and *Rasmussen v. General Motors* (Cir. Ct., Milwaukee Cty., Wisc.) (and related cases in eight other states), a state-wide class action alleging conspiracy among auto manufacturers and distributors to maintain dual price systems between the United States and Canada. He was co-lead counsel for the end-user plaintiffs in *In re Buspirone Antitrust Litigation* (S.D.N.Y.), a case alleging monopolization and market allocation claims against a brand name drug manufacturer for delaying generic entry to the market that settled for $90 million. Mr. Small also was lead counsel for the plaintiffs in *Pease, et al. v. Jasper Wyman & Son, et al.* (Super. Ct., Knox Cty., Me), a price-fixing class action brought on behalf of Maine wild blueberry growers. The case was tried in November 2003, and the jury returned an $18.68 million verdict for the Class, which after trebling and other additions, resulted in a $56 million judgment.

Mr. Small's substantial appellate experience includes briefing and arguing *Free v. Abbott Laboratories* in the United States Supreme Court. The case presented the issue of

whether a supplemental jurisdiction statute overruled *Zahn v. International Paper Co.*
The Court split 4-4, with Justice O'Connor recusing herself. Mr. Small successfully
briefed and argued appeals before the Seventh Circuit Court of Appeals in *In re Brand
Name Prescription Drug Antitrust Litigation* (7th Cir. 1997) on the issue of whether the
district court had subject matter jurisdiction, and in *Paper Systems, Inc. v. Nippon Paper
Industries Co., Ltd.* (7th Cir. 2002) holding that the federal direct purchaser rule does not
immunize a defendant from liability for the direct sales of its co-conspirators. Mr. Small
also briefed and argued the appeal in *Mack v. Bristol-Myers Squibb* (Fla. 1st DCA 1996),
the first opinion construing the Florida Deceptive and Unfair Trade Practices Act to
permit indirect purchasers to sue for damages for antitrust violations.

He has been a speaker at events organized by the American Antitrust Institute, the
Conference Board, the American Bar Association and the District of Columbia Bar,
among others.

Mr. Small is a 1981 graduate of Colgate University, receiving a B.A. (*cum laude*) in
History. He graduated from the American University's Washington College of Law in
1986 and joined Cohen Milstein after serving as Law Clerk to the Honorable Roger
Vinson, U.S. District Judge for the Northern District of Florida (1986 to 1988).

Mr. Small is admitted to practice in Maryland and the District of Columbia.

**Joseph M. Sellers**

Joseph Sellers, a Partner at the Firm and head of the Civil Rights & Employment practice
group, joined Cohen Milstein in 1997.

Mr. Sellers has represented victims of discrimination and illegal employment practices
individually and through class actions. He has tried several civil rights class actions to
judgment before juries and has argued more than 25 appeals in the federal and state
appellate courts, including the United States Supreme Court. He has served as class
counsel, and typically lead counsel, in more than 30 civil rights and employment class
actions.

Those cases have included: *Beck. v. Boeing Company* (W.D. Wash.), which included a
class of more than 28,000 women employees at Boeing facilities in Washington state
alleging sex discrimination in pay and overtime decisions; *Conway, et al. v. Deutsch*
(E.D. Va.), for a class of all female undercover case officers at the CIA alleging sex
discrimination in promotions and job assignments; *Dukes v. Wal-Mart Stores, Inc.* (N.D.
Cal.), where the Court has certified the largest class in such a case: more than 1.5 million
women employees at Wal-Mart stores, alleging sex discrimination in promotions and pay
decisions; *Johnson, et al. v. Freeh* (D.D.C.), for a class of African-American FBI special
agents alleging racial discrimination in promotion and job assignments; *Keepseagle v.
Venamen* (D.D.C.), for a class of Native American farmers and ranchers denied credit
opportunities by USDA; and *Neal v. Director, D.C Dept. of Corrections* (D.D.C.), the
first sexual harassment class action tried to a jury, for a class of women correctional

employees and women and men subject to retaliation at the D.C. Department of Corrections.

Throughout his career, Mr. Sellers has also been active in legislative matters. He has testified more than 20 times before Committees of the United States Senate and House of Representatives on various civil rights and employment matters. He worked on the passage of the Civil Rights Act of 1991 and the Americans with Disabilities Act of 1990.

Mr. Sellers has trained lawyers at the U.S. Equal Employment Opportunity Commission and the U.S. Department of Justice on the trial of civil rights cases and has lectured extensively throughout the country on various civil rights and employment topics. He was an Adjunct Professor at the Washington College of Law at American University, where he taught Employment Discrimination law, and at the Georgetown University Law Center, where he taught a course on Professional Responsibility.

He served on the Clinton/Gore Transition Team in 1992 and 1993. He headed the teams reviewing the operations of the EEOC, the Office of the Assistant Attorney General for Civil Rights, and various sections of the Civil Rights Division of the Department of Justice. He also served as a Co-Chair of the Task Force of the D.C. Circuit on Gender, Race and Ethnic Bias and was appointed by panels of the D.C. Circuit Court of Appeals and the U.S. District Court for the District of Columbia.

Mr. Sellers was recognized as one of the top lawyers in Washington by *Washingtonian Magazine* in 2002 and again in 2004, and as one of the top dozen employment lawyers in Washington by *The Legal Times.* He is a professionally-trained mediator and has served as the President of the Washington Council of Lawyers.

Prior to joining Cohen Milstein, Mr. Sellers served as head of the Employment Discrimination Project of the Washington Lawyers' Committee for Civil Rights and Urban Affairs for over 15 years.

Mr. Sellers received a J.D. from Case Western Reserve School of Law (1979), where he served as Research Editor of the Case Western Reserve Law Review, and a B.A. in American History and Literature from Brown University (1975).

Mr. Sellers is admitted to practice in the District of Columbia.

### Mark S. Willis

Mark Willis joined the Firm in 1989 and is a Partner in the Securities Fraud/Investor Protection practice group. Mr. Willis heads the Firm's international securities practice as well as its domestic client development work.

Mr. Willis focuses his practice on investor protection issues, including the enforcement of the federal securities laws. In that role he works with a number of European and domestic institutional investors on investor protection and corporate governance matters. He currently acts as co-lead counsel in the *In re Parmalat Securities Litigation* (S.D.N.Y.), the largest fraud in European corporate history that is frequently referred to

as Europe's "Enron". Mr. Willis represents Italian, French and Belgian institutions in that action. He also represented Brussels-based KBC Asset Management in the *In re Royal Dutch/Shell Securities Litigation*. Among other notable cases, Mr. Willis litigated against Caremark International in which Caremark was accused of federal Medicare fraud, subsequently pled guilty and paid the U.S. Government a fine of approximately $160 million and $25 million in a civil settlement. Mr. Willis also litigated against National Health Labs, which resulted in a $65 million settlement, and settled claims against Nextel Communications and Motorola.

Mr. Willis has written extensively on corporate, securities and investor protection issues, often with an international focus. He authored Chapter 60 of *Securities Law Techniques*, titled *Admission of Securities to Official Listing on Stock Exchanges Within the European Union and the Subsequent Disclosure Obligations* (1998). He published a related article in the Fall 1997 issue of the International Law News, *A Brief Overview of the European Union's Efforts to Harmonize the Requirements for Listing Securities*. He also authored Chapter 196 of *Business Organizations with Tax Planning*, titled *Company Laws of the European Union* (1998). Mr. Willis wrote about investor protection issues in an article published in the July/August 2003 edition of *Professional Investor*, a United Kingdom-based journal for institutional investors and investment professionals. A second article, co-authored by Mr. Willis, appeared in the same publication's May 2005 edition. He was also the co-author of the Comment entitled *Corporation Code Sections 309 and 1203: California Redefines Directors' Duties Towards Shareholders,* Pepperdine Law Review, Volume 16, No. 4 (1989).

Mr. Willis has been a frequent speaker at institutional investor conferences on the issues of investor protection through the federal securities laws and the importance of using corporate governance measures to force companies to put the interests of their shareholders first. In addition to numerous forums in the United States, Mr. Willis was invited to address these topics at institutional investor conferences held in London and Paris in January 2003 and spoke at similar conferences in Munich and Milan in the Spring of 2005. He also addressed corporate governance issues at the Annual Conference of the National Council on Teacher Retirement in October 2004.

Mr. Willis obtained a Masters in International Law, with an emphasis in securities regulation, from the Georgetown University Law Center in 1993. He graduated from Pepperdine University School of Law in 1989 where he was a member of the Moot Court Team and won the Dalsimer Moot Court Competition. Mr. Willis received his B.A. in English History from Brigham Young University in 1986.

Mr. Willis is admitted to practice in the District of Columbia and Massachusetts.

### Marc I. Machiz

Marc Machiz, a Partner at Cohen Milstein, joined the Firm in 2000 and is the head of the Employee Benefits (ERISA) practice group. He is the resident Partner of the Philadelphia office.

Mr. Machiz litigates ERISA class actions involving a range of benefits cases including inappropriate pension plan investments, the inappropriate investment in company stock by 401(k) plans, discharges to interfere with pension rights and illegal plan terminations including, among others, *Hans v. Tharaldson et al.*(D.N.D.) (purchase by ESOP of employer stock allegedly imprudently and for more than adequate consideration); *Mehling, et al. v. New York Life Insurance Co., et al.*, (E.D. Pa.) (investment in allegedly overpriced mutual funds proprietary to the sponsor) and *In re Williams Company ERISA Litigation* (N.D. Okla) (investment by 401(k) plan in allegedly inflated company stock); *In re Dynegy ERISA Litigation* (S.D. Texas ) (same); Simpson v. Firemen's Fund Insurance Co. (N.D. Cal.) (discharge of disabled employees allegedly to interfere with their attainment of health benefits); *Stoeffels v. SBC Communications, Inc.*, (S.D. Texas).(termination of retiree telephone concession alleged to be a pension plan); *Wagener v. SBC Communications Inc. Pension Plan* (D.D.C.) (alleged failure to pay promised pension benefits); *Zhu v. Fujitsu*, N.D. Cal.(alleged vesting violation); *Banyai v. Mazur* (S.D.N,Y.) (alleged illegal transfer of fund assets). Mr. Machiz has submitted amicus curiae briefs to the Supreme Court and lower courts on behalf of the Pension Rights Center and the National Association of Insurance Commissioners. He consults with the AFL-CIO on state legislation to expand healthcare coverage so as to minimize the chance that such legislation will be held preempted, and he represents Fiduciary Counselors. Inc. in evaluating the adequacy of both ERISA and Securities settlements on behalf of plans participating in settlements with their plans sponsors and the officers of the plan sponsors, including evaluation of settlements in the the Enron Securities litigation.

He joined the Plan Benefits Security Division ("PBS") of the Office of the Solicitor of Labor as a trial attorney in 1978, and was appointed Assistant Counsel for Fiduciary Litigation in 1982. At the start of 1984, he joined Beins, Axelrod and Osborne, P.C. practicing general labor and ERISA law on behalf of unions and multiemployer plans. In 1986 he returned to the Department of Labor as Counsel for General Litigation at PBS, and from 1988 to 2000 held the position of Associate Solicitor, heading the Division. As Associate Solictor, Mr. Machiz was the Department of Labor's chief ERISA lawyer charged with responsibility for all enforcement litigation brought by the Secretary of Labor under the statute, which governs the vast majority of privately sponsored health, welfare and pension plans. He was also responsible for all legal advice under the statute provided to the Pension & Welfare Benefits Administration, which administers Title I of ERISA.

Mr. Machiz worked to institute the Department's innovative amicus program which aggressively advocated the Department's views throughout the judicial system on a wide range of ERISA issues ranging from the need to limit ERISA preemption of state worker and consumer protection laws to the need to strengthen participants' rights and remedies under the Act.

Mr. Machiz's expertise in ERISA has been recognized by his colleagues in the ERISA bar, who made him a Charter Fellow of the American College of Employee Benefits Counsel. Mr. Machiz is a frequent speaker on ERISA issues for the ABA, ALI-ABAPLI,

and private seminars, and has served as plaintiffs' co-chair of a subcommittees of the Employees Benefits Committee of the ABA's Labor Section. He is also a member of the *BNA Pension and Benefits Reporter* Advisory Board.

Mr. Machiz has authored several articles including *Understanding DOL's New Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation*, Pension & Benefits Reporter, Vol. 31, No. 2, January, 2004; and *ESOPS, ERISA, and Employer Stock: A Litigator's Approach*, ATLA Commercial Litigation Section Newsletter, Volume 7, Number 3 (Spring/Summer 2001).

He attended the University of Pennsylvania, where he earned a B.A. in History, and received his law degree from the University of California at Berkeley (Boalt Hall) in 1978.

Mr. Machiz is admitted to practice in the District of Columbia and Pennsylvania.

### Christine E. Webber

Christine Webber, a Partner at the Firm and a member of the Civil Rights & Employment Practice group, joined Cohen Milstein in 1997. She is the Partner in charge of the law clerk and summer associate program.

Ms. Webber represents plaintiffs in class action employment discrimination and Fair Labor Standards Act cases. Ms. Webber's current docket includes *Dukes v. Wal-Mart Stores, Inc.* (N.D. Cal.), a certified class action for over 1.6 million current and former female employees of Wal-Mart with complaints of discrimination in pay and promotion; *Hnot v. Willis* (S.D.N.Y.), representing a class of women at the vice-president level and above challenging sex discrimination in compensation and promotions; and *Jenkins v. BellSouth* (N.D. Ala.), representing a proposed class of African-American employees challenging race discrimination in promotions and compensation.

She represented plaintiffs in *Beck v. The Boeing Co.* (W.D. Wash.), a class action alleging sex discrimination in compensation and promotions which settled in 2004 for $72.5 million. She was counsel in Trotter *v. Perdue* (D. Del.), representing plaintiffs who were wrongly denied payment of overtime wages, and obtaining a $10 million settlement. She is also representing workers in a similar case against Tyson Foods, Inc.

In 2004, Ms. Webber was named one of the Top Lawyers in Washington, D.C. by *Washingtonian Magazine*.

Prior to joining Cohen Milstein, Ms. Webber received a Women's Law and Public Policy fellowship and worked for four years at the Washington Lawyers' Committee for Civil Rights and Urban Affairs in their Equal Employment Opportunity Project. She worked on a variety of employment discrimination cases, and focused in particular on the sexual harassment class action *Neal v. Director, D.C. Department of Corrections, et al.* Ms. Webber participated in the trial of this ground-breaking sexual harassment class action in 1995. Ms. Webber also tried the race discrimination case *Cooper v. Paychex* (E.D. Va.),

and successfully defended the plaintiffs' verdict before the Fourth Circuit.

Ms. Webber is a member of the National Employment Lawyers' Association (NELA) and co-chair of their Class Action Committee.

She graduated from Harvard University with a B.A. in Government (*magna cum laude*, 1988) and the University of Michigan Law School (J.D., *magna cum laude*, 1991, Order of the Coif). Following law school, Ms. Webber clerked for the Honorable Hubert L. Will, United States District Judge for the Northern District of Illinois.

Ms. Webber is admitted to practice in Illinois and the District of Columbia.

### Richard A. Koffman

Richard Koffman, a Partner at the Firm, joined Cohen Milstein in 2003 and is a member of the Antitrust practice group. He is also co-chair of the firm's *Pro Bono* Committee.

He is currently serving as counsel for plaintiffs in, among other cases, *In re Rubber Chemicals Antitrust Litigation* (N.D. Ca.); *In re Polyester Staple Antitrust Litigation* (W.D.N.C.); and *In re Urethane Antitrust Litigation* (D. Kan.).

Mr. Koffman came to Cohen Milstein after four years as a senior trial attorney with the Antitrust and Civil Rights Divisions of the United States Department of Justice. Prior to joining the Department of Justice, he spent seven years in private practice, with Fine, Kaplan and Black in Philadelphia (working primarily on antitrust class actions and other complex commercial litigation) and then with Bernabei & Katz in Washington, D.C. (handling employment discrimination cases). While at Fine Kaplan, Mr. Koffman was actively involved in litigating several successful antitrust class actions on behalf of plaintiffs and classes, including *In re Nasdaq Market-Makers Antitrust Litigation* (S.D.N.Y.) (settled for more than $1 billion); *In re Polypropylene Carpet Antitrust Litigation* (N.D. Ga.); *In re Commercial Explosives Antitrust Litigation* (D. Utah); and *In re Drill Bits Antitrust Litigation* (S.D. Tex.).

Immediately after law school, he served as a judicial clerk for Judge James B. McMillan of the Western District of North Carolina, and for Judge Anthony J. Scirica of the U.S. Court of Appeals for the Third Circuit.

Mr. Koffman is the author of *It's Not The First Time: Fudging the Truth in Discovery Proceedings Didn't Start with Clinton, Legal Times*, August 24, 1998.

He is a graduate of Yale Law School (J.D., 1990), where he was a Senior Editor of the Law Journal, and Wesleyan University, from which he received a B.A., *with honors,* in English (1986).

Mr. Koffman is admitted to practice in the District of Columbia.

### Agnieszka M. Fryszman

Agnieszka Fryszman, a Partner at the Firm, joined Cohen Milstein in 1998 and is a member of the International Human Rights and Antitrust practice groups.

She currently represents Indonesian villagers in a lawsuit against Exxon Mobil over torture and extrajudicial killings allegedly committed by the defendant's security forces (a unit of the Indonesian military). For the past several years, she has represented the former "comfort women," women and girls who were forced into sexual slavery by the government of Japan during World War II. Her past successes include cases brought by survivors of Nazi-era forced and slave labor against the German and Austrian companies that allegedly used and profited from slave labor, which were resolved by international negotiations that resulted in multi-billion dollar settlements.

In the Antitrust practice group, she represents small businesses that have been victims of alleged price-fixing in the polyester staple and rubber chemicals markets.

She has represented, *pro bono*, a number of victims of the September 11 attack on the Pentagon and obtained significant recoveries, including one of the highest awards for an injured survivor, from the Victim's Compensation Fund. She also represents, *pro bono*, individuals indefinitely detained without charge by the United States at Guantanamo Bay.

Before joining the Firm, Ms. Fryszman was Democratic counsel to the United States House of Representatives Committee on the Judiciary, Subcommittee on Commercial and Administrative Law. She also served as counsel to Representative Henry Waxman, Ranking Member on the House Government Reform and Oversight Committee.

Ms. Fryszman graduated from Brown University with a B.A. in International Relations and Georgetown University Law Center (J.D., *magna cum laude,* 1996, Order of the Coif), where she was a Public Interest Law Scholar.

Ms. Fryszman is admitted to practice in the District of Columbia and New Jersey.

## Charles E. Tompkins

Charles Tompkins, a Partner at Cohen Milstein, joined the Firm in 1999 and is a member of the Antitrust and Civil Rights & Employment practice groups, with an emphasis on obtaining redress on behalf of employees who have not been paid all of the wages they are owed.

In the antitrust field, Mr. Tompkins currently represents Registered Nurses employed by hospitals in Albany, Chicago, Detroit, Memphis, and San Antonio in lawsuits alleging that their employers unlawfully fixed their wages in violation of federal antitrust laws. Mr. Tompkins also is serving as a member of the co-lead counsel team in *In Re Air Cargo Antitrust Litigation* (E.D.N.Y.), a multi-billion dollar antitrust action alleging that the world's major cargo airlines colluded in setting the amounts of various surcharges they imposed on their customers, and *In Re Air Transportation Antitrust Litigation* (N.D. Cal.), a federal antitrust action challenging a conspiracy among airlines to fix the amount of the fuel surcharge imposed on flights to and from Heathrow airport in London. Mr.

Tompkins was a member of the trial team that, following a two-week jury trial, obtained a $56.4 million judgment on behalf of Maine wild blueberry growers who alleged their suppliers fixed the prices of wild blueberries. Mr. Tompkins also was a member of the team that litigated the federal antitrust action *Paper Systems, Inc. v. Mitsubishi Corp. et al.* (E.D.Wisc.), which settled for $20 million on the eve of trial.

In the employment field, Mr. Tompkins has represented a wide variety of employees, and twice obtained summary judgment on behalf of nationwide classes of Auto Damage Adjusters whose employer, GEICO, refused to pay them overtime. See *Robinson-Smith v. GEICO* (D.D.C.); *Lindsay v. GEICO* (D.D.C.). GEICO began paying overtime shortly after the adjusters' victory, and the United States Department of Labor has since cited *Robinson-Smith* in an official opinion letter. Mr. Tompkins also was part of the legal team that obtained a $10 million settlement on behalf of chicken-processing workers who were not paid for the time they spent putting on and taking off their required safety equipment, *Trotter v. Perdue Farms, Inc., et al.* (D. Del.). Perdue Farms changed its practices as part of a global settlement and now pays its employees for this time. Mr. Tompkins also is a member of the team litigating *Dukes v. Wal-Mart Stores, Inc.* (N.D.Cal.), the largest certified Title VII class action in history, in which female employees of Wal-Mart seek redress for unfair gender discrimination, and *Hnot v. Willis, et al.* (S.D.N.Y.), in which a certified class of over one hundred female insurance brokerage executives allege sexual discrimination in compensation and promotions. Mr. Tompkins also serves, on a *pro bono* basis, as a consultant for the Immigrant and Refugee Rights Project at the Washington Lawyers Committee for Civil Rights And Urban Affairs, providing guidance and oversight in litigations brought on behalf of immigrant workers subject to wage and hour violations.

Mr. Tompkins has significant appellate appearance. He second-chaired the argument of *Free v. Abbott Laboratories* before the United States Supreme Court; briefed and successfully argued *Lindsay v. GEICO* before the United States Court of Appeals for the District Of Columbia Circuit; and briefed and argued *Manchester v. Primerica Financial Services, et al.*, which was successfully settled prior to the issuance of a decision, before the United States Court of Appeals for the Eleventh Circuit.

Mr. Tompkins is the author of "Damages Issues in Fair Labor Standards Act Collective Action Litigation," which is scheduled to appear in Volume 10, Issue Number 2, of the Employee Rights and Employment Policy Journal of the Chicago-Kent School of Law; and the co-author, with Michael Hausfeld and Kalpana Kotagal, of "Innovation, Economics and the Law: The Health Care Industry's Exposure to Antitrust Liability," to be published by the ABA Antitrust Law Section in 2007. He has been asked on several occasions to lecture on employment law matters by both the American Bar Association and the National Employment Law Association.

Prior to joining Cohen Milstein, Mr. Tompkins was an associate with the Washington, D.C. office of Akin, Gump, Strauss, Hauer & Feld, L.L.P. He graduated *magna cum laude* from Colgate University and received his J.D. from the University of Virginia School of Law. He is licensed to practice in New York and the District of Columbia.

**Julie Goldsmith Reiser**

Julie Goldsmith Reiser, a Partner at the Firm, joined Cohen Milstein in 1999 and is a member of both the Securities Fraud/Investor Protection and Civil Rights & Employment practice groups.

Currently, she is working on *Dukes v. Wal-Mart Stores, Inc.* (N.D. Cal.), class action which has been certified for 1.5 million current and former female employees of Wal-Mart on complaints of discrimination in pay and promotion, and *In re Parmalat Securities Litigation* (S.D.N.Y.), a securities fraud class action alleging artificial inflation in the price of Parmalat's securities. She has also been involved in the litigation and successful settlement of *Beck v. The Boeing Co.* (W. D. Wash.), which alleged sex discrimination in compensation and promotions; *In re P-Com Securities Litigation* (N.D.Cal.) ($16 million settlement); and *In re Sabratek Securities Litigation* (N.D.Ill.) ($15.3 million settlement).

Ms. Reiser co-authored *Companies in the Cross Hairs: When Plaintiffs Lawyers Choose Their Targets, They Look for These Employment Practices,* The Legal Times, February 21, 2005. In 1999, she co-authored *Antitrust Introduction for the General Practitioner,* a chapter in the Washington Lawyer's Practice Manual.

Prior to joining Cohen Milstein, Ms. Reiser worked in Seattle, Washington where she focused primarily on guardianship and healthcare litigation. She was President of the Board of Directors of Seattle Works and chaired the Nominating Committee for the Board of Directors of the Eastside Domestic Violence Program. She also served a term as a Trustee for the Pacific Northwest Ballet. In 1997, Ms. Reiser worked as a Legal Intern for U.S. Senator Patty Murray.

Ms. Reiser graduated from Vassar College (B.A., International Studies, *with honors,* 1992) and the University of Virginia Law School (J.D., 1997). While in law school, she was a member of the Virginia Journal of Law and Social Policy.

Ms. Reiser is admitted to practice in Washington State and the District of Columbia.

**Victoria S. Nugent**

Victoria Nugent, a Partner at the Firm, joined Cohen Milstein in 2000 and is a member of the Consumer Protection practice group.

Ms. Nugent has focused on consumer protection and public health litigation throughout her career, including *In re StarLink Product Liability Litigation* (N.D. Ill.), representing farmers who sued Aventis Cropscience after an unapproved variety of genetically modified corn was detected in the U.S. corn supply and drove down prices for all U.S. corn exports. More than $100 million was recovered for the class in a landmark settlement. She is currently working on *In re General Motors Dex-Cool Products Liability Litigation* (S.D.Ill.), representing car owners seeking to enforce product warranties for an extended life coolant and *Howell v. State Farm* (D.Md.), representing

flood policy holders who were denied the full benefits of their government-backed insurance policies following Hurricane Isabel. Ms. Nugent has argued cases before the high courts of Georgia, Nebraska and the District of Columbia, as well as the federal D.C. Circuit Court of Appeals.

Before joining Cohen Milstein, Ms. Nugent worked for seven years at Public Citizen, a national consumer advocacy organization. During that time, she worked on many legislative and regulatory campaigns addressing issues that ranged from automobile safety to international trade policy. In 1998, Ms. Nugent received a two-year fellowship sponsored by the National Association for Public Interest Law (NAPIL). As a NAPIL Fellow, she worked at Trial Lawyers for Public Justice (TLPJ), where she helped develop and prosecute impact litigation in the areas of arbitration, banking, credit and insurance.

Ms. Nugent received her undergraduate degree in History from Wesleyan University in 1991 and graduated from Georgetown University Law Center in 1998.

Ms. Nugent is admitted to practice in the District of Columbia and Maryland.

### Benjamin D. Brown

Benjamin Brown, a Partner at the Firm, joined Cohen Milstein in 2005 and is a member of the Antitrust practice group. He has extensive experience in complex litigation and class actions.

Mr. Brown came to Cohen Milstein after four years as a trial attorney with the Antitrust Division of the United States Department of Justice. While there, Mr. Brown led and assisted in numerous investigations of potential anticompetitive conduct and mergers, as well as numerous criminal prosecutions. Prior to joining the Department of Justice, he spent three years as a litigator in private practice: first with Heller Ehrman White & McAuliffe in San Francisco, California, working primarily on complex commercial litigation, including class actions, and then with Covington & Burling in Washington, D.C., handling insurance coverage and antitrust litigation.

Mr. Brown is a graduate of Harvard Law School (J.D., *cum laude*, 1997), where he was on the Executive Board of the Harvard Civil Rights - Civil Liberties Law Review, and the University of Wisconsin - Madison (B.A. in Philosophy, with distinction, Phi Beta Kappa, 1992). After law school, he served as a judicial law clerk for Chief Judge Juan R. Torruella of the U.S. Court of Appeals for the First Circuit.

Mr. Brown is admitted to practice in California and the District of Columbia.

### Avi S. Garbow

Avi Garbow, a Partner at the Firm, joined Cohen Milstein in 2005 and is a member of the Securities Litigation group and the International Human Rights group.

Prior to joining the Firm, Mr. Garbow was a Junior Partner at Wilmer Cutler Pickering

Hale and Dorr in their Securities and Litigation Departments. At Wilmer, Mr. Garbow focused on complex civil and criminal litigation, with an emphasis on internal investigations and financial fraud matters. Before joining Wilmer, Mr. Garbow served over ten years in government as a federal prosecutor in the Justice Department's Environmental Crimes Section, a Special Assistant United States Attorney, and a Special Assistant to the Assistant Adminstrator for Enforcement at the U.S. Environmental Protection Agency. Mr. Garbow has also served as an instructor at the Justice Department's National Advocacy Center. He received special commendations from both the Department of Justice and the Environmental Protection Agency for his trial work.

Mr. Garbow also serves as Vice Chair of the American Bar Association's International Human Rights Committee, and Chair of its Subcommittee on Inter-American Human Rights. In addition, he also regularly works with the Robert F. Kennedy Memorial Center for Human Rights, mainly advocating on behalf of certain international human rights defenders.

He is a graduate of the University of Virginia School of Law (J.D., 1992) (where he was the recipient of the Robert F. Kennedy Award for Public Service), the University of Virginia Graduate School of Arts and Sciences (M.A. in Marine Affairs, 1994), and the University of Michigan (B.A., *magna cum laud*e, 1988). He is also a former firefighter.

Mr. Garbow is a member of the Virginia and District of Columbia bars.

### William P. Butterfield

William Butterfield, a Partner of the firm, is a member of the Antitrust practice group.

For several years, Mr. Butterfield has been leading plaintiffs' discovery efforts in *In Re New Motor Vehicles Canadian Export Antitrust Litigation*, MDL 1532. He is also working on *In Re Hydrogen Peroxide Antitrust Litigation*, (E.D. Pa.), *In Re OSB Antitrust Litigation*, (E.D. Pa.), and *In Re Methyl Methacrylate (MMA) Antitrust Litigation*, (E.D. Pa.).

Previously, Mr. Butterfield was one of the principal attorneys involved in nationwide litigation challenging lending practices conducted by one of the nation's largest sub-prime lenders. In that case, Mr. Butterfield worked extensively with the FTC, and was responsible for generating nationwide media and Congressional attention to lending practices conducted by Associates Finance. Plaintiffs and the FTC eventually settled with Citigroup (which had acquired Associates Finance) for $240 million (*In Re Citigroup Loan Cases*, J.C.C.P. 4197). Mr. Butterfield was also a principal attorney for the plaintiff classes in *In re Prudential Securities Limited Partnerships Litigation*, MDL No. 1005 (S.D.N.Y.), which settled for $137 million, and *In re PaineWebber Securities Litigation*, 94 Civ. 8547 (S.D.N.Y.), which settled for $200 million.

Mr. Butterfield is recognized as a leader in the field of electronic discovery. He has developed electronic document management solutions since the early 1990s, when he

helped design and led the implementation of an electronic document repository to manage more than 15 million pages of documents produced in *In re Prudential Securities Limited Partnerships Litigation*, MDL No. 1005 (S.D.N.Y.). That system was recognized by Senior U.S. District Judge Milton Pollack as Aone of the most innovative and sophisticated high-tech document management/litigation support systems available.@ 163 F.R.D. 200, 208 (S.D.N.Y. 1995). In 2005, Mr. Butterfield testified before the U.S. Judicial Conference Rules Committee regarding proposed electronic discovery amendments to the Federal Rules of Civil Procedure. He speaks at conferences internationally on electronic discovery issues. Mr. Butterfield is also a member of The Sedona Conference, a nonprofit research and educational institute dedicated to the advanced study of law and policy. His comments appeared recently in an article entitled, "E-Discovery: Business is Booming and Lawyers are getting in on the Trend." *Lawyers Weekly*, March 14, 2006.

Mr. Butterfield has also served as an adjunct professor at American University, Washington College of Law, where he taught a course in commodities law and regulation.

Before joining CMHT, Mr. Butterfield was a partner at Finkelstein, Thompson & Loughran, where he focused on antitrust, securities, consumer and banking litigation. While at FT&L, he also served extensively as outside counsel for federal banking agencies, where he investigated and litigated claims in connection with failed financial institutions. Mr. Butterfield has also defended individuals and companies in federal courts and administrative tribunals in matters involving securities and commodities fraud, insider trading, takeover litigation, broker-dealer violations and registration issues. He began his legal career as an assistant prosecuting attorney for Montgomery County, Ohio.

Mr. Butterfield graduated from the University of Toledo, College of Law in 1978, and earned his undergraduate degree from Bowling Green State University in 1975.

Mr. Butterfield is admitted to practice in the District of Columbia and is an inactive member of the Ohio bar.

### Carol V. Gilden

Carol Gilden, a Partner at Cohen Milstein, is a member of the Securities Fraud/Investor Protection practice group. She is the resident Partner at the Firm's Chicago office.

Prior to joining Cohen Milstein, Ms. Gilden served as the head of Much Shelist's securities class action practice and as the Firm's Vice Chair of the Class Action Department. She also worked as an enforcement attorney with the Midwest Regional Office of the Securities and Exchange Commission.

Ms. Gilden has served as co-lead counsel in the Sears/Sears Acceptance Corp. Securities Litigation, Sara Lee Securities Litigation, 99 Cents Only Stores Securities Litigation, Quokka Sports Securities Litigation and the City of Chicago's case against on-line travel

providers. Ms. Gilden also served on the Executive Committees of the Global Crossing Securities Litigation (settlements of $443 million, litigation continues) and the Merrill Lynch & Co. Research Reports cases ($125 million settlement in principle). Among other notable cases, Ms. Gilden served as co-lead counsel in the ML Lee Securities Litigation and Smith Kline Litigation which settled for $33 million and $30 million respectively, as well as lead counsel in *Pacha et. al. v. McKesson Corporation, et.al.*, a private action which settled for a confidential sum, and as liaison counsel and a litigation team member in the Waste Management Litigation, which settled for $220 million. Under her leadership, the firm also served as active members of the litigation teams in the *AOL Time Warner Securities Litigation* ($2.5 billion settlement) and *Salomon Analyst Litigation/In re AT&T* ($75 million settlement).

In addition to her work on behalf of clients, Ms. Gilden publishes scholarly articles and course materials, and lectures at key industry conferences and seminars. She is an author and co-author of articles published by the National Law Journal, *Courts Grapple with Lead-Counsel Auctions*; IICLE on Illinois Causes of Action, *Shareholder Derivative Suits*; the American Bar Association, *The Impact of Central Bank on Securities Fraud Litigation: The Plaintiffs' Perspective*; Illinois Bar Journal, *Proposed Rule 225: A Death Warrant for Class Actions in Illinois* and Practising Law Institute on Class Actions Litigation: Prosecution and Defense Strategies *A Hybrid 23(B)(2) Rule For Hybrid Class Actions? New Developments In The Use Of Rule 23(B)(2) In Class Certification*. In January 2005, Ms. Gilden testified against Proposed Rule 225 before the Illinois Supreme Court's Rules Committee.

Ms. Gilden is a regular presenter at conferences and seminars around the country and has spoken at seminars sponsored by the American Bar Association, Chicago Bar Association, Practising Law Institute, Illinois CPA Foundation, Hines Insurance Symposium, the Ohio and Wisconsin Bar Associations, and the National Association of Shareholders and Consumer Attorneys, as well as at other symposiums.

Ms. Gilden was selected as an "Illinois Super Lawyer" in 2005, 2006 and 2007 by Law & Politics, which published its selections in Chicago magazine (May 2005, February 2006 and February 2007 issues).  Only 5 percent of Illinois attorneys are awarded this honor.

Ms. Gilden also is a frequent commentator in the national media on various class action topics. She frequently appears on CNBC, including on a special segment titled *I Want My Money Back*, where she was described as "one of the top investor advocacy attorneys in the country." She also has been featured on the ABC news programs *World News Tonight*, *World News Now* and *Good Morning America*, as well as has made multiple appearances on *First Business Morning News*. Ms. Gilden recently appeared on the cover of *Chicago Lawyer* in connection with a feature article on The Ebb and Flow of Securities Class Actions.

Ms. Gilden is the President-Elect of the National Association of Shareholder and Consumer Attorneys (NASCAT), which is the preeminent trade association for securities class action attorneys, and serves on its Executive Committee. Prior to becoming

President-Elect, she served as the Treasurer for NASCAT. Ms. Gilden is the first woman in NASCAT's 18-year history to be elected Treasurer, and subsequently, President-Elect. Ms. Gilden is also Vice President of the Institute for Law and Economic Policy (ILEP). She also was a member of Illinois Attorney General Lisa Madigan's Prescription Drug Transition Working Group. Ms. Gilden is a member of the American Bar Association, Illinois State Bar Association, Chicago Bar Association and the Association of Securities and Exchange Commission Alumni.

Ms. Gilden is a graduate of the University of Illinois (B.S., Business Administration, 1979). She graduated from Chicago-Kent College of Law (J.D., *with honors*, 1983) where she was a member of the Chicago-Kent Law Review.

Ms. Gilden is admitted to practice in Illinois and in the federal district court for the Northern District of Illinois.

## Attorney Profiles – Of Counsel & Associates

### Sahar F. Aziz

Sahar Aziz, an Associate at Cohen Milstein, joined the Firm in 2007 and is a member of the Civil Rights & Employment practice group.

Ms. Aziz currently is involved in *Dukes v. Wal-Mart Stores, Inc.* (N.D. Cal.), a class action which has been certified for over 1.6 million current and former female employees of Wal-Mart on complaints of discrimination in pay and promotion, *M.H. Fox, et al. v. Tyson Foods, Inc.*, a class action on behalf of chicken-processing workers who were not paid for the time they spent putting on and taking off their required safety equipment, and *O'Connor v. BASF Corp.*, which alleges a nationwide pattern of age discrimination in layoffs from BASF, a major chemical company based in Germany, with North American headquarters in New Jersey.

Prior to joining the Firm, Ms. Aziz was an Associate at Wilmer, Cutler, Pickering, Hale & Dorr LLP in the Securities and Litigation Departments. At WilmerHale, Ms. Aziz worked on white collar crime investigations, securities litigation, and an international human rights case. Ms. Aziz also worked on a pro bono asylum case. Prior to joining WilmerHale, Ms. Aziz clerked for the Honorable Andre M. Davis on the United States District Court for the District of Maryland.

Ms. Aziz graduated from the University of Texas at Arlington (B.S. in Management Information Systems, *magna cum laude*, 1997), the University of Texas Graduate School College of Liberal Arts (M.A. in Middle Eastern Studies, 2004), and the University of Texas School of Law (J.D., *cum laude*, 2004). At the University of Texas School of Law, Ms. Aziz served as an Associate Editor on the Texas Law Review, participated in the Immigration Clinic, and organized an academic conference entitled "Islam and the Law:

The Question of Sexism." She authored two Notes, *The Laws on Providing Material Support to Terrorist Organizations: The Erosion of Constitutional Rights or a Legitimate Tool for Preventing Terrorism?*, 9 Tex. J. on C.L. & C.R. 45 (Winter 2003), and *Linking Intellectual Property Rights in Developing Countries with Research and Development, Technology Transfer, and Foreign Direct Investment Policy: A Case Study of Egypt's Pharmaceutical Industry*, 10 ILSA J Int'l & Comp L 1 (Fall 2003). While in law school, Ms. Aziz interned at the American Civil Liberties Union of Texas where she conducted community outreach regarding post September 11 civil rights and national security issues. Ms. Aziz also interned at the Commercial Law Development Program at the United States Department of Commerce where she focused on international development projects in Egypt.

Ms. Aziz is a member of the National Employment Lawyers Association. Ms. Aziz is fluent in Arabic and proficient in Spanish.

Ms. Aziz is admitted to practice in Texas and the District of Columbia.

### Allyson B. Baker

Allyson Baker joined the Firm in the spring of 2005 as an Associate, and she is a member of the Antitrust Practice Group.

Prior to joining the Firm, Ms. Baker worked at Heller Ehrman LLP where she represented computer software companies in intellectual property and cyber security litigation. While at Heller Ehrman, Ms. Baker also worked on several civil rights matters for the Lawyers' Committee for Civil Rights Under Law, including work on a Supreme Court amicus brief in *Gratz v. University of Michigan* and *Grutter v. University of Michigan*. In addition, she represented the relators in *U.S. ex rel Alderson and Schilling v. HCA, Inc.*, a False Claims Act case involving Medicare fraud and resulting in a recovery of more than $600 million for the United States. Ms. Baker began her career at Clifford Chance LLP where she litigated antitrust and other commercial litigation matters.

During law school, Ms. Baker interned at the National Lawyers' Committee for Civil Rights Under Law and participated in the honors summer program in the Civil Rights Law Office, Office of General Counsel for the Environmental Protection Agency.

Prior to law school, Ms. Baker worked on the 1996 Clinton-Gore campaign and taught high school world history in Hungary.

Ms. Baker graduated from Columbia University (B.A., History, 1995), where she received the Alumni Association Achievement Award and from New York University School of Law (J.D., *cum laude*, 2000) where she was an Associate Editor on the Review of Law and Social Change.

Ms. Baker is a member of the District of Columbia and New York bars.

**R. Joseph Barton**

Joseph Barton joined Cohen, Milstein, Hausfeld & Toll P.L.L.C. as an associate in 2001 and is a member of the Antitrust, Securities and Employee Benefits practice groups. Prior to joining the firm, Mr. Barton served as a judicial law clerk to the Honorable Lenore C. Nesbitt, United States District Judge for Southern District of Florida (2000-2001). Since joining the firm, Mr. Barton has been actively involved in a diverse number of class action cases.

Mr. Barton has been actively involved in a number of employee benefit cases. For example, in *Beam v. HSBC Bank*, No. (W.D.N.Y.) (settlement of $9.25 Million) which challenged the sale of stock for $25 million by the family shareholders to the Azon Corporation ESOP, Mr. Barton briefed and argued the motions for summary judgment, resulting in denial of defendants' motions and granting plaintiffs' motion for partial summary judgment. In *Simpson v. Fireman's Fund Insurance Company* (N.D. Cal.), Mr. Barton represented a class of active and terminated employees alleging that FFIC's policy of terminated persons on disability violated the discrimination provisions of ERISA, and obtained a settlement which included restoring their right to benefits for a period of years and also reimbursement of past expenses. Additionally, Mr. Barton has also been involved in a number of cases alleging breach of fiduciary duty by investing the 401k plan in company stock. Mr. Barton is currently working on a case against certain insiders at Tharaldson Motels who sold stock to the ESOP for $500 million, *Hans v. Gary Tharaldson et al.* (D.N.D.) and a case against SBC Communications (now AT&T), *Stoffels et al. v. SBC Communications* (W.D. Tex.) alleging that their provision and subsequent elimination of cash payments via a program known as Telephone Concession constituted a defined benefit pension plan under ERISA and violated ERISA. At the hearing on the class certification motion, in *Stoffels*, the Court complimented Mr. Barton on the quality of his advocacy and subsequently certified the class as requested.

Mr. Barton has been active in a number of securities fraud lawsuits including *In re Physician Corporation of America Securities Litigation* (S.D. Fla.) (settlement of $10.2 million)*, and In re MCI Securities Litigation* (D.D.C.) (settlement of $4.5 million) and also represented a small class of former Sterling shareholders who received Uniroyal stock in a merger in *Avery v. Uniroyal Technology Corp.,* (M.D. Fla.) (settlement of $2.3 million). Mr. Barton currently represents limited partners of Lipper Convertibles, a now-defunct hedge fund, in a class action arbitration against the former general partners, *Levitt v. Lipper Holdings et al.* (AAA), and also in litigation against the outside auditor in federal district court, *Levitt v. PricewaterhouseCoopers* (S.D.N.Y.) alleging violations of the federal securities laws in connection with their investments in the Partnership which were allegedly overvalued for over 5 years.

Mr. Barton has also worked on a number of antitrust actions. Mr. Barton was a part of the team that engaged in intensive trial preparations in *In re High Fructose Corn Syrup Antitrust Litigation*, (C.D. Ill.) a class action alleging price-fixing by the manufacturers of high fructose corn syrup, which settled for more than $500 million shortly before trial. Mr. Barton is currently working on *In re Mercedes-Benz Antitrust Litigation* (D.N.J.), a class action alleging price-fixing of new Mercedes -Benz vehicles in the New York

Region. In connection with the *Mercedes-Benz* litigation, Mr. Barton briefed and argued and obtained summary judgment on a matter of first impression that established that lessee-plaintiffs had standing to sue as direct purchasers under the federal antitrust laws.

Additionally, Mr. Barton considers pro bono activities to be an important part of his practice. Along with the non-profit law firm Midwest Environmental Advocates, Mr. Barton provided pro bono representation to the grassroots citizens action group Clean Water Action Council of Northeastern Wisconsin, in objecting to a settlement by the United States Department of Justice and the State of Wisconsin concerning natural resource damages in the Fox River area of Wisconsin. Mr. Barton also represented a client in D.C. Superior Court against her former employer who refused to pay her wages and overtime, in which the Judge described Mr. Barton's representation as follows: "everything done on behalf of the Plaintiff has been professional, timely and thorough."

Mr. Barton received his undergraduate degree from the College of William & Mary (B.A. 1991) where he majored in History and minored in Classical Studies, and graduated *Order of the Coif* from the College of William & Mary, Marshall-Wythe School of Law (J.D. 2000). At law school, he received the Lawrence W. I'Anson Award for outstanding student scholarship, character and leadership, the William B. Spong Award for professionalism and ethics, the Robert R. Kaplan Award for excellence in legal writing and *Order of the Barristers* . He served on the editorial board of the *William & Mary Law Review* and was a staff member of the *William & Mary Bill of Rights Journal*. Mr. Barton was a member of the William & Mary National Trial Team and served as Vice-President of the William & Mary Chapter of the Association of Trial Lawyers of America.

Mr. Barton is the author of *Determining the Meaning of "Direct Evidence" in Discrimination Cases Within the Eleventh Circuit: Why Judge Tjoflat was (W)right*, 77 Fla. B.J. 42 (2003), *Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims*, 41 Wm. & Mary L. Rev. 1789 (2000), and *Utilizing Statistics and Bellwether Plaintiff Trials: What do the Constitution and the Federal Rules of Civil Procedure Permit?*, 8 Wm. & Mary Bill Rts. J. 199 (1999). Each of Mr. Barton's published articles has been cited by both courts and commentators.

Mr. Barton is admitted to practice in the State of California and the District of Columbia and is listed in the *Marquis' Who's Who in American Law.*

### Elizabeth A. Berney

Elizabeth Berney joined the Firm as Of Counsel in 2005 and is a member of the Securities Fraud/Investor Protection practice group.

Her work includes several securities fraud class actions, including cases in federal courts in New York, New Jersey, Florida, Michigan, and California.

Ms. Berney is the co-author (with Melvyn Weiss) of Restoring Investor Trust in Auditing Standards and Accounting Principles, published in the Harvard Journal of Legislation

(Winter 2004). She also has written extensive materials for legal seminars and speeches. She served as a guest lecturer for a Cardozo Law School ethics class and a guest lecturer for a Harvard Law School corporations class regarding securities fraud, was a featured speaker and panelist for the Women's National Book Association, and appeared in a German television documentary. She is a member of the Federal Bar Council.

Prior to joining Cohen Milstein, Ms. Berney was an active member of the plaintiffs' legal teams in leading securities fraud, consumer, and human rights class action including the Enron and Xerox shareholder litigations, the Ford Explorer/Firestone Tire litigation, and the Holocaust Assets cases.

From 2000-2005, Ms. Berney practiced law at the plaintiffs' class action firm of Milberg Weiss & Bershad, LLP. Previously, she worked at Dewey Ballantine in the tax and municipal bonds fields, where she obtained the rulings needed to finance construction of the Intrepid Museum; at Gilbert Segall and Young (now part of Holland & Knight), where she focused on foreign sovereign immunities and general commercial litigation; as in-house counsel for a college; and in her own legal and literary practice, where she negotiated agreements for computer companies and notable authors.

Ms. Berney is an avid amateur violinist. She played violin in the Chicago Civic Orchestra while in law school, and, more recently, has played in COSMOS (the Chamber Orchestra of Science and Medicine), and currently plays in the New York City Bar Association Lawyers' Orchestra.

Ms. Berney is a graduate of Cornell University earning a B.S. in Industrial and Labor Relations with a minor in Music (with honors, 1975) and the University of Chicago Law School (J.D., 1978).

Ms. Berney is admitted to practice in New York and Pennsylvania.

**Mark D. Bogen**

Mark Bogen focuses his practice on investor protection and consumer fraud issues.

Mr. Bogen received his law degree in 1983 from Loyola University School of Law in Chicago, Illinois. Prior to law school, he attended the University of Illinois, where he received a B.S.in 1980.

During the past 14 years, Bogen has written two weekly legal columns for the Sun-Sentinel newspaper located in Ft. Lauderdale, Florida. The Sun-Sentinel is a Tribune Company owned newspaper. Bogen, who is a former adjunct professor of business law, was also a legal correspondent for the local NBC affiliate in Palm Beach, Florida.

Mr. Bogen is admitted to practice law in the State of Florida and Illinois.

**Andrew B. Bullion**

Andrew Bullion joined Cohen Milstein as an Associate in February 2006 and is a member of the firm's Antitrust and International practice groups. He has extensive complex litigation experience on both the plaintiff and defense sides. Prior to joining the firm, Mr. Bullion spent several years as a litigator in private practice in Philadelphia, handling complex commercial matters, including class actions, as well as tort law and intellectual property matters.

He is currently working on several national and international antitrust actions, including: *In re Air Cargo Shipping Services Antitrust Litigation* (E.D.N.Y.), alleging price-fixing of rates for airfreight shipping services by dozens of major international flagship airlines; and the *In re Air Passenger Antitrust Litigation* (N.D.Ca.), alleging price-fixing by British Airways and Virgin Atlantic airlines of surcharges added to the price of passenger tickets for long-haul flights.

Mr. Bullion is a graduate of Villanova University School of Law (J.D. 1996) and Villanova University (B.A. 1989). During law school he clerked for the Federal Trade Commission's Bureau of Competition, and with Advokatfirman Vinge KB, Sweden's largest law firm.

Mr. Bullion is admitted to practice in Pennsylvania, New Jersey, and the District of Columbia.

### S. Douglas Bunch

Doug Bunch, an Associate at the Firm, joined Cohen Milstein in 2006 and is a member of the Securities practice group.

Mr. Bunch is currently working on several active securities fraud actions against issuers of securities for allegedly misleading investors, including *In re Pozen Securities Litigation* (M.D.N.C.), *Blatt v. Corn Products International, Inc.* (N.D. Ill.), and *Levitt v. PricewaterhouseCoopers, LLP* (S.D.N.Y.).

Mr. Bunch is a graduate of the William & Mary School of Law (2006), where he was a recipient of the Benjamin Rush Medal. A member of Phi Beta Kappa, he graduated *summa cum laude* from the College of William & Mary in 2002 with a Bachelor's degree in Government and Classical Studies. Mr. Bunch is also a 2003 graduate of Harvard University's Graduate School of Education, from which he holds a Master's degree in Administration, Planning, and Social Policy. At Harvard, he served as an intern in the Boston office of the U.S. Department of Education's Office for Civil Rights, where he worked closely with attorneys to enforce federal laws that protect students from discrimination on the basis of race, gender, age, and disability.

Mr. Bunch is actively involved in several nonprofit endeavors. He serves as Chairman of *Global Playground, Inc.*, an organization which promotes education in developing countries; as Executive Director of *Ascanius: The Youth Classics Institute*, which promotes the study of classics in the elementary school; and as a member of the Board of Directors of the *Northeast Conference on the Teaching of Foreign Languages*, which promotes the study of world languages more broadly.

Mr. Bunch is admitted to practice in New York and his admission is pending in the District of Columbia.

### Whitney R. Case

Whitney R. Case joined Cohen Milstein as an Associate in 2005 and is a member of the Employee Benefits and Consumer Protection practice groups.

Ms. Case has been actively involved in a number of class action employee benefit cases, including a case against SBC Communications, Inc., which alleges widespread miscalculation of pension benefits owed to their employees in violation of ERISA. Ms. Case also represents Tharaldson Motels, Inc. Employee Stock Ownership Plan in an action for breach of fiduciary duties against the Trustee and other fiduciaries. In addition, Ms. Case is involved in a case alleging breach of fiduciary duty owed to participants in the TXU Corp. 401(k) Plan and a case against Qwest Communications alleging that it violated ERISA regarding certain benefits provided to its retirees.

In the area of consumer protection, Ms. Case represents homeowners whose properties were severely damaged by floods from Hurricane Isabel in a class action filed against eight insurance companies who allegedly mishandled class members' claims and ultimately failed to pay proceeds to which the policyholders were entitled.

Ms. Case is the author of *The Coupon Can Be the Ticket: The Use of "Coupon" and Other Non-Monetary Redress in Class Action Settlements*, 18 Geo. J. Legal Ethics 1431 (2005) (co-authored with Lisa Mezzetti).

Prior to joining the Firm, Ms. Case served as a summer associate and as a law clerk at the District of Columbia Bar's Board on Professional Responsibility. She also studied International Law at University College in London, England and was a student attorney in the Domestic Violence Clinic at Georgetown University Law Center.

Ms. Case received her law degree from Georgetown University Law Center in 2005. She received her undergraduate degree from Tulane University (B.A., Political Economy and French, *cum laude*, 2002) during which time she spent a year studying at Universite de Paris IV, La Sorbonne.

Ms. Case is admitted to practice in New York, New Jersey and the District of Columbia.

### Christopher J. Cormier

Christopher J. Cormier joined Cohen Milstein in 2003 as an Associate in the Antitrust practice group.

Mr. Cormier is actively involved in antitrust actions alleging both concerted and unilateral anticompetitive conduct. For example, in *In re Urethane Antitrust Litigation (Polyether Polyol Cases)*, Civ. No. 04-md-1616-JWL (D. Kan.), he represents several manufacturers and a putative class of direct purchasers of several types of chemicals who

were overcharged as a result of a nationwide price-fixing and market allocation conspiracy. One defendant, Bayer, already has settled for $55.3 million and is providing cooperation pursuant to its obligations under the settlement agreement. In *In re Endosurgical Products Direct Purchaser Antitrust Litigation*, CV 05-8809-JVS(MLGx) (C.D. Cal.), he represents a hospital system and a putative class of direct purchasers of certain medical instruments used in laparoscopic surgery who were overcharged as a result of Johnson & Johnson's monopolistic conduct, which included implementing sole source GPO contracts and tiered market share "discounts" to customers.

He also is involved in: *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group L.P.*, Master File No. CV-05-6419 MRP (AJWx) (C.D. Cal.) (putative class action alleging monopolistic conduct in the pulse oximetry market); *In the Matter of the Arbitration Between Animalfeeds International Corp., et al v. Stolt-Nielsen SA, et al.* (putative class arbitration alleging price-fixing and market allocation for parcel tanker shipping services); *Larsen v. Pioneer Hi-Bred International, Inc.*, No. LA-CV-032776 (Dist. Ct. for Dallas Cnty, Iowa) (putative state-wide class action alleging a price-fixing conspiracy for genetically modified soybean seeds); and *In re Cotton Yarn Antitrust Litigation*, Civ. No. 1:04MD1622 (M.D.N.C.) (putative class action alleging price-fixing of cotton yarn; $7.8 million settlement obtained from one defendant).

Mr. Cormier graduated from the University of Virginia (B.A., Government, 1999) and from the American University's Washington College of Law (J.D., *magna cum laude*, 2002). After his first year of law school, he served as a judicial intern to the Honorable Deborah K. Chasanow, United States District Court for the District of Maryland. During his second year of law school, he served as a legal intern in the Antitrust Division of the United States Department of Justice.

Prior to joining Cohen Milstein, he practiced at a large Baltimore-based law firm, where he focused primarily on commercial litigation.

Mr. Cormier is admitted to practice in Maryland and the District of Columbia.

### Joshua S. Devore

Joshua Devore, an Associate at the Firm, joined Cohen Milstein in 2000 as a member of the Securities Fraud/Investor Protection practice group.

He is currently working on several active securities fraud class actions (including the litigation on the collapse of the Italian dairy conglomerate Parmalat), and in numerous actions against securities industry analysts for issuing misleading analyst reports. He has actively participated in a number of cases that resulted in substantial recoveries for investors, including *In re Lucent Technologies, Inc. Securities Litigation* (settlement of approximately $575 million) and *In re PSINet, Inc. Securities Litigation* (settlement of $17.8 million).

Mr. Devore graduated from Rice University in 1997 with a B.A. in Chemistry, and obtained his law degree from Georgetown University Law Center in 2000. While at

Georgetown, Mr. Devore served as an Executive Editor of the Georgetown International Environmental Law Review. Mr. Devore is co-author of *State Court Class Actions: Trends and Issues, in National Institute on Class-Actions*, C-1 (ABA CLE 1999).

Mr. Devore is admitted to practice in the District of Columbia and Virginia.

### George F. Farah

George Farah joined the Firm as an Associate in 2005 and is a member of the Antitrust, Unsafe Drugs & Environmental Health Threats, and Human Rights practice groups.

Mr. Farah is currently working on *City of Milwaukee v. NL, Inc.*, in which he and other attorneys represent the City of Milwaukee in a public nuisance lawsuit against the leading lead paint manufacturer. He is also currently working on *Schwartz Lee, et al. v. Deutsche Bank AG and Desdner Bank AG*, in which he and other attorneys represent survivors of Nazi-era forced and slave labor against German companies for failing to provide sufficient compensation for allegedly using and profiting from slave labor.

Prior to joining the Firm, Mr. Farah worked on several issue-oriented campaigns. He is the founder of Open Debates, a nonprofit, nonpartisan Washington-based organization committed to reforming the presidential debate process. Before attending law school, Farah worked to expose the harms of media concentration and the IMF's structural adjustment programs at Ralph Nader's Center for the Study of Responsive Law.

Mr. Farah is the author of the book *No Debate: How the Republican and Democratic Parties Secretly Control the Presidential Debates* from Seven Stories Press (April, 2004). His articles have been published in *The Boston Globe, The Philadelphia Inquirer, The Denver Post, The Christian Science Monitor, Fort Lauderdale Sun-Sentinel, Extra! Magazine,* and other publications.

Mr. Farah has appeared on dozens of television programs, including "Nightline," "NOW with Bill Moyers," "20/20," "CBS Evening News with Dan Rather," "NBC Nightly News with Tom Brokaw," "CNN Lou Dobbs Tonight," and "Countdown with Keith Olbermann." Mr. Farah has been interviewed on over 100 radio shows, including NPR's "To the Point," "Keep Hope Alive With Jesse Jackson," "Democracy Now!," "CounterSpin," and "Judicial Watch Report."

Farah has given several talks on the political process at colleges and universities, hosted numerous televised press conferences and was a Newsmaker at the National Press Club in 2004.

Mr. Farah is a graduate of Harvard Law School (J.D., 2005), and Princeton University (B.A., Woodrow Wilson School of Public and International Affairs, 2000). Mr. Farah was the recipient of a Paul and Daisy Soros Fellowship, and a delegate to the 2005 International Achievement Summit.

Mr. Farah is admitted to practice in New York.

**Elizabeth S. Finberg**

Elizabeth Finberg, rejoined Cohen Milstein as an Associate in 2006, and is a member of the Securities Litigation group.

Prior to rejoining the Firm, Ms. Finberg litigated a variety of large and complex commercial cases on behalf of clients such as Sun Microsystems, PricewaterhouseCoopers and Teva Pharmaceuticals USA, Inc., among many others. During her first tenure at the Firm, Ms. Finberg actively litigated a number of securities fraud lawsuits, including, *In re Compuware Securities Litigation*, *In re Uniroyal Securities Litigation*, *In re Sirius Satellite Radio Securities Litigation* and *In re Royal Ahold Securities Litigation*. Ms. Finberg was also a part of the Firm's *In re Lupron and Sales Practices Litigation* team, which garnered a settlement of $150 million on behalf of individual consumers. In addition, Ms. Finberg has litigated numerous *pro bono* cases on behalf of local individuals.

Prior to entering the field of law, Ms. Finberg served in the United States Air Force as a Russian linguist from 1979-1983. She was stationed in West Berlin, Germany (FDR) and received the Air Force Commendation Medal for distinguished service. Thereafter, she raised a family before attending law school.

She is a 1998 graduate of The American University's Washington College of Law, (J.D., 1998, *summa cum laude*) where she was the recipient of the Morton F. McDonald Scholarship Award for Excellence in Legal Research and Writing) and served on the WCL Moot Court Executive Board. Ms. Finberg earned her undergraduate degree from Rollins College (A.B. in International Relations, 1995, *summa cum laude*), where she earned numerous awards for scholarship.

Ms. Finberg is a member of the Virginia and District of Columbia bars.

**Shelly L. Friedland**

Shelly L. Friedland joined the Firm's New York office in 2005 as an associate in the Antitrust practice group.

Ms. Friedland is currently involved in *In re Wellbutrin SR*, *In re Foundry Resins Antitrust Litigation* (S.D. Ohio), and *In re Aspartame Antitrust Litigation* (E.D. Pa).

Prior to joining Cohen Milstein, Ms. Friedland was an associate in the litigation department at Kronish Lieb Weiner & Hellman (now known as Cooley Godward Kronish), where she practiced commercial litigation and white collar criminal law. While at Kronish Lieb, Ms. Friedland represented the family of a victim of the September 11 World Trade Center bombing in its application to the federal Victim Compensation Fund, and a defendant seeking to overturn a wrongful murder conviction. Previously, she was an associate in the litigation department at Paul, Weiss, Rifkind, Wharton & Garrison.

Ms. Friedland received a bachelor's degree in economics from Columbia University (1987), graduating *summa cum laude* as a member of Phi Beta Kappa. She spent her junior year studying at the Hebrew University of Jerusalem. Ms. Friedland received her law degree from Harvard Law School (J.D., 1997, *cum laude*), where she was an editor of the Human Rights Law Journal.

Ms. Friedland is admitted to practice in New York.

**Reena Gambhir**

Reena Gambhir joined Cohen Milstein as an Associate in 2004 and is a member of the Antitrust and International practice groups.

Ms. Gambhir is currently working on, among other antitrust class actions, *In re: Hydrogen Peroxide Antitrust Litigation* (E.D.Pa.) and *In re Pressure Sensitive Labelstock Antitrust Litigation* (M.D.Pa) alleging price-fixing on behalf of purchasers. Among other international and *pro bono* matters, Ms. Gambhir represents a detainee being held at the U.S. government's detention facility in Guantanamo Bay, and residents of Bhopal, India who are exposed to the 1984 Union Carbide gas leak's uncontrolled remaining toxic waste.

Prior to joining the Firm, Ms. Gambhir served as a summer associate and also as a law clerk at the Public Defenders Service for the District of Columbia and the Washington Legal Clinic for the Homeless. In addition, she studied in the International Human Rights Law program at Oxford University, and was a student attorney in the International Human Rights Clinic at the George Washington University Law School. Prior to law school, Ms. Gambhir worked as a paralegal at an immigration law firm in Boston, Massachusetts.

Ms. Gambhir received a B.A. from Boston College in English Literature (*cum laude*, 1999) with a minor in American Gender and Race Studies. She received a Master of Arts in the Humanities from the University of Chicago (2000), and her law degree from the National Law Center, George Washington University (*with honors,* 2004), where she was a Thurgood Marshall Scholar.

Ms. Gambhir is admitted to practice in Massachusetts, admission pending in New York.

**Seth R. Gassman**

Seth R. Gassman joined the Firm as an Associate in 2007 as a member of the Antitrust practice group.

Mr. Gassman is the author of *Direct Democracy As Cultural Dispute Resolution: The Missing Egalitarianism Of Cultural Entrenchment*, 6 NYU Journal of Legislation and Public Policy 525 (2002-2003). He also provided extensive research assistance to Professor Oscar Chase in preparing the fourth edition of Civil Litigation in New York.

Before joining Cohen Milstein, Mr. Gassman worked for Cahill Gordon & Reindel, where he focused on complex civil and commercial litigation and antitrust. He also performed merger clearance and corporate counseling antitrust work related to several mergers.

Mr. Gassman graduated from New York University School of Law (J.D., 2003), where he was awarded the Newman Prize, and the University of California at Berkeley with a B.A. in English (1999).

Mr. Gassman is admitted to practice in New York.

### Llezlie L. Green

Llezlie Green, an Associate at Cohen Milstein, joined the Firm in 2004 and is a member of the Civil Rights & Employment practice group.

Ms. Green currently is involved in *Keepseagle v. Veneman* (D.D.C.), where plaintiffs allege the USDA discriminated in granting access to and servicing of farm loans to Native American farmers and ranchers; *Chase v. AIMCO,* alleging that the U.S.'s largest apartment management company violates the Fair Labor Standards Act by failing to pay its maintenance employees for time spent responding to emergency tenant service requests; and *Arnold v. Cargill*, which alleges discrimination against African-American salaried employees in performance evaluations, promotions, compensation, and terminations.

Ms. Green is a member of the National Employment Lawyers Association and the Washington Council of Lawyers

Before joining Cohen Milstein, Ms. Green worked for Wilmer Cutler & Pickering, where she focused on complex litigation and securities investigations and worked on various civil rights and international human rights *pro bono* projects. Ms. Green then clerked for the Honorable Alexander Williams, Jr. on the United States District Court for the District of Maryland.

Ms. Green graduated from Dartmouth College with a B.A. in Government (*cum laude*, 1997) and Columbia Law School (J.D., 2002), where she was a Harlan Fiske Stone Scholar. At Columbia, Ms. Green was active in the Black Law Students Association, participated in the Human Rights Clinic, and served as an Articles Editor for the Columbia Human Rights Law Review. She authored a Note, *Gender Hate Propaganda and Sexual Violence in the Rwandan Genocide: An Argument for Intersectionality in International Law*, 33 Colum. Hum. Rts. L. Rev. 733 (2002). While in law school, Ms. Green interned at the Center for Constitutional Rights and the NAACP Legal Defense and Educational Fund.

Ms. Green is admitted to practice in New York and the District of Columbia.

### Matthew K. Handley

Matthew Handley, an Associate at Cohen Milstein, joined the Firm in 2004 and is a member of the Securities Fraud/Investor Protection and International practice groups.

Mr. Handley currently is working on several active securities fraud actions against numerous issuers of securities for allegedly misleading investors, including *In re Fannie Mae Securities Litigation* (D.D.C.), *In re Pozen Securities Litigation* (M.D.N.C.), and *In re UICI Securities Litigation* (N.D.Tex.).  Mr. Handley is also involved in the Firm's international civil rights actions, including representation of a class of Indian residents who have suffered from groundwater pollution and representation of disability groups against a nationwide builder for failing to design and build accessible apartments.

In his *pro bono* work, Mr. Handley has represented Nepali citizens in United States Immigration Court in political asylum proceedings.

Prior to joining the Firm, Mr. Handley was a litigation associate at Covington & Burling in Washington, D.C.  He began his legal career as a law clerk for the Honorable William Wayne Justice, United States District Judge for the Eastern District of Texas.  Before attending law school, Mr. Handley served two years as a Peace Corps Volunteer in Nepal, working as a rural construction engineer.

He graduated from Princeton University with a B.S.E in Civil and Environmental Engineering (1997) and attended the University of Texas School of Law where he graduated with high honors in 2002 and was selected for the Order of the Coif and Chancellors Honor Society.  While at the University of Texas, he was an Articles Editor for the Texas Law Review and author of *Why Crocodiles, Elephants, and American Citizens Should Prefer Foreign Courts: A Comparative Analysis of Standing to Sue*, 21 Rev. Litig. 97 (2002).

Mr. Handley is admitted to practice in New York and the District of Columbia.

### Joseph P. Helm, III

Joe Helm, an Associate at the Firm, joined Cohen Milstein in 2006 as a member of the Securities Fraud/Investor Protection practice group.

Prior to joining Cohen Milstein, Mr. Helm's practice was based in Atlanta, Georgia, where he participated in the successful prosecution of numerous securities fraud class actions in federal courts nationwide, as well as several corporate governance cases in various state courts.  Mr. Helm also has substantial experience representing policyholders against insurers in a variety of areas including D&O, professional liability, and general commercial liability insurance.

Mr. Helm graduated from Vanderbilt University in 1992 with a B.A. in Philosophy, and obtained his law degree with honors from Emory University School of Law in 2001.  While at Emory, Mr. Helm was named as the inaugural King & Spalding scholar and was admitted to the Order of the Coif, and he served as a Dean's Fellow and an Articles Editor of the Emory Law Journal.  Also while in law school, Mr. Helm authored *Asbestos*

*Litigation and the Proposed Administrative Remedy: Between the Values of Individualism and Distributive Justice*, 50 EMORY L. J. 631 (2001).

After law school, Mr. Helm served as a law clerk for the Hon. W. Harold Albritton, Chief Judge of the United States District Court for the Middle District of Alabama.

Mr. Helm is admitted to practice in Georgia.

### Andrea L. Hertzfeld

Andrea Hertzfeld, an Associate at Cohen Milstein, joined the Firm in 2004. She is a member of the International and Antitrust practice groups.

Ms. Hertzfeld currently is working on *Schwab v. Philip Morris, USA Inc., et. al.* (E.D.N.Y.), the largest class action lawsuit certified in history, alleging RICO violations by the major tobacco companies in the sale and advertisement of "light" cigarettes on behalf of approximately 50 million smokers. In addition, Ms. Hertzfeld is working on *In re Air Cargo Shipping Services Antitrust Litigation* (E.D.N.Y.), alleging price-fixing of rates for airfreight shipping services by dozens of major international flagship airlines. She is also involved in, among other matters, the *In re Air Passenger Antitrust Litigation* (N.D.Ca), alleging price-fixing by British Airways and Virgin Atlantic airlines of surcharges added to the price of passenger tickets for long-haul flights.

Ms. Hertzfeld worked as a summer associate at Cohen Milstein in 2003. She received a B.A. with University Honors in Economics from Bowling Green State University (2000, *summa cum laude*), where she was a Frazier Reams Scholar and a member of Phi Beta Kappa. She received her law degree from Harvard Law School in 2004, where she served as an Article Editor on the Women's Law Journal.

Ms. Hertzfeld is admitted to practice in Ohio and the District of Columbia.

### Megan E. Jones

Megan E. Jones, an Associate at the Firm, joined Cohen Milstein in 2001 and is a member of the Antitrust practice group.

She is currently involved in, among other class actions: *In re Polyester Staple Antitrust Litigation* (D. Conn.); *In re EPDM Antitrust Litigation* (D. Conn.); and *ERC v. Archstone* (D. Md.).

Ms. Jones is the author of several publications and presentations including *Bankers Beware: The Risks of Syndicated Credits,* in The North Carolina Banking Institute (1999); *Navigating the Sea of E-Commerce Regulation,* in Global E-Commerce Law and Business Report (2000); *A Legal Toolkit for E-Commerce in Latin America,* presented in Miami, FL (2000); and a live webcast interview on Internet Regulation, at www.wallstreetreporter.com (2000).

Prior to coming to the Firm, Ms. Jones litigated intellectual property matters and represented clients before Congress at a Washington, D.C. law firm.

She received her B.A. in English from North Carolina State University in Raleigh, N.C. in 1995 (*magna cum laude*) and her J.D. from the University of North Carolina at Chapel Hill School of Law in 1999. During law school, she served as Article and Notes Editor of the Journal of the North Carolina Banking Institute. In addition, she competed as a member of the National Civil Trial Team. Ms. Jones also clerked for the Committee on the Judiciary, U.S. House of Representatives.

Ms. Jones is admitted to practice in North Carolina and the District of Columbia.

**Matthew B. Kaplan**

Matt Kaplan joined the Firm in 2005 as an Associate in the Securities Fraud/Investor Protection practice group. Before coming to Cohen Milstein, Mr. Kaplan was a litigation associate with White & Case, LLP.

Prior to becoming an attorney Mr. Kaplan was a U.S. Foreign Service Officer. He was stationed in Venezuela, Colombia, The Bahamas and Nicaragua.

Mr. Kaplan is a graduate of Georgetown University's School of Foreign Service (B.S.F.S., with honors). He received his law degree from The George Washington University Law School. (J.D., With Highest Honors, Order of the Coif)

Mr. Kaplan is admitted to practice in the District of Columbia and Virginia.

**Kathleen M. Konopka**

Kathleen Konopka joined Cohen, Milstein, Hausfeld & Toll in December 2006 as an associate in the Antitrust practice group.

Prior to joining the firm, Ms. Konopka served in as an Assistant United States Attorney for the District of Columbia. In that capacity, she prosecuted criminal defendants in both the local and federal courts and defended the United States in civil litigation at both the trial and appellate levels. Ms. Konopka also conducted a large-scale review of the Federal Bureau of Investigation as an attorney advisor with the Department of Justice's Office of the Inspector General.

Ms. Konopka graduated from Northeastern University School of Law and Vassar College with a B.A. in Feminist Theory. She has also studied the impact of litigation on the enforceability of discrimination laws in Stockholm, Sweden.

Ms. Konopka is admitted to practice in Maryland and the District of Columbia.

**Kalpana Kotagal**

Kalpana Kotagal joined the firm as an associate in November, 2006 and is a member of the Antitrust practice group.

Before attending law school, Ms. Kotagal worked in the environmental community as Assistant National Field Director of the United States Public Interest Research Group, running national legislative campaigns on energy and environmental issues, and as an organizer with Green Corps. She recently served as an advisor to a Congressional candidate.

While in law school, Ms. Kotagal was a summer associate and served as law clerk in the Chambers of the Honorable J. Curtis Joyner, Eastern District of Pennsylvania. She was also involved in litigation under the Alien Tort Claims Act and RICO on behalf of Haider Mushin Saleh against contractors CACI and Titan for human rights abuses in Abu Ghraib prison. She served on the Editorial Board of the University of Pennsylvania Law Review as an Articles Editor.

Following law school, Ms. Kotagal clerked for the Honorable Betty Binns Fletcher, United States Court of Appeals for the Ninth Circuit.

Ms. Kotagal received her undergraduate degree from Stanford University (A.B., economics, B.S., earth systems, *with honors*, 1999) and was a Morris K. Udall Scholar. She received her law degree from the University of Pennsylvania (2005, *cum laude*). She was a James Wilson Fellow and served as Articles Editor of the Law Review.

Ms. Kotagal is admitted to practice in New York and is pending admission to practice in the District of Columbia.

**Brent W. Landau**

Brent W. Landau, an Associate, joined Cohen Milstein in 2002 and is a member of the Antitrust practice group.

Mr. Landau currently is working on *Schwab v. Philip Morris USA, Inc., et al.* (E.D.N.Y.), alleging a RICO conspiracy and fraud in connection with the marketing and sale of "light" cigarettes; *In re Intel Corporation Microprocessor Antitrust Litigation* (D. Del.), alleging monopolization of the market for x86 microprocessors; and *Allied Orthopedic Appliances, Inc. v. Tyco Health Care Group, L.P.* (C.D. Cal.), alleging monopolization of the market for pulse oximetry products. Other cases in which he has been involved include *In re Vitamins Antitrust Litigation* (D.D.C.), where a 2003 trial resulted in a trial verdict in favor of the plaintiffs and the class of $49.5 million before trebling, the fifth largest that year; *Ferko v. National Association for Stock Car Auto Racing, Inc.* (E.D. Tex.), alleging anticompetitive conduct in the market for top-level stock car racing (a settlement in the case succeeded in bringing the inaugural second Nextel Cup Series race to Texas Motor Speedway); and *Meijer, Inc. v. 3M Co.* (E.D. Pa.), alleging monopolization of the market for invisible and transparent tape (an approximately $28 million settlement was approved in 2006).

Prior to joining the Firm, Mr. Landau served as a judicial law clerk to the Honorable Bruce W. Kauffman, United States District Court for the Eastern District of Pennsylvania.

He is the author of *State Employees and Sovereign Immunity: Alternatives and Strategies for Enforcing Federal Employment Laws*, 39 Harv. J. on Legis. 169 (2002); *State Bans on City Gun Lawsuits*, 37 Harv. J. on Legis. 623 (2000); and *Sovereign Immunity and You: How New York State Employees Can Enforce Their Federal Employment Rights*, United University Professions Working Paper Series (Dec. 2005) (presented at November 2005 UUP conference on "Preserving the Rights of Public Employees").

Mr. Landau graduated from the State University of New York at Binghamton, where he received a B.A. in History and Philosophy (*summa cum laude*, 1998) and was a member of Phi Beta Kappa. He obtained his law degree from Harvard Law School (*cum laude*, 2001), where he was co-chairperson of the Tenant Advocacy Project and a supervising editor of the *Harvard Journal on Legislation*.

Mr. Landau is admitted to practice in Pennsylvania, New York, and the District of Columbia.

**Jason M. Leviton**

Jason Leviton, an Associate at Cohen Milstein, joined the Firm in 2004 as a member of the Securities Fraud/Investor Protection practice group.

He is currently involved in several major securities fraud cases at the Firm, including the class action of *Ong v. Sears, Roebuck, and Co.* (N.D. Ill) and the individual action named *Domenikos v. Nortel Networks Corp. et al.* (S.D.N.Y.). Mr. Leviton also worked on a $7.5 million settlement against the auditing firm Coopers & Lybrand and several former officers of Mid-American Waste Systems (*Bovee v. Coopers & Lybrand, et al.*) (S.D.Ohio).

Prior to joining Cohen Milstein, Mr. Leviton was a securities class-action attorney with Milberg Weiss Bershad & Schulman LLP.

Mr. Leviton attended Gonzaga University where he received both a B.A. in Philosophy (2000) and a J.D. (*cum laude*, 2003). While in law school, he won the Linden Cup Moot Court competition and was a member of the Editorial Board of the Across Borders International Law Journal. Mr. Leviton also received a Master of Laws (Dean's Certificate, 2004) in Securities and Financial Regulations from Georgetown University Law Center. He was the inaugural LL.M. student selected for an externship with the SEC's Division of Enforcement

Mr. Leviton is admitted to practice in the states of Washington and Florida.

**James E. McGovern**

James McGovern focuses his practice on investor protection issues. Since joining Cohen Milstein, he has worked on several well-known securities fraud cases, including cases currently pending against WorldCom and Parmalat. Prior to joining Cohen Milstein, Mr. McGovern was an associate at Latham & Watkins where he worked on complex litigation and FIFRA arbitrations.

Mr. McGovern received his law degree from Georgetown University Law Center where he graduated magna cum laude (2002) and was selected for the Order of the Coif. Prior to law school, he attended American University where he received a B.A., International Studies (1994) and a M.B.A., Finance (1998), with high honors.

Mr. McGovern is admitted to practice in Maryland and the District of Columbia.

**Douglas J. McNamara**

Douglas McNamara, Of Counsel at the Firm, joined Cohen Milstein in 2001 as a member of the Antitrust and Consumer Protection practice groups.

He is currently involved in environmental litigation surrounding the release of radioactive waste water at the Braidwood Generating Station, in Illinois. He also works on a variety of consumer fraud and product liability cases involving pharmaceuticals, like OxyContin and Vioxx.

Prior to joining Cohen Milstein, Mr. McNamara was a litigation associate at Arnold & Porter, specializing in pharmaceutical and product liability cases. He started his career at New York City's Legal Aid Society, defending indigent criminal defendants at trial and on appeal.

He has authored two law review articles: *Buckley, Imbler and Stare Decisis: The Present Predicament of Prosecutorial Immunity and An End to Its Absolute Means*, 59 Alb. L. Rev. 1135 (1996); and *Sexual Discrimination and Sexual Misconduct: Applying New York's Gender-Specific Sexual Misconduct Law to Minors*, 14 Touro L. Rev. 477 (Winter 1998).

Mr. McNamara graduated from SUNY Albany with a B.A. in Political Science (*summa cum laude*, 1992) and New York University School of Law (J.D., 1995).

Mr. McNamara is admitted to practice in New York and the District of Columbia.

**Steig D. Olson**

Steig D. Olson joined the Firm as an Associate in 2003 as a member of the Antitrust practice group.

He is currently involved in, among other cases, *In re Plastics Additives Antitrust Litigation*, (E.D.Pa) in which plaintiffs allege a price-fixing conspiracy by manufacturers of additives for plastics in the United States; *Molecular Diagnostics Laboratories v.*

*Hoffman-La Roche, Inc.* (D.D.C.), for the unlawful monopolization of an enzyme used in DNA amplification, human-genome research, and medical diagnostics; and *Griffin v. Concord EFS, Inc.* (N.D.Cal.), which alleges that member banks of a network conspired to fix fees associated with ATM transactions.

Mr. Olson is the author of *Efforts to Delay Competition from Generic Drugs: Litigation Along a Seismic Fault Between Antitrust and Intellectual Property Law*, co-authored with Joshua P. Davis, 39 U.S.F.L. Rev. 1 (2004). He has also provided research assistance for several articles, including those of V. Schultz, *The Sanitized Workplace*, 11 Yale L.J. 2061 (2003); M. Mutua, *Savages, Victims, and Saviors: The Metaphor of Human Rights*, 42 Harv. Int'l L.J. 201 (2001); and L. Guinier, *Confirmative Action*, 25 L. & Soc. Inquiry 565 (2000).

Before joining Cohen Milstein, Mr. Olson clerked for the Honorable Barrington D. Parker, Jr. of the United States Court of Appeals for the Second Circuit, and the Honorable Vaughn R. Walker of the United States District Court for the Northern District of California.

Mr. Olson graduated from Harvard Law School, *magna cum laude* (J.D., 2001) and Vassar College with a B.A. in Philosophy (1997).

Mr. Olson is admitted to practice in New York.

### James J. Pizzirusso

James Pizzirusso joined the Firm in 2001 as an Associate and is a member of the Unsafe Drugs & Environmental Health Threats and Consumer Protection practice groups.

Mr. Pizzirusso is currently working on cases involving lead paint, toxic property contamination, and "light" cigarettes. He currently represents the City of Milwaukee in a public nuisance lawsuit against lead paint manufacturers and was a member of the successful appellate team in that case. In overturning summary judgment in favor of defendants, the Wisconsin Court of Appeals became the first appellate court in the country to recognize the right of a governmental entity to bring a public nuisance and conspiracy lawsuit against the lead paint industry. Mr. Pizzirusso was also the lead student attorney and won a verdict in favor of the plaintiff under the Vaccine Injury Act in *Dela Rosa v. Secretary of HHS* (Fed. Cl. Aug. 14, 2001) (later settled for $9 million in lifetime care for the plaintiff).

Mr. Pizzirusso has served as a panelist at several regional conferences and presented topics including: "Strategies for Pursuing Litigation Remedies in Eliminating Childhood Lead Poisoning," "Developing Novel Theories of Recovery in Toxic Tort Litigation," "Consumer Protection Law," and "Public Interest Tort Litigation: Using Private Tort Actions to Further Environmental Justice & Public Ends." He is the author of two published papers: *Agency Rule-Making Power and the Clean Air Act: Putting the Brakes on American Trucking, Spring 2001 Term: Whitman v. American Trucking Associations, Inc.*, 7 Envtl. Law. 729 (June, 2001) and *Increased Risk, Fear of Disease and Medical*

*Monitoring – Are Novel Damage Claims Enough to Overcome Causation Difficulties in Toxic Torts*, 7 Envtl. Law. 183 (September, 2000).

Prior to joining the Firm, he worked on several political campaigns and worked with the AFL-CIO.

He graduated *summa cum laude* from the University of Tennessee-Knoxville with a B.A. in Environmental Policy. While in college, he was a Whittle Scholar, a member of Phi Beta Kappa and earned the Torchbearer award for outstanding service to the University. In 2001, Mr. Pizzirusso obtained his law degree from George Washington University Law School (*with honors*) where he was a note writer for the *Environmental Lawyer Journal* and the Student Director of the law school clinical program. He was also Vice President of the Trial Court Board and Captain of a team that placed first in the region in ATLA's 2000-2001 Student Trial Advocacy Competition.

Mr. Pizzirusso is admitted to practice in the District of Columbia, Virginia, the Fourth Circuit Court of Appeals, the Court of Federal Claims and the Eastern and Western Districts of Arkansas.

### Brian A. Ratner

Brian Ratner, an Associate at the Firm, joined Cohen Milstein in 2001 and is a member of the Antitrust and International practice groups. Mr. Ratner is also a member of the firm's Summer Associate Committee.

Mr. Ratner has worked extensively on the matter of *In Re Vitamins Antitrust Litigation* (D.D.C.) on behalf of two certified classes of vitamin direct purchasers who were overcharged as a result of a ten-year global price-fixing and market allocation conspiracy. Mr. Ratner acted as one of the lead associates in a 2003 trial in the case before Chief Judge Hogan, in which a jury unanimously found in favor of the class, awarding them $148,617,702 in trebled damages. The National Law Journal ranked this verdict as the 12th largest in 2003.

Mr. Ratner litigated, among other matters: *Empagran, S.A. et al. v. F. Hoffmann-LaRoche, Ltd., et al.* (D.D.C.), a case alleging a global vitamins price-fixing and market allocation conspiracy on behalf of foreign purchasers (remanded by U.S. Supreme Court); *In Re Publication Paper Antitrust Litigation* (D. Conn.), alleging price fixing and market allocation; and *Oncology & Radiation Associates v. Bristol-Myers Squibb Co.* (D.D.C.), alleging monopolization against a drug manufacturer, which settled for $65 million.

Prior to joining Cohen Milstein, Mr. Ratner worked for Jones, Day, Reavis & Pogue where he focused on complex civil and commercial litigation, corporate securities litigation, and antitrust. He also performed merger clearance and corporate counseling antitrust work related to the CBS/Viacom and AOL/Time Warner mergers.

Mr. Ratner graduated from Indiana University-Bloomington with a B.A. in Journalism (1996) and a second major in Political Science. In college, he was a member of the Mortar Board National Honor Society, did undergraduate work at Hebrew University in Jerusalem, Israel, and worked on several political campaigns including the re-election campaign of former U.S. Senator Harris Wofford. Mr. Ratner obtained his law degree from the University of Pittsburgh School of Law (1999), where he was the Managing Editor of the Journal of Law and Commerce. During law school, Mr. Ratner externed for the Hon. Donetta W. Ambrose (W.D. Pa.).

Mr. Ratner is admitted to practice in New Jersey, Pennsylvania and the District of Columbia.

### Hilary K. Ratway

Hilary Ratway joined the Firm in the summer of 2006 as an Associate, and she is a member of the Antitrust Practice Group.

Ms. Ratway is currently working on, among other class actions: *In re Air Cargo Shipping Services Antitrust Litigation* (E.D.N.Y.), *In re Publication Paper Antitrust Litigation* (D. Conn.), and *In re Aspartame Antitrust Litigation* (E.D. Pa.).

Prior to joining the firm, Ms. Ratway worked at The Furth Firm in San Francisco, California and Finkelstein, Thompson & Loughran in Washington, D.C., where she gained substantial experience representing plaintiffs in antitrust and consumer fraud class actions. Ms. Ratway was involved in *Schwab v. Philip Morris USA et al.* (E.D.N.Y.), a recently certified class action alleging a RICO conspiracy and fraud in connection with the marketing and sale of "light" cigarettes.

During law school, Ms. Ratway interned in the United States Supreme Court Office of Legal Counsel and for the Honorable Ricardo M. Urbina of the United States District Court for the District of Columbia.

Ms. Ratway received a B.A. in Environmental Studies from the University of Colorado, Boulder (1996) and a J.D. from the American University Washington College of Law (*cum laude*, 2000).

Ms. Ratway is admitted to practice in California and the District of Columbia.

### Bruce F. Rinaldi

Bruce Rinaldi joined the Firm in 2004 as Of Counsel and is a member of the Employee Benfits practice group.
After clerking for United States District Judge James A. Walsh in Tucson, Arizona, Mr. Rinaldi taught at the University of Arizona School of Law and was in private practice in Tucson before serving as a Special Counsel in the Office of the General Counsel at the Securities and Exchange Commission. In 1979 he joined the Special Litigation Division in the Office of the Solicitor of Labor as Supervisory Trial Attorney, where he ran the

litigation of *Donovan v. Fitzsimmons* (N.D. Ill.), negotiating and drafting a consent decree governing the management of billions of dollars in assets of the Teamsters Central States Pension Fund, which remains in effect today. Mr. Rinaldi also conducted a four month trial of allegations of ERISA fiduciary breaches with respect to the Teamsters Central States Health and Welfare Fund in *Brock v. Robbins* (D.C. N.D. Ill.).

In 1985 Mr. Rinaldi became the Senior Trial Attorney in the Plan Benefits Security Division of the Department of Labor. Mr. Rinaldi litigated a wide range of major fiduciary breach cases brought by the Secretary of Labor under ERISA including the seminal case of *Reich v. Valley National Bank* ( S.D.N.Y.), concerning fiduciary breaches in the acquisition of employer stock by an ESOP. In 1989 Mr. Rinaldi joined the Office of Thrift Supervision ("OTS") as the Associate Chief Counsel for Litigation and directed investigations and enforcement actions under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") for fiduciary breaches arising out of failures of thrifts and savings and loan organizations. He directed all of the enforcement actions taken by the OTS against officers, directors, accountants, and attorneys associated with Lincoln Savings and Loan Association, the largest thrift failure in history. *See In re American Continental Corp./Lincoln Sav. & Loan Securities Litigation* (D.C. Ariz.).

In 2000, Mr. Rinaldi left the government for private practice. As the senior litigator at the McTigue Law Firm, Mr. Rinaldi was responsible as co-lead counsel for several cases, including the approved settlement of a case against the fiduciaries of the Morrison Knudson 401(k) plan; *In re McKesson HBOC, Inc. ERISA Litigation* (N.D. Cal.); and *In re CMS Energy ERISA Litigation* (E.D.Mich.).

Mr. Rinaldi earned a B.A. in Political Science from the University of California at Berkeley in 1969, after spending three years as a Peace Corps volunteer in Venezuela, and then received his law degree from the University of California at Davis (King Hall) in 1972.

Mr. Rinaldi is admitted to practice in the District of Columbia and is an inactive member of the Arizona and California Bars.

### Sharon K. Robertson

Sharon K. Robertson, an Associate, joined Cohen Milstein in 2007 and is a member of the Antitrust practice group.

Before attending law school, Ms. Robertson worked on the campaign committee of Councilman John Liu, the first Asian-American to be elected to City Council.

During law school, Ms. Robertson served as an Alexander Fellow. In that capacity, she spent a semester interning full-time within the Chambers of the Honorable Shira A. Scheindlin, United States District Court for the Southern District of New York. She was also an intern in the United States Court of Appeals for the Second Circuit and the Litigation Bureau of the Office of the New York State Attorney General.

Ms. Robertson graduated from the State University of New York at Binghamton, where she received a B.A. in Philosophy, Politics and Law (*magna cum laude*, 2003) and was a member of Phi Eta Sigma National Honor Society and the Golden Key International Honor Society. She received her law degree from the Benjamin N. Cardozo School of Law (J.D., 2006). She served as Notes Editor of the Cardozo Public Law, Policy and Ethics Journal.

Ms. Robertson is admitted to practice in New Jersey and is pending admission to practice in New York.

### Bernard S. Sharfman

Bernard Sharfman joined the Firm in 2006 as Of Counsel and is a member of the Securities Fraud/Investor Protection group.

Mr. Sharfman's legal work experience has included being a legal analyst for Bloomberg Law Reports, a member of the editorial staff of the Takeover Stock Report and an associate counsel for MERSCORP, Inc. in Vienna, Virginia. Mr. Sharfman began his legal career as an associate with the corporate and securities law firm of Muldoon Murphy & Aguggia LLP in Washington, DC. Prior to entering law school, Mr. Sharfman worked for nine years at Fannie Mae and for four years at the Office of Finance, Federal Home Loan Banks.

Mr. Sharfman is the author of two recent articles on the business judgment rule: *Being Informed Does Matter: Fine Tuning Gross Negligence Twenty Plus Years after Van Gorkom*, The Business Lawyer, Vol. 62, No. 1 (November 2006) and *Understanding Maryland's Business Judgment Rule*, Duquesne Business Law Journal, Vol. 8 (Spring 2006). Mr. Sharfman is also the author of *Modifying Model Rule 5.4 to Allow for Minority Ownership of Law Firms by NonLawyers*, Georgetown Journal of Legal Ethics, Vol. 13, No. 3 (Spring 2000).

Mr. Sharfman is a graduate of the Georgetown University Law Center (J.D., 2000) where he was an Executive Editor of the Georgetown Journal of Legal Ethics and the recipient of the journal's Saint Thomas More Award, American University (M.S. in Accounting, 1995), the University of Michigan (M.A. in Economics, 1983), The University of Toledo (M.B.A. (Finance), 1980) and The Ohio State University (B.S. Bus. Adm. *cum laude* (Economics), 1979).

Mr. Sharfman is a member of the Maryland and District of Columbia bars.

### Daniel W. Sigelman

Daniel Sigelman joined the Firm as Of Counsel in 2005 and is a member of the Unsafe Drugs & Environmental Health Threats practice group.

Mr. Sigelman concentrates on mass tort/product liability and economic injury litigation against pharmaceutical and medical device manufacturers. His current work includes

class action medical monitoring lawsuits focusing on the safety of heart valves; mass tort and ERISA cases involving drug products, such as Vioxx; and third party payor litigation against drug and medical device companies. Prior to joining Cohen Milstein, he held lead roles in product liability actions against FDA-regulated companies, including *Grundberg v. The Upjohn Company* (D. Utah) and *In re St. Jude Medical, Inc., Silzone Heart Valves Products Liability Litigation* (D. Minn.).

Mr. Sigelman is a professorial l lecturer at the George Washington University Department of Health Policy and Health Services, where he teaches pharmaceutical policy. He is a frequent lecturer and commentator on health care and pharmaceutical/medical device issues. He has published several articles in *Trial* and other publications relating to discovery and the role of FDA regulation in pharmaceutical litigation and on congressional oversight of FDA's regulation of drug safety.

From 1979 to 1981, Mr. Sigelman served as a staff attorney to the Public Citizen Health Research Group. From 1981 to 1988, he was counsel to the House Subcommittee on Human Resources and Intergovernmental Relations, where he conducted investigative oversight of the Food and Drug Administration. His investigations produced numerous congressional hearings on the FDA's regulation of unsafe drugs, many of which were removed from the market for safety reasons. Some of his investigative findings forced changes in the FDA's regulations as well as review of procedures and policies and even led to several successful federal prosecutions of pharmaceutical manufacturers for violating the federal Food, Drug, & Cosmetic Act. He authored numerous congressional committee reports on his investigations of the FDA's regulation of the safety of the nation's human and animal drug and food supply. From 1988-2000, he practiced in Atlanta, Georgia where he worked on drug and medical device cases and other types of litigations.

Mr. Sigelman is a graduate of Dartmouth College (*summa cum laude*, 1972), where he received a B.A. in English. He attended the University of California, Berkley, earning a Master's degree in English (1975), and the Boalt Hall School of Law, the University of California, Berkeley (J.D., 1979).

Mr. Sigelman is admitted to practice in the District of Columbia and Georgia.

### Patrick A. Tillou

Patrick Tillou, an Associate at the Firm, joined Cohen Milstein in 2006 and is a member of the Antitrust practice group.

Mr. Tillou is currently working on *In re New Motor Vehicles Canadian Export Antitrust Litigation* and *In re OSB Antitrust Litigation*, among other cases. Before joining Cohen Milstein, Mr. Tillou previously worked for Winston & Strawn and Cleary, Gottlieb, Steen & Hamilton, where he focused on antitrust, including counseling, mergers and litigation, as well as other complex civil and commercial litigation. He has also done appellate work and collateralized securities offerings.

Mr. Tillou graduated from Duke University with a bachelor's degree in Psychology (1997, *magna cum laude*) and attended law school at the University of Michigan (1999, *cum laude*). During law school, he also studied European Union and international law at the Katholieke Universiteit in Leuven, Belgium.

Mr. Tillou is admitted to practice in the U.S. Virgin Islands and the District of Columbia, and is a member of the bar of the United States Supreme Court.

### Catherine A. Torell

Catherine Torell is Of Counsel at Cohen Milstein. She joined the Firm in 2002 and is a member of the Securities Fraud/Investor Protection practice group.

Currently, Ms. Torell is involved in the *In re Parmalat Securities Litigation* (S.D.N.Y.) on which Cohen Milstein serves as co-lead Counsel. She also conducts investigations of securities fraud cases for the practice group, working with all of its litigators.

Prior to joining Cohen Milstein, Ms. Torell was associated with the firm of Entwistle & Cappucci LLP, where she served as co-lead counsel in *In re Providian Financial Securities Litigation* (E.D.Pa.), which resulted in a $38 million settlement. In approving the settlement, the Court remarked on the "extremely high quality" and "skill and efficiency" of plaintiffs' counsel's work throughout the litigation. Ms. Torell also was previously associated with Goodkind Labaton Rudoff & Sucharow LLP, where she served as counsel to the New York City Pension Funds in *In re Orbital Sciences Corp. Securities Litigation* (E.D.Va.) ($22.5 million settlement), as counsel to the Florida State Board of Administration in *LaPerriere v. Vesta Insurance Group, et al.* (N.D.Ala.) ($61 million settlement), and as counsel to Amalgamated Bank of New York in *In re Bristol-Myers-Squibb Securities Litigation* (D.N.J.).

Ms. Torell received a B.A. in Political Science from Stony Brook University (1984) and her law degree from St. John's University School of Law (1990) where she was the recipient of the Federal Jurisprudence Award.

Ms. Torell is admitted to practice in New York.

### Jenny R. Yang

Jenny Yang joined the Firm in 2003 as an Associate and is a member of the Civil Rights & Employment practice group.

Currently, she works on *Jenkins v. BellSouth* (N.D.Ala.), a race discrimination case alleging systemic discrimination in pay and promotions, and *Robinson-Smith v. GEICO* (D.D.C.) and *Lindsay v. GEICO* (D.D.C.), two separate nationwide lawsuits challenging GEICO's refusal to pay auto damage adjusters overtime. In addition, Ms. Yang was on the team that represented the plaintiffs and class in *Beck v. The Boeing Company* (W.D. Wash.), a class action alleging sex discrimination in compensation and promotions, which successfully settled for up to $72.5 million.

Ms. Yang is a contributing editor of the ABA Labor & Employment Law Section's employment discrimination treatise, Lindemann & Grossman, Employment Discrimination Law, upcoming 4th Edition.

Prior to joining the Firm, Ms. Yang was a Senior Trial Attorney with the United States Department of Justice, Civil Rights Division, Employment Litigation Section, where she worked for five years on both pattern or practice and individual federal employment discrimination cases against state and local governments.  She litigated cases involving discrimination based on race, sex and national origin.  Before her work at the Department of Justice, Ms. Yang received a community service fellowship to work at the National Employment Law Project in New York City, a non-profit organization focusing on low-wage workers' rights.  While there, she worked on ground-breaking joint-employer liability litigation to hold garment manufacturers liable for unpaid wages owed to garment workers under the Fair Labor Standards Act.   After law school, Ms. Yang clerked for the Honorable Edmund Ludwig on the United States District Court for the Eastern District of Pennsylvania.   In 1992-1993, Ms. Yang worked on the Presidential Transition and at the White House, Office of Presidential Personnel.

Ms. Yang served as a National Co-Chair and Board Member of the National Asian Pacific American Women's Forum from 1998-2004.

Ms. Yang graduated from Cornell University (B.A., Government, *with distinction*, 1992) and New York University School of Law (J.D., *cum laude*, 1996) where she was a Root-Tilden Public Interest Scholar and a Note and Comment Editor of the Law Review.  From 2001-2003, she served as a government fellow for the American Bar Association, Labor and Employment Section, Equal Employment Opportunity Committee.

Ms. Yang is admitted to practice in the District of Columbia, New York and New Jersey.

EXHIBIT D

**GLANCY BINKOW & GOLDBERG LLP**
ATTORNEYS AT LAW

NEW YORK OFFICE

1501 BROADWAY SUITE 1900
NEW YORK, NY 10036
TELEPHONE (917) 510-0009
FACSIMILE (646) 366-0895

1801 AVENUE OF THE STARS, SUITE 311
LOS ANGELES, CALIFORNIA 90067

———

TELEPHONE (310) 201-9150
FACSIMILE (310) 201-9160
info@glancylaw.com

SAN FRANCICSO OFFICE

455 MARKET ST., SUITE 1810
SAN FRANCISCO, CA 94105
TELEPHONE (415) 972-8160
FACSIMILE (415) 972-8166

**FIRM RESUME**

Glancy Binkow & Goldberg LLP has represented investors and consumers in federal and state courts throughout the United States for sixteen years. Based in Los Angeles, California and with offices in New York, New York and San Francisco, California, Glancy Binkow & Goldberg has developed expertise prosecuting securities fraud, antitrust and complex commercial litigation. As Lead Counsel or as a member of Plaintiffs' Counsel Executive Committees, Glancy Binkow & Goldberg has recovered in excess of $1 billion for parties wronged by corporate fraud and malfeasance. The firm's efforts on behalf of individual investors have been the subject of articles in such publications as The Wall Street Journal, The New York Times and The Los Angeles Times.

Appointed as Lead or Co-Lead Counsel by federal judges throughout the United States, Glancy Binkow & Goldberg has achieved significant recoveries for class members, including:

In re Heritage Bond Litigation, USDC Central District of California, Case No. 02-ML-1475-DT, where as Co-Lead Counsel, Glancy Binkow & Goldberg recovered in excess of $28 million for defrauded investors and continues to pursue additional defendants.

In re ECI Telecom Ltd. Securities Litigation, USDC Eastern District of Virginia, Case No. 01-913-A, in which Glancy Binkow & Goldberg served as sole Lead Counsel and recovered almost $22 million for defrauded ECI investors.

Yaldo v. Airtouch Communications, State of Michigan, Wayne County, Case No. 99-909694-CP, in which Glancy Binkow & Goldberg served as Co-Lead Counsel and achieved a settlement valued at over $32 million for defrauded consumers.

In re Infonet Services Corporation Securities Litigation, USDC Central District of California, Case No. CV 01-10456 NM, in which as Co-Lead Counsel, Glancy Binkow & Goldberg achieved a settlement of $18 million.

In re Musicmaker.com Securities Litigation, USDC Central District of California, Case No. 00-02018, a securities fraud class action in which Glancy Binkow & Goldberg was sole Lead Counsel for the Class and recovered in excess of $13 million.

In re ESC Medical Systems, Ltd. Securities Litigation, USDC Southern District of New York, Case No. 98 Civ. 7530, a securities fraud class action in which Glancy Binkow & Goldberg served as sole Lead Counsel for the Class and achieved a settlement valued in excess of $17 million.

In re Lason, Inc. Securities Litigation, USDC Eastern District of Michigan, Case No. 99 76079, in which Glancy Binkow & Goldberg was Co-Lead Counsel and recovered almost $13 million for defrauded Lason stockholders.

In re Inso Corp. Securities Litigation, USDC District of Massachusetts, Case No. 99 10193, a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $12 million.

In re National TechTeam Securities Litigation USDC Eastern District of Michigan, Case No. 97-74587, a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $11 million.

In re Ramp Networks, Inc. Securities Litigation, USDC Northern District of California, Case No. C-00-3645 JCS, a securities fraud class action in which Glancy Binkow & Goldberg served as Co-Lead Counsel for the Class and achieved a settlement of nearly $7 million.

Glancy Binkow & Goldberg filed the initial landmark antitrust lawsuit against all of the major NASDAQ market makers and served on Plaintiffs' Counsel's Executive Committee in In re Nasdaq Market-Makers Antitrust Litigation, USDC Southern District of New York, Case No. 94 C 3996 (RWS), MDL Docket No. 1023, which recovered $900 million for investors in numerous heavily traded Nasdaq issues.

In addition, Glancy Binkow & Goldberg serves as Class Counsel in In re Real Estate Associates Limited Partnership Litigation, USDC Central District of California, Case No. 98-7035 DDP, in which plaintiffs' Counsel achieved a $184 million jury verdict after a complex six week trial in Los Angeles, California and later settled the case for $83 million.

The firm currently serves as Lead or Co-Lead Counsel in numerous securities fraud and consumer fraud actions throughout the United States, including, among others:

Shah v. Morgan Stanley Co.,
USDC Southern District of New York, Case No. 03 Civ. 8761 (RJH)

Lapin v. Goldman Sachs,
USDC Southern District of New York, Case No. 03-0850-KJD

In re Gilat Satellite Networks, Ltd. Securities Litigation,
USDC Eastern District of New York, Case No. 02-1510 CPS

In re Lumenis, Ltd. Securities Litigation,
USDC Southern District of New York, Case No.02-CV-1989 DAB

Taft v. Ackermans (KPNQwest Securities Litigation),
USDC Southern District of New York, Case No. 02-CV-07951

In re Amdocs Ltd. Securities Litigation,
USDC Eastern District of Missouri, Case No. 02CV950 HEA

In re Heritage Bond Litigation,
USDC Central District of California, Case No. 02-ML-1475-DT

Payne v. IT Group, Inc.,
USDC Western District of Pennsylvania, Case No. 02-1927

Oscar Private Equity Investments v. Holland (Allegiance Telecom Securities Litigation),
USDC Northern District of Texas, Case No. 3:-CV-2761-H

Winer Family Trust v. Queen (Pennexx Securities Litigation),
USDC Eastern District of Pennsylvania, Case No. 2:03-cv-04318 JP

In re ADC Telecommunications Inc. Securities Litigation,
USDC District of Minnesota, Case No. 03-1194 (JNE/JGL)

Ree v. Procom Technologies, Inc.,
USDC Southern District of New York, Case No. 02CV7613

Capri v. Comerica, Inc.,
USDC Eastern District of Michigan, Case No. 02CV60211 MOB

Porter v. Conseco, Inc.,
USDC Southern District of Indiana, Case No. 02-1332 SEB

In re Livent, Inc. Noteholders Litigation,
USDC Southern District of New York, Case No. 99 Civ 9425

Tatz v. Nanophase Technologies Corp.,
USDC Northern District of Illinois, Case No. 01C8440

Plumbing Solutions Inc. v. Plug Power, Inc.,
USDC Eastern District of New York, Case No. CV 00 5553 (ERK) (RML)

In re Simon Transportation Services, Inc. Securities Litigation,
USDC District of Utah, Case No. 2:98 CV 0863 K

  The firm has also recently acted as Class Counsel in obtaining substantial benefits for shareholders in a number of actions, including:

In re F & M Distributors Securities Litigation,
Eastern District of Michigan, Case No. 95 CV 71778 DT (Executive Committee Member) ($20.25 million settlement)

James F. Schofield v. McNeil Partners, L.P. Securities Litigation,
California Superior Court, County of Los Angeles, Case No. BC 133799

Resources High Equity Securities Litigation,
California Superior Court, County of Los Angeles, Case No. BC 080254

  The firm has served and currently serves as Class Counsel in a number of antitrust class actions, including:

In re Nasdaq Market-Makers Antitrust Litigation,
USDC Southern District of New York, Case No. 94 C 3996 (RWS), MDL Docket No. 1023

In re Brand Name Prescription Drug Antitrust Litigation,
USDC Northern District of Illinois, Eastern Division, Case No. 94 C 897

  Glancy Binkow & Goldberg LLP has been responsible for obtaining favorable appellate opinions which have broken new ground in the class action or securities fields or which have promoted shareholder rights in prosecuting these actions. Glancy Binkow & Goldberg successfully argued the appeals in Silber v. Mabon I, 957 F.2d 697 (9th Cir. 1992) and Silber v. Mabon II, 18 F.3d 1449 (9th Cir. 1994), which are the leading decisions in the Ninth Circuit regarding the rights of opt-outs in class action settlements. In Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000), Glancy Binkow & Goldberg won a seminal victory for investors before the Second Circuit Court of Appeals, which adopted a more favorable pleading standard for investors in reversing the District Court's dismissal of the investors' complaint. After this successful appeal, Glancy Binkow & Goldberg then recovered millions of dollars for defrauded investors of the GT Interactive Corporation. The firm also argued Falkowski v. Imation Corp., 309 F.3d 1123 (9th Cir. 2002), as amended, 320 F.3d 905

(9th Cir. 2003) and favorably obtained the substantial reversal of a lower court's dismissal of a cutting edge, complex class action brought to seek redress for a group of employees whose stock options were improperly forfeited by a giant corporation in the course of its sale of the subsidiary at which they worked. The revived action is currently proceeding in the California state court system.

The firm is also involved in the representation of individual investors in court proceedings throughout the United States and in arbitrations before the American Arbitration Association, National Association of Securities Dealers, New York Stock Exchange, and Pacific Stock Exchange. Mr. Glancy has successfully represented litigants in proceedings against such major securities firms and insurance companies as A.G. Edwards & Sons, Bear Stearns, Merrill Lynch & Co., Morgan Stanley, PaineWebber, Prudential, and Shearson Lehman Brothers.

One of firm's unique skills is the use of "group litigation" - the representation of groups of individuals who have been collectively victimized or defrauded by large institutions. This type of litigation brought on behalf of individuals who have been similarly damaged often provides an efficient and effective economic remedy that frequently has advantages over the class action or individual action devices. The firm has successfully achieved results for groups of individuals in cases against major corporations such as Metropolitan Life Insurance Company, and Occidental Petroleum Corporation.

Glancy Binkow & Goldberg LLP currently consists of the following attorneys:

## THE FIRM'S PARTNERS

**LIONEL Z. GLANCY**, a graduate of the University of Michigan Law School, is the founding partner of the firm. After serving as a law clerk for United States District Judge Howard McKibben, he began his career as an associate at Patterson Belknap Webb & Tyler LLP concentrating in securities litigation. Thereafter, he started a boutique law firm specializing in securities litigation, and other complex litigation, from the Plaintiff's perspective. Mr. Glancy has established a distinguished career in the field of securities litigation over the last fifteen years, appearing as lead counsel on behalf of aggrieved investors in securities class action cases throughout the country. He has appeared and argued before dozens of district courts and several appellate courts, and has recovered billions of dollars in settlement proceeds for large classes of shareholders. Well known in securities law, he has lectured on its developments and practice at CLE seminars and law schools.

**PETER A. BINKOW**, a partner in Glancy Binkow & Goldberg, was born in Detroit, Michigan on August 16, 1965. Mr. Binkow earned his degree in English Literature from the University of Michigan in 1988 and attended law school at the University of Southern California (J.D., 1994). Mr. Binkow joined the Law Offices of Lionel Z. Glancy upon graduation and became a partner in 2002.

Mr. Binkow has prosecuted lawsuits on behalf of consumers and investors in state and federal courts throughout the United States. He served as Lead or Co-Lead Counsel in many class action cases, including In re Heritage Bond Litigation ($28 million recovery), In re National Techteam Securities Litigation ($11 million recovery), In re Credit Acceptance Corporation Securities Litigation ($2.5 million recovery), In re Lason Inc. Securities Litigation ($12.68 million recovery), In re ESC Medical Systems, Ltd. Securities Litigation ($17 million recovery) In re GT Interactive Securities Litigation ($3 million recovery) and many others. Mr. Binkow has prepared and/or argued appeals before the Ninth Circuit, Sixth Circuit and Second Circuit Courts of Appeals.

Mr. Binkow is admitted to practice before the state of California, the United States District Courts for the Central, Northern and Southern Districts of California, the United States District Court for the Eastern District of Michigan and the Ninth Circuit Court of Appeals. He is a member of the Los Angeles County Bar Association and the American Bar Association.

**MICHAEL GOLDBERG**, a partner in Glancy Binkow & Goldberg, specializes in federal securities, federal and state antitrust, and consumer fraud class action lawsuits. He has successfully litigated numerous cases which resulted in multi-million dollar recoveries for investors, consumers and businesses.

Mr. Goldberg was born in New York on April 27, 1966. He earned his B.A. degree in 1989 from Pitzer College - The Claremont Colleges, and his J.D. degree in 1996 from Thomas M. Cooley Law School. After graduation from law school, Mr. Goldberg joined the Law Offices of Lionel Z. Glancy and became a partner of Glancy Binkow & Goldberg in 2003. He was admitted to both the California and Florida bars in 1997 and is admitted to practice in numerous courts.

**ROBIN BRONZAFT HOWALD**, a native of Brooklyn, New York, returned home in 2001 to open the firm's New York City office. Ms. Howald graduated *magna cum laude* from Barnard College in 1980, with a B.A. in psychology. In 1983, she received her J.D. from Stanford Law School, where she served as an Articles Editor for the Stanford Law Review. In addition to her current focus upon securities fraud and consumer class action matters, during her 20-year career Ms. Howald has handled cases in many different practice areas, including commercial disputes, professional malpractice, wrongful termination, bankruptcy, patent and construction matters. As outside counsel for the City of Torrance, California, she also handled a number of civil rights and land use matters, as well as a ground-breaking environmental action concerning Mobil Oil's Torrance refinery. Ms. Howald has experience in pre-trial and trial procedure and has successfully prosecuted post-trial motions and appeals.

Mrs. Howald is a member of the bar of both California (1983) and New York (1995), and is admitted to practice in all federal judicial districts in California, the Southern and Eastern Districts of New York, and the United States Supreme Court. She co-authored "Potential Tort Liability in Business Takeovers" (California Lawyer, September 1986), was a speaker and contributing author at the Eighth Annual Current Environmental and Natural Resources Issues Seminar at the University of Kentucky College of Law (April 1991), and served as a Judge Pro Tem for the Los Angeles County

Small Claims Court (1996-1997). Married in 1985, Mrs. Howald and her husband have two sons. An avid runner, Mrs. Howald has completed six marathons.

**SUSAN G. KUPFER**, the partner resident in the San Francisco office of Glancy Binkow & Goldberg, joined the firm in 2003. She is a native of New York City and received her A.B. degree from Mount Holyoke College in 1969 and her J.D. from Boston University School of Law in 1973. She did graduate work at Harvard Law School and, in 1977, was named Assistant Dean and Director of Clinical Programs at Harvard, supervising and teaching in that program of legal practice and related academic components.

For much of her legal career, she has been a professor of law. She has taught at Hastings College of the Law, Boston University School of Law, Golden Gate University School of Law and Northeastern University School of Law. Since 1991, she has been a lecturer on law at University of California, Berkeley, Boalt Hall, teaching Civil Procedure and Conflict of Laws. Her areas of academic expertise are Civil Procedure, Federal Courts, Conflict of Laws, Constitutional Law, Legal Ethics and Jurisprudence. Her publications include articles on federal civil rights litigation, legal ethics and jurisprudence. She has also taught various aspects of practical legal and ethical training, including trial advocacy, negotiation and legal ethics, to both law students and practicing attorneys.

She previously served as corporate counsel to The Architects Collaborative in Cambridge and San Francisco and was the executive director of the Massachusetts Commission on Judicial Conduct. She returned to the practice of law in San Francisco with Morgenstein & Jubelirer and Berman DeValerio Pease Tabacco Burt & Pucillo before joining Glancy Binkow & Goldberg. Her practice is concentrated in antitrust, securities and consumer complex litigation. She has been a member of the lead counsel team that achieved significant settlements in the following cases: In re Sorbates Antitrust Litigation ($96.5 million settlement), In re Pillar Point Partners Antitrust Litigation ($50 million settlement), In re Critical Path Securities Litigation ($17.5 million settlement), In re New Era of Networks II Securities Litigation ($5 million settlement).

She is a member of the Massachusetts and California State Bars and the United States District Courts for the Northern, Central and Southern districts of California, the District of Massachusetts, the First and Ninth Circuits Courts of Appeal and the U.S. Supreme Court.

## OF COUNSEL

**NEAL A. DUBLINSKY** was born in Flushing, New York on January 15, 1963. He earned his undergraduate degree from Yeshiva University in 1984, graduating *summa cum laude*, (highest-ranking graduate of his class) and was the recipient of the Dean Isaac Bacon Award for Excellence in the Humanities. Mr. Dublinsky earned his J.D. from New York University School of Law in 1987 where he participated in the Consumer Protection Clinical Program under renowned Professor Anthony G. Amsterdam. Mr. Dublinsky was admitted to the state bar of California in 1988.

Mr. Dublinsky played a strong part in the Firm's successful resolution of the aforementioned matters of In re ESC Medical Systems, Ltd. Securities Litigation, USDC Southern District of New York, Case No. 98 Civ. 7530 and In re Lason, Inc. Securities Litigation, USDC Eastern District of Michigan, Case No. 99 76079. The published opinions in which Mr. Dublinsky has played a primary role include:  City of Sterling Heights Police and Fire Retirement System v. Abbey Nat., PLC, --- F.Supp.2d ----, 2006 WL 846261 (S.D.N.Y., Mar 31, 2006) (NO. 05 CIV. 2141 (DC)); Falkowski v. Imation Corp., 309 F.3d 1123 (9th Cir. 2002), as amended,  320 F.3d 905 (9th Cir. 2003); Falkowski v. Imation Corp., 132 Cal.App.4th 499, 33 Cal.Rptr.3d 724 (Cal.App. 2005), reh. den. (Sep 27, 2005), rev. den. (Nov 30, 2005), and; Mirpuri v. ACT Mfg., Inc., 212 F.3d 624 (1st Cir. 2000).  In addition, he played a primary role in Caprin v. Simon Transportation Services, Inc., 99 Fed.Appx. 150 (not selected for publication), 2004 WL 326995 (10th Cir. 2004).  He also was an important participant in Rothman v. Gregor, 220 F.3d 81 (2nd Cir. 2000) and Shah v. Meeker, 435 F.3d 244 (2nd Cir. 2006).

**KEVIN F. RUF** was born in Wilmington, Delaware on December 7, 1961.  Mr. Ruf graduated from the University of California at Berkeley in 1984 with a B.A. in Economics and earned his J.D. from the University of Michigan in 1987.  Mr. Ruf was admitted to the State Bar of California in 1988. Mr. Ruf was an associate at the Los Angeles firm Manatt Phelps and Phillips from 1988 until 1992, where he specialized in commercial litigation.  He was of counsel to the Los Angeles firm Corbin & Fitzgerald from 1993 until 2001 where he specialized in white collar criminal defense work, including matters related to National Medical Enterprises, Cynergy Film Productions and the Estate of Doris Duke.  Mr. Ruf has extensive trial experience, including jury trials, and considers his courtroom skills to be his strongest asset as a litigator.  In his spare time, Mr. Ruf is an actor and comic.  He is a full member of the world-famous Groundlings Theatre and has appeared in a number of television shows and films, including "Seinfeld," "Friends," "Spin City," and "Curb Your Enthusiasm."

**ROBERT A. ZABB** attended Yale University and Columbia Law School, and received his B.A. in 1975 and his J.D. in 1979.  Mr. Zabb is admitted to practice in California, New York and Massachusetts, in state and federal courts in those jurisdictions.  His practice has consisted of general business litigation with a specialization in federal securities litigation on the plaintiff and defense sides.  He has practiced actively in the United States District Courts for the Southern and Eastern Districts of New York, which are important centers for securities litigation.  Mr. Zabb's accomplishments are reflected in numerous reported case decisions, particularly in the cases known as SEC v. Thrasher (Southern District of New York) and In re MTC Securities Litigation (Eastern District of New York).  Mr. Zabb has had the privilege of arguing a case before the U.S. Supreme Court.  This was a securities case delineating the permissible scope of a private right of action, and is known as Employers Insurance of Wausau v. Musick, Peeler and Garrett.

**SYLVIE KULKIN KERN** has been a commercial litigator for twenty years.  She began her legal career as a law clerk to Justice John Holmdahl of the California Court of Appeal, First District, and then practiced law in San Francisco at Severson, Werson, Berke & Melchior (1985-1988); Brobeck Phleger & Harrison (1988-1993); and Morrison & Foerster LLP (1995-2004), where she was of

counsel on the firm's securities litigation team. She joined Glancy Binkow & Goldberg LLP in 2005. In addition to her work in the securities field and her current focus on antitrust litigation, Ms. Kern has handled numerous complex commercial cases in state and federal court in the transportation, insurance, banking, real estate, and telecommunications industries, at both the law and motion and appellate stages. Born and raised in Nice, France, Ms. Kern moved to Los Angeles with her family in 1962. She graduated from the University of California at Los Angeles, *magna cum laude* and Phi Beta Kappa, in 1973, with dual degrees in French and Political Science. She obtained her master's degree from the Johns Hopkins School of Advanced International Studies in 1975, and a law degree from Hastings College of the Law, where she served on the Hastings International and Comparative Law Review, in 1983. Prior to attending law school, Ms. Kern served as a Foreign Service officer with the United States Agency for International Development, managing foreign aid programs in El Salvador and Haiti. She speaks French, Spanish and Italian, and has lived or traveled in over thirty countries.

**MICHAEL B. ACKERMAN** was born in Brooklyn, New York on June 30, 1962. He received his Bachelor of Arts from Columbia University in 1984 and attended Fordham University Law School (J.D. 1987). Mr. Ackeman was admitted to the New York bar in 1989 and the California bar in 1990. Mr. Ackerman is a member of the American Bar Association, the Los Angeles County Bar Association and the Association of the Bar of the City of New York.

**BRADLEY J. HILLIS** graduated from the University of Washington School of Law (J.D., 1988), where he was a member of Moot Court Honor Board. He received a B.A. from The Colorado College and M.A. in history from the University of Washington. Mr. Hillis is a member of the bars of New York, Massachusetts and Washington State, the U.S. District Courts for the Western District of Washington and Massachusetts, and the U.S. Courts of Appeal for the First and Ninth Circuits. He is the author of "Electronic Court Filing and the Internet," (The Journal of Appellate Practice and Process, volume 2:2, Winter 2000). He has previously worked as a deputy prosecuting attorney for the King County Prosecutor's Office, in Seattle, Washington, and was a member of the Advisory Board of Findlaw.com.

**ILANA KOHN** was born in Encino, California, on October 7, 1967. She earned her undergraduate degree from Mills College in 1993, with honors, and her J.D. from the University of San Francisco School of Law in 1999, with honors. Ms. Kohn was admitted to the State Bar of California in 1999, and is admitted to practice before the Northern, Central and Eastern Districts of California. Ms. Kohn specializes in class actions on behalf of defrauded investors and consumers. Prior to her class action work, Ms. Kohn was an associate in the San Francisco office of Schnader Harrison Segal and Lewis, where she specialized in commercial litigation. Since joining the firm in 2003, Ms. Kohn has been involved in the prosecution of the Initial Public Offering Securities Litigation pending in the United States District Court for the Southern District of New York, a coordinated proceeding of over 300 class action lawsuits based on market manipulation in initial public offerings during the high technology boom of the late 90s.

## ASSOCIATES

**MARC L. GODINO** has extensive experience successfully litigating complex, class action lawsuits as a plaintiffs' lawyer. Mr. Godino has played a primary role in cases resulting in settlements of more than $100 million. He has prosecuted securities, derivative, ERISA, and consumer cases throughout the country in both State and Federal court as well as represented defrauded investors at NASD arbitrations.

While an associate with Stull Stull & Brody, Mr. Godino was one of the two primary attorneys involved in Small v. Fritz Co., 30 Cal. 4th 167 (April 7, 2003) in which the California Supreme Court created new law in the state of California for shareholders that held shares in detrimental reliance on false statements made by corporate officers. The decision was widely covered by national media including The National Law Journal, Los Angeles Times, New York Times, and the New York Law Journal, among others and was heralded as a significant victory for shareholders.

Other published decisions include: In re 2TheMart.com Securities Litigation, 114 F.Supp 2d 955 (C.D.Cal. 2002); In re Irvine Sensors Securities Litigation, 2003 U.S. Dist. LEXIS 18397 (C.D.Cal. 2003); Brown v. Computerized Thermal Imaging Inc., 2002 WL 31109563 (D.Or. 2002).

Mr. Godino received his undergraduate degree from Susquehanna University with a bachelor of science degree in Business Management. He received his J.D. from Whittier Law School in 1995.

Mr. Godino is admitted to practice before the state of California, the United States District Courts for the Central, Northern and Southern Districts of California, the District of Colorado, and the Ninth Circuit Court of Appeals.

**DALE MacDIARMID** is a native of Los Angeles, California. He holds a B.A. in Journalism (with Distinction) from the University of Hawaii, and a J.D. from Southwestern University School of Law, where he was member of the Board of Governors of the Interscholastic Trial Advocacy Honors Program. He is admitted to practice in California and before the United States District Courts for the Southern, Central and Northern Districts of California. Dale is a member of Kappa Tau Alpha, the national journalism honor society, and before joining Glancy Binkow & Goldberg he was a writer and editor for newspapers and magazines in Honolulu and Los Angeles.

**AVRAHAM (AVI) NOAM WAGNER** joined Glancy Binkow & Goldberg LLP in 2003 after graduating from Georgetown University Law Center. During law school he gained valuable experience prosecuting securities cases while working at the United States Securities and Exchange Commission in Washington, D.C. Mr. Wagner is conversant in both Italian and Hebrew.

**KARA M. WOLKE** graduated summa cum laude with a B.S.B.A. in Economics from The Ohio State University in 2001. Kara earned her J.D. (with honors) from Ohio State in May, 2005, where she was active in Moot Court and received the Dean's Award for Excellence for each of her three years. In 2005, she was a finalist in a national writing competition co-sponsored by the American Bar Association and the Grammy® Foundation. (7 Vand. J. Ent. L. & Prac. 411). Kara joined Glancy Binkow & Goldberg in the fall of 2005 and was admitted to the State Bar of California in January, 2006.

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DANA ROSS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM L. WALTON, PENNI F. ROLL, JOAN M. SWEENEY, and ALLIED CAPITAL CORPORATION,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 1:07-cv-00402-EGS |

Having considered the papers filed in support of the Motion of the Individual Investors Group ("Movant") for Appointment as Lead Plaintiff and Approval of Choice of Lead Counsel, pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 as amended by the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(3)(B), and for good cause shown, the Court hereby enters the following Order.

## I.    APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL

1.    David Gonzales, Jagdish Parzhk and Abe Wiener (collectively, the "Individual Investors Group") has moved the Court to be appointed Lead Plaintiff in this class action and to approve the counsel retained to be Lead Counsel.

2.    Having considered the provisions of § 21D(a)(3)(B) of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B), the Court hereby determines that the Individual Investors Group is the most adequate plaintiff and satisfies the requirements of the PSLRA. The Court hereby appoints the Individual Investors Group as Lead Plaintiff to represent the interests of the class in this Action.

3.    Pursuant to § 21D(a)(3)(B)(v) of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(v), the Individual Investors Group has selected and retained the law firms of Cohen, Milstein, Hausfeld & Toll, P.L.L.C. and Glancy Binkow & Goldberg LLP to serve as Co-Lead Counsel. The Court approves Movant's selection of Co-Lead Counsel for this Action.

4.    Co-Lead Counsel shall have the following responsibilities and duties, to be carried out either personally or through counsel whom Lead Counsel shall designate:

a.    to coordinate the briefing and argument of any and all motions;

b.    to coordinate the conduct of any and all discovery proceedings;

c.    to coordinate the examination of any and all witnesses in depositions;

d.    to coordinate the selection of counsel to act as spokesperson at all pretrial conferences;

e.    to call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time;

f.    to coordinate all settlement negotiations with counsel for defendants;

g.    to coordinate and direct the pretrial discovery proceedings and the preparation for trial and the trial of this matter and to delegate work responsibilities to selected counsel as may be required;

h.    to coordinate the preparation and filings of all pleadings; and

i.    to supervise all other matters concerning the prosecution or resolution of the Action.

5.    No motion, discovery request, or other pretrial proceedings shall be initiated or filed by any plaintiffs without the approval of Co-Lead Counsel, so as to prevent duplicative

pleadings or discovery by plaintiffs. No settlement negotiations shall be conducted without the approval of Co-Lead Counsel.

6.    Co-Lead Counsel shall have the responsibility of receiving and disseminating Court orders and notices.

7.    Co-Lead Counsel shall be the contact between plaintiffs' counsel and defendants' counsel, as well as the spokespersons for all plaintiffs' counsel, and shall direct and coordinate the activities of plaintiffs' counsel. Co-Lead Counsel shall be the contact between the Court and plaintiffs and their counsel.

8.    All counsel for plaintiffs in the Action shall submit to Co-Lead Counsel detailed time reports reflecting the hours of work expended by each attorney, their billing rate, and the subject matter of the work. Time reports shall be submitted on a quarterly basis with the first report due no later than one month following entry of this Order, and shall continue for each subsequent quarter thereafter or on such schedule as Co-Lead Counsel shall determine. Any failure to timely submit such reports to Co-Lead Counsel may result in the disqualification of such unreported time from being reimbursed from any common fund which may be created in the Action.

9.    Defendants shall effect service of papers on plaintiffs by serving copies on Co-Lead Counsel by overnight delivery service, telecopy, or hand delivery. Plaintiffs shall effect service of papers on defendants by serving copies on each of their counsel by overnight delivery service, telecopy, or hand delivery.

10.    Each attorney not a member of the Bar of this Court who is acting as counsel for a plaintiff or defendant herein shall be deemed admitted *pro hac vice* to practice before this Court in connection with these proceedings.

## II.    NEWLY-FILED OR TRANSFERRED ACTIONS

11.    When a case that arises out of the subject matter of this action is hereinafter filed in this Court or transferred from another Court, the Clerk of this Court shall:

    a.    file a copy of this Order in the separate file for such action;

    b.    mail a copy of this Order to the attorneys for the plaintiff(s) in the newly filed or transferred case and to any new defendant(s) in the newly filed or transferred case; and

    c.    make the appropriate entry in the docket for this action.

12.    Each new case which arises out of the subject matter of this Action that is filed in this Court or transferred to this Court shall be consolidated with this Action and this Order shall apply thereto, unless a party objecting to this Order or any provision of this Order shall, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, file an application for relief from this Order or any provision herein and this Court deems it appropriate to grant such application.

## III.    PRESERVATION OF RELEVANT DOCUMENTS

13.    During the pendency of this litigation, or until further order of this Court, the parties shall take reasonable steps to preserve all documents within their possession, custody or control, including computer-generated and stored information and materials such as computerized data and electronic mail, containing information that is relevant to or which may lead to the discovery of information relevant to the subject matter of the pending litigation.

IT IS SO ORDERED.

DATED: This _____ day of _____, 2007

_____
UNITED STATES DISTRICT JUDGE