**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DANA ROSS, Individually and on Behalf of Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM L. WALTON, PENNY F.ROLL, JOAN M. SWEENEY, and ALLIED CAPITAL CORPORATION.<br><br>Defendants | ) | Civil Action No. 1:07-CV-00402<br><br>**MEMORANDUM OPINION AND ORDER** |

**Introduction**

Presently before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. Defendants argue the Complaint ought to be dismissed under Federal Rules of Civil Procedure 12(b)(6) and 9(b) on the following four grounds: (1) Plaintiffs fail to plead particularized facts to show that any defendant misstated or omitted a material fact; (2) even assuming a material misstatement or omission had been pled, Plaintiffs have not satisfied their burden under the Private Securities Litigation Reform Act (PSLRA) 15 U.S.C. § 78u-4(b)(1) to plead particularized facts that defendants acted with *scienter,* or an intent to deceive; (3) Plaintiffs

fail to show real economic damages or loss causation; and (4) Plaintiffs cannot establish secondary liability because they have not pled that any individual defendant was either a "control person" or a "culpable participant" in a securities fraud context.

On April 24, 2009, the Court held a hearing on the matter and is prepared to rule on Defendants' Motion.

**Factual Background**

This case presents a class action lawsuit on behalf of purchasers of the common stock of Allied Capital Corporation (Allied) between November 7, 2005 and January 22, 2007, inclusive (the "Class Period"). Plaintiffs request remedies under the Securities Exchange Act of 1934 (the "SEA") within the scope of the PSLRA.

Allied is a business development corporation with headquarters located in Washington, D.C. Amended Class Action Complaint (Complt.) ¶ 2. Defendants William L. Walton, Penni F. Roll and Joan M. Sweeney are or were officers and/or directors of Allied. Complt ¶ 17. Allied manages and participates in the operation of certain "portfolio companies" which include unconsolidated subsidiaries. Id. at 2. Allied finances the portfolio companies through debt financing in the form of senior loans, second lien debt, and subordinated debt. Id.

One such portfolio company is Business Loan Express ("BLX"), which deals in small business loans guaranteed under the U.S. Small Business Administration's (SBA) Section 7(a) Guaranteed Loan Program. Id. at ¶ 3. BLX and its predecessors were largely owned by Allied since on or about the year 2000. Id. Patrick J. Harrington ("Harrington") was the Executive Vice President of BLX's Troy, Michigan branch office from January 1, 2000 until September 8, 2006. On January 9, 2007, an indictment against Harrington was unsealed in Federal District

Court in Detroit, Michigan (the "Harrington Indictment"). Id. ¶ 10. The Harrington Indictment concerned at least 76 fraudulently originated SBA guaranteed loans with a value of approximately $76,869,200. Id. ¶ 11. On January 11, 2007, Allied issued a press release concerning the Harrington Indictment. Consequently, Plaintiffs allege, the Company's stock price fell closing at $29.40, falling more than $2.00 per share from its previous day's close of $31.58 per share. Id. ¶ 13. The stock was traded more than 5 million shares, ten times its average daily trading volume of approximately 500,000 shares. Id.

Plaintiffs allege that throughout the Class Period, Defendants knowingly or recklessly failed to disclose that Allied's financial condition was inflated, because a substantial amount of the income reported by BLX was from fraudulently procured SBA backed Section 7(a) loans. Id. at ¶ 4. Further, Plaintiffs claim that Defendants misrepresented the nature and scope of the government investigations of both Allied and BLX, by failing to disclose U.S. Attorney's and SBA Office of Inspector General's ("SBA-OIG") investigations in the Eastern District of Michigan concerning the lending activities of BLX's Troy, Michigan office.

Essentially, Plaintiffs allege that Defendants knew of, or were reckless in not knowing, the fraudulent loan origination practices at BLX through the following: (1) discovery demands made by the U.S. Attorney's Office not later than December, 2004; (2) letters provided to Allied's board not later than March 11, 2005 by an investment firm; (3) government interviews and testimony provided by Allied and BLX employees, including grand jury testimony by a BLX principal in October of 2005; and (4) Defendants' managerial involvement in BLX. Id. ¶ 5. Plaintiffs argue that Allied set forth optimistic and inflated projections (misstatements) despite the fact that they were the result of fraudulent loan practices at BLX.

Subsequent to filing Defendants' Motion to Dismiss, Harrington pled guilty in U.S. District Court for the Eastern District of Michigan to a two count superceding indictment for conspiracy to defraud the United States and making false declarations to a grand jury. *See* Defendants' Notice of Supplemental Authority p.2 [Doc. No. 35], United States v. Harrington, 06-cr-20662 (E.D. Mich. 2008). In a sentencing memorandum, Harrington's attorney represents that the Government sought to implicate the senior managers at BLX, by way of Harrington, suggesting a possible significant reduction in his sentence. Id. (Exhibit 2). However, Harrington could provide no assistance to the Government. In support, Harrington provided a privately administered polygraph examination which indicated he was telling the truth that no one above him at BLX knew or was involved in his fraudulent activities. Id. Ultimately, Harrington was sentenced to 120 months in prison and ordered to pay $30 million in restitution to BLX. Id. (Exhibit 3, Court's Sentencing Memorandum).

**Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if plaintiffs fail "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the standard of pleading that plaintiffs must meet in order to survive a motion to dismiss under Rule 12(b)(6). The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]' " Id. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Aktieselskabet AF 21 v. Fame Jeans Inc., 525 F.3d 8, 15 (D.C.Cir.2008). Although "detailed factual allegations" are not necessary to

withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," plaintiffs must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court stated that there was no "probability requirement at the pleading stage," Bell Atlantic Corp. v. Twombly, 550 U.S. at 556, but "something beyond ... mere possibility ... must be alleged[ .]" Id. at 557-58. The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," id. at 555, or must be sufficient "to state a claim for relief that is plausible on its face." Id. at 570. The Court referred to this newly clarified standard as "the plausibility standard." Id. at 560 (abandoning the "no set of facts" language from Conley v. Gibson). According to the D.C. Circuit, Twombly "leaves the long-standing fundamentals of notice pleading intact." Aktieselskabet AF 21 v. Fame Jeans Inc., 525 F.3d at 15.

Nevertheless, the Court need not accept inferences drawn by plaintiffs if those inferences are unsupported by facts alleged in the complaint; nor must the Court accept plaintiffs' legal conclusions. *See* Browning v. Clinton, 292 F.3d 235, 242 (D.C.Cir.2002).

**Heightened Pleading Requirements under the PLSA.**

Historically, "[t]o state a claim for securities fraud under Rule 10b-5, a plaintiff must allege that the defendant knowingly or recklessly made a false or misleading statement of material fact in connection with the purchase or sale of a security, upon which plaintiff reasonably relied, ... proximately causing his injury." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir 1994). Congress enacted the Private Securities Litigation Reform Act of 1995 (PSLRA), as a check against abusive litigation by private parties. Under the PSLRA, Congress

requires exacting heightened standards of pleading for security fraud cases. The PLSRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention "to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194, and n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *see* 15 U.S.C. § 78u-4(b)(1),(2). The PSLRA's heightened pleading instructions require that any private securities complaint alleging that the defendant made a false or misleading statement: (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1); and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," § 78u-4(b)(2). Plaintiffs must also allege facts sufficient to show that the defendants had knowledge that the statements were false at the time they were made. *See* Jacobs v. Coopers & Lybrand, L.L.P., No. 97 CIV 3374(RPP), 1999 WL 101772, at *16-17 (S.D.N.Y. Mar. 1, 1999).

## Discussion

### A. Material Misstatement

Defendants first argue that Plaintiffs fail to plead a misstatement or omission with particularity as required by Fed.R.Civ. P. 9(b). Because a claim under § 10(b) involves fraud, Fed.R.Civ.P. 9(b) requires plaintiffs to plead "the circumstances constituting fraud" with particularity. To satisfy this requirement, plaintiffs must "state the time, place, and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." Kowal, 16 F.3d at 1278 (citation omitted)[1].

---

[1] Plaintiff's claim is based largely on alleged false or misleading statements and certifications made by Allied. Generally, projections and statements of optimism are false and misleading for the purposes of the securities laws if they were issued without good faith or

Basically, Plaintiffs' 114 page complaint recites nearly every public statement or Sarbanes- Oxely certification made by Allied and concludes that each statement was, "knowingly or recklessly false or misleading" because of the fraudulent loan activities of BLX. However, Defendants argue, Plaintiffs fail to set forth or allege that Allied knew those representations to be false *at the time they were made*. In turn, Plaintiffs allege that in view of a variety of "red flags" discussed below, Allied "must have known" the statements were misleading. Because any material misstatement must have been made with some degree of knowledge, the issues concerning a misstatement and scienter are intertwined.

**B. Scienter**

To survive a motion to dismiss a plaintiff must plead facts which give rise to a strong inference of scienter. *See* Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2509 (2007). The Supreme Court defines "scienter" as "a mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 & n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). In Tellabs, the Supreme Court defined "strong inference" explaining that a securities fraud complaint will survive a motion to dismiss under Rule 12(b)(6), "only if a reasonable person would deem the inference of scienter cogent and *at least as compelling* as any opposing inference one could draw from the facts alleged." 127 S.Ct. at 2510 (emphasis supplied). Thus, a court examining a complaint's scienter allegations under the PSLRA must

---

lacked a reasonable basis when made. *See* In re Trump Casino Sec. Litig., 7 F.3d 357, at 371 (3d Cir.1993); Roots Partnership v. Land's End, Inc., 965 F.2d 1411, 1417 (7th Cir.1992); Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1040 (6th Cir.1991); *See also* In re Apple Computer Sec. Litig., 886 F.2d 1109, 1113 (9th Cir.1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990).

"consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Id. at 2509. The court must determine whether " all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Id. Finally, when "determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." Id. The foregoing, "inquiry is inherently comparative." Id. at 2510. The court, "must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." Zucco Partners, LLC v. Digimarc Corp. 552 F.3d 981, 991 (9th Cir. 2009)( *citing* Tellabs 127 S.Ct at 2510).

Because there can be no misleading statement or scienter absent Defendants' knowledge of the Harrington Fraud, the question turns on Defendants' knowledge of the fraudulent lending activities at BLX at the time the statements were made. Plaintiffs argue that Allied had a duty to disclose the facts underlying the fraud at BLX and the source and nature of revenues obtained from BLX. *See* Memorandum in Opposition to Motion to Dismiss (Opp. Mem.) at 8. Essentially, Plaintiffs claim that Allied was required to disclose more than it did about BLX which consequently had a financial impact on the company. Plaintiffs come to the conclusion that Allied and the individual Defendants knew or must have known of the fraud at BLX at the time the statements were made. Defendants hotly contest this fact.

The question becomes intertwined with the issue of whether Plaintiffs adequately pled

scienter within the heightened particularity requirement of the PLSRA. Plaintiffs argue that a strong inference of scienter can arise where the complaint sufficiently alleges that Defendants had a duty to investigate wrongdoing but failed to do so. *See* Belizan v. Hershon, 495 F.3d 686, 692 (D.C. Cir. 2007). Defendants made several SEC disclosures regarding the government investigations of BLX and legal expenses incurred. However, Plaintiffs claim the disclosures were inaccurate because Allied withheld the underlying facts surrounding the fraudulent loan originations. Further, Plaintiffs argue that they pled sufficient "red flags" and motive on the part of Defendants to produce a "strong inference of scienter." Specifically, Plaintiffs have alleged the following "red flags" in their Amended Complaint;

> (1) Allied was named as a defendant (initially as well as ultimately) in several lawsuits which included allegations of fraudulent loan practices, ¶¶ 286-291;
>
> (2) Allied was named as a defendant in an earlier securities class action containing allegations of improper valuation of its portfolio company [BLX], which was later validated by conclusions drawn following the SEC's investigation, ¶¶ 272-276;
>
> (3) Defendants received letters from Greenlight Capital placing the Board on notice of fraudulent activities, ¶¶ 284, 285, 292;
>
> (4) Defendants were made aware of numerous governmental investigations, which involved the production of "millions of pages" of documents by Allied, numerous interviews and depositions of current and former employees, and legal fees in excess of $30 million all related to business practices at BLX, ¶¶ 280-283, 293, 294.

*See* Opp. Mem., p. 37[2].

---

[2]Plaintiffs also claim that violations of Generally Accepted Accounting Principles (GAAP) also give rise to a strong inference of scienter. However, violations of GAAP, standing alone, are insufficient to support § 10(b) cause of action. Securities Exchange Act of 1934, § 10(b), as amended, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5.

Defendants counter that the above "red flags" do not show that Defendants knew of the Harrington Fraud *at the time* the events transpired. Defendants argue that all of these facts were publically known and if they indicated an ongoing fraud at BLX, then presumably the market would be aware of them as well. A specific allegation of fraud involves a 2005 letter from a Mr. Einhorn of Greenlight Capital, a hedge fund. Defendants point out that while the letter concerns BLX it does not specifically implicate Harrington or the Detroit Office[3]. In addition, Einhorn did not respond to an invitation to provide support for the allegations. Further, Defendants dismiss any of his allegations because Einhorn was a short seller of Allied stock with a motive to drive down the share price[4]. Defendants state that the other red flags cited by Plaintiffs simply do nothing to place them on notice of the Harrington fraud.

The record before the Court demonstrates no compelling evidence that Allied or the individual defendants knew or "must have known" about Harrington's fraud. Generally, a vague assertion that a defendant must have known about the fraud by virtue a position of authority does not result in a strong inference of scienter. *See* Orton v. Parametric Tech. Corp., 344 F.Supp.2d 290, 307 (D.Mass.2004); Carney v. Cambridge Tech. Partners, Inc., 135 F.Supp.2d 235, 255

[3] Defendants note that BLX is one of 140 portfolio companies in which Allied invests with 53 offices nationwide and approximately 300 employees.

[4] Defendants provide notice of supplemental authority regarding a case cited in the First Amended Complaint, claiming Plaintiffs relied upon allegations made in a federal False Claims Act suit, United States ex rel. Brickman & Greenlight Capital v. BLX, LLC, No. 1:05 CV 3147 (JEC) (the "Brickman Action"), brought by two short-sellers of Allied stock. Defendants point out that on December 18, 2007, Judge Carnes, noted that the plaintiffs were short-sellers of Allied, and that they had simply aggregated and republished already-public information, which is insufficient to confer jurisdiction under the FCA, and dismissed the Complaint with prejudice. The case was dismissed on jurisdiction issues and did not resolve the factual disputes.

(D.Mass.2001). Additionally, a § 10(b) case cannot be sufficiently supported by facts which constitute mere negligence. *See* Leasco Corp. v. Taussig, 473 F.2d 777, 785 (2d Cir.1972).

The Court agrees with Defendants that Harrington had every motivation to implicate his superiors in BLX and yet failed to do so. The sentencing court ordered Harrington to pay restitution to BLX in the amount of $30 million. Certainly this judicial determination would not have been made had BLX acted with knowledge of the fraud. Instead, BLX was determined to be the primary victim of Harrington's fraud. The Supreme Court held that the "strong inference" of scienter required for a § 10(b) claim "must be more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs 127 S.Ct. at 2504-05. The foregoing judicial determinations create a plausible opposing inference that Defendants had no knowledge of the Harrington fraud. In other words, because BLX was significantly damaged by the Harrington fraud a compelling inference arises that it had no knowledge of such fraud. Additionally, Plaintiffs' nonspecific "red flags" neither rebut the inference that Harrington acted alone nor affirmatively demonstrate knowledge on the part of Allied of the Harrington Fraud at the time it occurred[5]. None of the red flags proffered by Plaintiffs contain facts which demonstrate Defendants were aware of the Harrington Fraud prior to the unsealing of the indictment on January 9, 2007. The Court finds the "red flags" set forth by Plaintiffs raise neither a cogent nor compelling inference of scienter.

Consequently, considering all the facts in the Complaint as true, Plaintiffs fail to, "state with particularity facts giving rise to a *strong* inference that the defendant acted with the required

---

[5] At the hearing Plaintiffs were largely silent on the argument advanced by Defendants that Harrington's superiors had no knowledge of his fraudulent activities at BLX.

state of mind." Id. at 2501 (*quoting* 15 U.S.C. § 78u-4(b)(2) (emphasis supplied)).

**C. Loss Causation**

Even assuming Plaintiffs met the particularity requirements with respect to scienter, their Complaint is equally flawed on the issue of loss causation. The Supreme Court's decision in Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) mandates that a plaintiff must also plead economic loss and " 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss.[6]" Id. at 1631. In so doing, Plaintiffs must prove that they have, "suffered actual economic loss." Id. At 336.

Defendants argue that Plaintiffs did not satisfy the pleading requirements for loss causation. Specifically, they argue Plaintiffs cannot demonstrate loss causation because (1) they received only "paper losses" normal in the markets, and (2) there was never a "curative disclosure" which caused a subsequent decline in the price of Allied's stock[7]. Def. Mem. at 52-57.

Plaintiffs disagree and argue that they do not need to sell their shares to adequately plead loss causation, only that they need to demonstrate that the shares went down when the fraud was exposed or the truth was exposed by a series of partial disclosures resulting in a subsequent price

---

[6]The Supreme Court in Dura Pharmaceuticals rejected the Ninth Circuit's legal conclusion that, in order to establish loss and causation, a plaintiff need only prove that "the price on the date of purchase [of the securities at issue] was inflated because of the misrepresentation." 125 S.Ct. at 1631 (quotation omitted). Specifically, the Court noted that "as a matter of pure logic" an artificially inflated purchase price is not by itself an economic loss at the moment of the transaction as the immediate value of the security is equivalent to the inflated purchase price. Id.

[7] Generally, courts may take judicial notice of publicized stock prices without converting a motion to dismiss into summary judgment. *See* Ganino v. Citizens Utils. Co., 228 F.3d 154, 167 n. 8 (2d Cir.2000) .

drop that was causally connected to the truth reaching the market.

Plaintiffs note that on January 11, 2007, two days after the indictment was unsealed, Allied issued a press release disclosing the Harrington Indictment. ¶¶ 10, 192. Plaintiffs argue that as a consequence, Allied's stock price reacted to this news. "On January 10, the stock opened at $33.00 per share and closed at $31.58 per share." *See* Op. Memo p. 48. "On January 11, the stock opened at $27.79 per share. Id. The price rose slightly later in the day, following Allied's press release, but in the ninety days that followed, it never again closed at a price above $32.00, and remained at an average trading price of $29.40. Id. Thus, "disclosure of Harrington's indictment and its impact on the Company – facts which were not previously disclosed to investors – indisputably caused the share price to decline and Plaintiffs to suffer their loss." (Emphasis Supplied) Id.

Plaintiffs Rely on In re Royal Dutch/Shell Transp. Sec. Litig., 404 F. Supp.2d 605, 608 (D.N.J. 2005) as rejecting the argument that plaintiffs who hold stock rather than sell it cannot demonstrate loss causation. Plaintiffs point out that Section 21D(e)(1) of the PSLRA provides that a private plaintiff's damages for securities fraud are limited to the difference between the purchase price paid for the security and the mean trading price of the security during the 90-day period following disclosure of the fraud. Therefore, Plaintiffs argue, there is no "sell to sue" rule.

Defendants apparently concede this point and argue that regardless of whether Plaintiffs held their stock, it was trading at a profit to the Plaintiffs one month before the Amended Complaint was filed. Therefore, Defendants argue, if the current value was commensurate with the purchase price, there can be no loss. In support, Defendants cite Malin v. XL Capital Ltd.

2005 WL 2146089 (D.Conn.,2005), (Not Reported in F.Supp.2d, ) (holding that , "a price fluctuation without any realization of an economic loss is functionally equivalent to the Supreme Court's rejection of an artificially inflated purchase price alone as economic loss. If the current value is commensurate to the purchase prices, there is no loss, regardless of whether the purchase price was artificially inflated."); In re Estee Lauder Companies, Not Reported in F.Supp.2d, 2007 WL 1522620, N. 5 (S.D.N.Y.,2007) ("economic loss is sustained simply as a result of the fact that the price of the stock dropped following disclosure is unpersuasive.").

Defendants argue that Plaintiffs cannot show that the alleged corrective disclosure (press release of Harrington Indictment) caused a negative market reaction. To this end, they demonstrate that after the January 11, 2007 press release, at around 11:00 am the stock enjoyed a daily gain. Also, Defendants dismiss the January 22 , 2007 letter by Mr. Einhorn as nothing more than vague and sweeping allegations of publically known facts by a short seller. Regardless, Defendants state that in the month following Einhorn's letter the stock value rose 10 percent.

In Malin, the defendants in a security fraud case set forth evidence that the stock had returned to the pre-disclosure trading price shortly after the class period ended. Id. at *4. The Defendants argued that the plaintiff's allegations were insufficient based on Dura. Id. at *3. The Plaintiffs responded that all they were required to plead was a causal connection between the misrepresentation and a price drop. Id. at *4. The Court held that a sale of stock is not necessary for a plaintiff to plead economic loss. Id. However, the Court did conclude that when the current value is commensurate to the purchase price there is no loss. Id. ( holding that, "a price fluctuation without any realization of an economic loss is functionally equivalent to the Supreme Court's rejection in Dura of an artificially inflated purchase price alone as economic loss.").

Plaintiffs accurately point out that the, "traditional out-of-pocket loss rule and Section 21D(e) of the PSLRA provide that a purchaser's loss may be calculated by reference to the amount that the purchaser overpaid and the true value of the securities, a purchaser has not needed to sell the securities to have suffered or to recover 'actual damages.'" In re Royal Dutch/Shell Transport Securities Litigation, 404 F.Supp.2d 605, 610 (D.N.J.,2005). The cases cited by Plaintiffs all exhibit sharp drops in the stocks value. Plaintiffs provide supplemental authority in the way of Lorman v. US Unwired, 565 F.3d 228, (5th Cir.2009) (concluding, "that Rule 8(a)(2) [only] requires the plaintiff to allege, in respect to loss causation, a facially 'plausible' causal relationship between the fraudulent statements or omissions and plaintiff's economic loss, including allegations of a material misrepresentation or omission, followed by the leaking out of relevant or related truth about the fraud that caused a significant part of the depreciation of the stock and plaintiff's economic loss.").

The Court finds Plaintiffs' arguments unavailing and the reasoning in Malin and Estee Lauder instructive. Analogous to Malin, Plaintiffs here argue that all they need to allege is a facially plausible price drop caused by the misrepresentation. However, the Court is unaware of any authority in which actual economic loss was found when the stock value returned to pre-disclosure prices and could have been sold at a profit just after the class period.

It appears undisputed that on at least three occasions in June 2007 each Plaintiff could have sold the stock at a profit[8]. The Court agrees with Defendants that, while a sale of stock is not necessary, if the stock's value was commensurate to the pre-disclosure trading price after the

---

[8] The highest purchase price paid by any Plaintiff was $32.50. The Stock was trading above this amount on June 4-7, 11, 12, and 22, 2007. *See* http://finance.yahoo.com/

close of the class period could have been sold at a profit, the "actual economic loss" contemplated in Dura is precluded. Further, Dura requires that a plaintiff show that it was this revelation that caused the loss and not one of the "tangle of factors" that affect price[9]. Id. at 343, 125 S.Ct. 1627.

Section 21D(e) of the PSLRA serves as a model for the Courts to calculate damages and provides in relevant part as follows:

> In any private action ... in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received ... by the plaintiff ... and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement ... is disseminated to the market.

Codified at 15 U.S.C. § 78u-4(e)(1).

Plaintiffs argument that Section 21D(e) provides a presumption of a causal connection is misplaced. Any conclusion otherwise would "automatically supply the causation element to all securities plaintiffs", contravene Dura which mandates a judicial inquiry into the causation element. In re Intelligroup Securities Litigation, 468 F.Supp.2d 670, 697 (D.N.J. 2006). Logically, a plaintiff can not demonstrate the amount the purchaser overpaid if the stock value rose greater than the purchase price on multiple occasions. Indeed, Plaintiffs' authority is distinguished in that it bears the common thread of a "significant" decline in stock value not present in the case at bar. *See* Lorman v. US Unwired, 565 F.3d 228, 262 (5th Cir.2009) (finding the Complaint linked a series of disclosures to a, "significant stock price drop from $4.94 to $0.90"); In re Royal Dutch/Shell Transport Securities Litigation, 380 F.Supp.2d 509, 556

[9] The stocks fluctuation in value may well belie a causal connection between the loss and misrepresentation. However, such a determination would raise factual issues precluding adjudication on a Rule 12 motion to Dismiss.

(D.N.J.,2005) (( finding the complaint detailed the announcements impact and subsequent drop in stock price) *as amended by* In re Royal Dutch/Shell Transport Securities Litigation, 404 F.Supp.2d 605 (D.N.J.,2005)).

Consequently, the Court finds that even under the Rule 8(a)(2) "facially plausible" standard, Plaintiffs cannot demonstrate economic loss beyond a simple fluctuation in value or, at best, an artificially inflated purchase price, specifically rejected by Dura .

**Conclusion**

After considering the prescriptions set forth in Tellabs, the Court finds that Plaintiffs failed to plead scienter with particularity. Further, Plaintiffs fail to set forth facts demonstrating actual economic damages within the context of loss causation as required by Dura. Consequently, it is unnecessary to address the issue of control person liability.

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint [Doc. No. 20] is **GRANTED**.

The Clerk of Court shall enter judgment in favor of Defendants and notify the parties of the making of this Order.

**DONE** and **DATED** this 4th day of November, 2009

/s/ Jack D. Shanstrom

Jack D. Shanstrom
Senior United States District Judge